UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Roanoke Division

|  |  |
|---|---|
| ANTHEM HEALTH PLANS OF VIRGINIA, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD and HEALTHKEEPERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AGS HEALTH, INC., THE SCHUMACHER GROUP OF LOUISIANA, INC. D/B/A SCP HEALTH, THE SCHUMACHER GROUP OF VIRGINIA, INC.; INGLESIDE EMERGENCY GROUP, LLC, KINGSFORD EMERGENCY GROUP, LLC, LAKE SPRING EMERGENCY GROUP, LLC, WESTERN VIRGINIA REGIONAL EMERGENCY PHYSICIANS, LLC, and WILDWOOD EMERGENCY GROUP, LLC, <br><br> Defendants. | 7:25-cv-00804-RSB-JCH |

PLAINTIFF ANTHEM'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 3

I.     The NSA Uses an Honor System to Prevent Initiation of Ineligible Disputes.................................................................................................... 4

II.    Unlike Court Proceedings or Commercial Arbitration, the IDR Process Lacks Safeguards to Protect Against Fraud. ........................................... 5

     A.    IDR Provides No Meaningful Due Process to Dispute Providers' Misrepresentations of Eligibility. ....................................... 6

     B.    IDREs Have a Financial Stake in Eligibility Decisions............................ 6

     C.    The NSA Enables Providers to Obtain Radically Inflated Rates Through IDR Payment Determinations. ........................................ 7

III.    The Parties. ................................................................................................ 8

IV.    Defendants' Fraudulent NSA Scheme. ..................................................... 9

V.    Defendants' NSA Scheme Damages Anthem in Multiple Respects. .................... 13

VI.    Causes of Action. .................................................................................... 14

LEGAL STANDARD .................................................................................................... 14

ARGUMENT ................................................................................................................ 15

I.    Defendants Cannot Avoid Judicial Review of Their Fraud. ................................ 15

     A.    The NSA's Judicial Review Provision Does Not Apply to Anthem's Claims.................................................................................. 15

     B.    The Collateral Attack Doctrine Does Not Apply Because the NSA Does Not Incorporate FAA Procedures, Much Less Make Them an Exclusive Remedy.................................................................. 18

     C.    The *Noerr-Pennington* Doctrine Does Not Immunize Defendants from Liability for Their Fraudulent NSA Scheme. ................................ 23

     1.    *Noerr* Immunity Does Not Apply in a Private Commercial Dispute........ 24

     2.    *Noerr* Does Not Immunize Fraud in Adjudicatory Proceedings............... 27

     D.    Collateral Estoppel Does Not Apply to Anthem's Claims. ....................... 28

     1.    The Issues Are Not Identical Because IDREs Did Not Determine Whether Defendants Engaged in Fraud. ................................ 31

2. Defendants' Fraud Was Not Actually Resolved or Necessary. ................. 31

3. Anthem Did Not Have a Full and Fair Opportunity. ............................... 32

E. Claim Preclusion Does Not Apply to Anthem's Claims. .......................... 36

F. In the Alternative, Anthem Pleads a Claim for Vacatur (Count IX). ................................................................................................... 36

II. Anthem States Claims for Violations of RICO (Counts I & II). ........................... 37

A. The "Litigation Activities" Exemption Does Not Apply. ......................... 37

1. RICO Does Not Exempt Fraud in IDR Proceedings. .............................. 38

2. The Exemption Does Not Apply Because Defendants Intentionally Deceive HHS. ....................................................................................... 40

B. Anthem Pleads Predicate Acts of Wire Fraud. ........................................ 42

1. The Wire Fraud Allegations Satisfy Rule 9(b). ..................................... 42

2. Anthem Pleads Causation. .................................................................... 48

C. Anthem Pleads a RICO Enterprise. ......................................................... 52

D. Anthem Pleads a Pattern of Racketeering Activity. ................................. 53

E. Anthem Pleads a RICO Conspiracy. ........................................................ 56

III. Anthem States a Claim under ERISA (Count X). .................................................. 58

IV. Anthem States Claims Under Virginia Law. .......................................................... 60

A. Anthem Pleads Business Conspiracy (Count III). .................................... 60

B. Anthem Pleads Civil Conspiracy (Count VII). ........................................ 61

C. Anthem Pleads a Viable Claim under the VCPA (Count IV). ................... 62

D. Anthem Pleads Common Law and Constructive Fraud (Counts V & VI). ................................................................................................... 64

E. Anthem Pleads Conversion (Count VIII). ................................................ 66

V. The Virginia Anti-SLAPP Statute Does Not Apply. ............................................. 67

VI. Alternatively, Anthem Should be Allowed to Amend to Cure Any Deficiencies. .......................................................................................................... 69

VII. The Court Should Disregard SCP's Factual Arguments and Submission. ............. 69

CONCLUSION .......................................................................................................... 70

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Fisherman's Best, Inc. v. Recreational Fishing All.*,
310 F.3d 183 (4th Cir. 2002) ...................................................................................24, 27

*Abira Med. Lab'ys, LLC v. Anthem Health Plans of Virginia, Inc.*,
No. 3:25CV108 (RCY), 2026 WL 281172 (E.D. Va. Feb. 3, 2026) ......................................59

*ADA-ES, Inc. v. Big Rivers Elec. Corp.*,
465 F. Supp. 3d 703 (W.D. Ky. 2020)..............................................................................64

*Al-Abood ex rel. Al-Abood v. El-Shamari*,
217 F.3d 225 (4th Cir. 2000) ...........................................................................................54

*Albert v. Glob. Tel\*Link*,
68 F.4th 906 (4th Cir. 2023) ...............................................................................49, 50, 51

*Alexander v. Se. Wholesale Corp.*,
978 F. Supp. 2d 615 (E.D. Va. 2013) ..............................................................................63

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
486 U.S. 492 (1998)..........................................................................................................25

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
367 F.3d 212 (4th Cir. 2004) ...........................................................................................49

*Amphastar Pharm. Inc. v. Momenta Pharm., Inc.*,
850 F.3d 52 (1st Cir. 2017)..............................................................................................28

*Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*,
155 F.3d 500 (4th Cir. 1998) ...........................................................................................55

*Arnlund v. Smith*,
210 F. Supp. 2d 755 (E.D. Va. 2002) ..............................................................................36

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015)..................................................................................................34, 35

*Bachman Sunny Hill Fruit Farms, Inc. v. Producers Agriculture Ins. Co.*,
57 F.4th 536 (6th Cir. 2023) ............................................................................................18

*Bailey v. Ethicon, Inc.*,
No. 7:20-CV-622, 2021 WL 2345357 (W.D. Va. June 8, 2021)............................................65

*Baltimore Flips Israel 2020 LLC v. Yosef,*
 769 F. Supp. 3d 370 (D. Md. 2025) ..............................................................................43

*Baltimore Scrap Corp. v. David J. Joseph Corp.,*
 237 F.3d 394 (4th Cir. 2001) ...........................................................................24, 27, 28

*BCD, LLC v. BMW Mfg. Co.,*
 No. 6:05-CV-2152-GRA, 2008 WL 304878 (D.S.C. Jan. 31, 2008)...............................25, 27

*BE & K Constr. Co. v. N.L.R.B.,*
 536 U.S. 516 (2002).................................................................................................24, 27

*Bell Atlantic Corp., v. Twombly,*
 550 U.S. 544 (2007).........................................................................................................57

*Bell v. CSX Transportation, Inc.,*
 733 F. Supp. 3d 385 (D. Md. 2024).................................................................................34

*Belmont Partners, LLC v. Mina Mar Grp., Inc.,*
 741 F. Supp. 2d 743 (W.D. Va. 2010) ....................................................................21, 22

*Benkirane v. City Concrete Corp.,*
 918 S.E.2d 274 (Va. Ct. App. 2025).............................................................................63

*Bennett v. Garner,*
 913 F.3d 436 (4th Cir. 2019) .......................................................................................36

*Bitseller Expert Ltd. v. Verisign, Inc.,*
 No. 119CV01140AJTJFA, 2019 WL 13251185 (E.D. Va. Dec. 20, 2019) ...........................66

*Bonar v. Dean Witter Reynolds, Inc.,*
 835 F.2d 1378 (11th Cir. 1988) ...................................................................................21

*Bowen v. Adidas Am., Inc.,*
 No. CV 3:18-3118-JFA, 2020 WL 13076114 (D.S.C. Oct. 23, 2020) ....................................49

*Brandenburg v. Seidel,*
 859 F.2d 1179 (4th Cir. 1988) .....................................................................................54

*Bridge v. Phoenix Bond & Indem. Co.,*
 553 U.S. 639 (2008)..............................................................................................49, 50, 65

*Brooks-Buck v. Wahlstrom,*
 921 S.E.2d 223 (Va. 2025)............................................................................................68

*In re Buspirone Pat. Litig.,*
 185 F. Supp. 2d 363 (S.D.N.Y. 2002).............................................................................25

*Cal. Motor Transp. Co. v. Trucking Unlimited,*
  404 U.S. 508 (1972).................................................................................................24, 25, 27

*In re Cap. One 360 Sav. Acct. Int. Rate Litig.,*
  779 F. Supp. 3d 666 (E.D. Va. 2024) ...................................................................................44

*CareFirst of Md. v. Johnson & Johnson,*
  2025 WL 3486761 (E.D. Va. Oct. 10, 2025)..........................................................................27

*Carroll v. U.S. Equities Corp.,*
  No. 18-cv-667, 2020 WL 11563716 (N.D.N.Y. Nov. 30, 2020)......................................40, 41

*U.S. ex rel. Carter v. Halliburton Co.,*
  No. 1:08cv1162 (JCC), 2009 WL 2240331 (E.D. Va. July 23, 2009)....................................42

*Chambers v. King Buick GMC, LLC,*
  43 F. Supp. 3d 575 (D. Md. 2014).........................................................................................57

*Cheminor Drugs, Ltd. v. Ethyl Corp.,*
  168 F.3d 119 (3d Cir. 1999)...................................................................................................28

*Chin-Young v. United States,*
  774 F. App'x 106 (4th Cir. 2019) ..........................................................................................35

*Chipper Pro, LLC v. Bandit Indus., Inc.,*
  616 F. Supp. 3d 525 (W.D. Va. 2022) ...................................................................................61

*City of Columbia v. Omni Outdoor Advert., Inc.,*
  499 U.S. 365 (1991)................................................................................................................27

*Clusiau v. Clusiau Enters., Inc.,*
  236 P.3d 1194 (Az. Ct. App. 2010) .......................................................................................35

*Cold Springs Farm Dev., Inc. v. Ball,*
  661 A.2d 89 (Vt. 1995)...........................................................................................................35

*Commonwealth Transp. Com'r v. Saunders,*
  52 Va. Cir. 216 (2000) ...........................................................................................................66

*United States ex rel. Complin v. N. Carolina Baptist Hosp.,*
  818 F. App'x 179 (4th Cir. 2020) ..........................................................................................46

*Connally v. Georgia*
  429 U.S. 245 (1977)................................................................................................................32

*Cook v. The 1031 Exch. Corp.,*
  29 Va. Cir. 302 (1992) ...........................................................................................................67

*Corder v. Antero Res. Corp.*,
57 F.4th 384 (4th Cir. 2023) ........................................................................................44

*Corey v. N.Y. Stock Exch.*,
691 F.2d 1205 (6th Cir. 1982) .....................................................................................18

*CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*,
327 F.3d 1309 (11th Cir. 2003) ...................................................................................32

*Ctr. for Excellence in Higher Educ., Inc. v. Accreditation All. of Career Schs. &
Colleges*,
166 F.4th 452 (4th Cir. 2026) ................................................................................18, 22

*Cuozzo Speed Techs. v. Com. for Intell. Prop.*,
579 U.S. 261 (2016)......................................................................................................16

*Darcangelo v. Verizon Commc'ns, Inc.*,
292 F.3d 181 (4th Cir. 2002) .......................................................................................59

*Davis v. Mut. Life Ins. Co. of New York*,
6 F.3d 367 (6th Cir. 1993) ...........................................................................................53

*De Silva v. Am. Brokers Conducit*,
No. GJH-14-03462, 2015 WL 275769 (D. Md. Jan. 21, 2015)................................44

*Deck v. Engineered Laminates*,
349 F.3d 1253 (10th Cir. 2003) ...................................................................................40

*Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
205 F.3d 906 (6th Cir. 2000) .......................................................................................22

*Dees v. Zurlo*,
1:24-cv-1, 2024 WL 2291701 (N.D.N.Y. May 21, 2024) .......................................41

*DeLoach v. Philip Morris Companies, Inc.*,
No. 1:00CV01235, 2001 WL 1301221 (M.D.N.C. July 24, 2001) .........................27

*Design Gaps, Inc. v. Distinctive Design & Constr. LLC*,
162 F.4th 452 (4th Cir. 2025) ......................................................................................35

*Driggs v. Cent. Intel. Agency*,
No. 1:23CV1124 (DJN), 2025 WL 2242761 (E.D. Va. Aug. 6, 2025) ...................30

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
637 F.3d 435 (4th Cir. 2011) .......................................................................................29

*Eden Hannon & Co. v. Sumitomo Tr. & Banking Co.*,
914 F.2d 556 (4th Cir. 1990) ..................................................................................24, 27

viii

*El Paso Natural Gas Co. v. United States*,
632 F.3d 1272 (D.C. Cir. 2011) ..................................................................................................16

*EQMD, Inc. v. Farm Bureau Gen. Ins. Co.*,
2021 WL 843145 (E.D. Mich. Mar. 5, 2021) ............................................................................23

*Eurotech, Inc. v. Cosmos Eur. Travels Aktiengesellschaft*
189 F. Supp. 2d 385 (E.D. Va. 2002) ........................................................................................26

*Fakhri v. Marriot Int'l Hotels, Inc.*,
201 F. Supp. 3d 696 (D. Md. 2016) ...........................................................................................22

*Feamster v. Mountain State Blue Cross & Blue Shield, Inc.*,
No. 6:10-CV-00241, 2010 WL 2854302 (S.D. W. Va. July 19, 2010) .....................................60

*Fla. Rock & Tank Lines, Inc. v. Moore*,
258 Ga. 106 (1988) ....................................................................................................................66

*Flip Mortg. Corp. v. McElhone*,
841 F.2d 531 (4th Cir. 1988) .....................................................................................................55

*Fonseca v. Am. Nat'l Red Cross*,
No. 320CV00526RJCDSC, 2021 WL 627043 (W.D.N.C. Feb. 1, 2021) .................................35

*Ford Motor Co. v. Nat'l Indem. Co.*,
972 F. Supp. 2d 862 (E.D. Va. 2013) ..................................................................................24, 25

*Freeman v. Lasky, Haas & Cohler*,
410 F.3d 1180 (9th Cir. 2005) ...................................................................................................27

*Gabovitch v. Shear*,
70 F.3d 1252 (1st Cir. 1995) ......................................................................................................41

*Garvin v. LBAS, Inc.*,
No. 0661-24-1, 2025 WL 2956445 (Va. Ct. App. Oct. 21, 2025) .......................................63, 64

*Gibbs v. Elevate Credit, Inc.*,
No. 3:20CV632, 2021 WL 4851066 (E.D. Va. Oct. 17, 2021) .................................................58

*Glaser v. Enzo Biochem, Inc.*,
464 F.3d 474 (4th Cir. 2006) .....................................................................................................65

*Gordon v. Pete's Auto Serv. of Denbigh, Inc.*,
838 F. Supp. 2d 436 (E.D. Va. 2012) ........................................................................................66

*Grant v. Shapiro & Burson, LLP*,
871 F. Supp. 2d 462 (D. Md. 2012) ...........................................................................................44

ix

*Grayson v. Westwood Buildings L.P*
    300 Va. 25 (2021).. .................................................................................................66

*Griggs v. E.I. DuPont de Nemours & Co.*,
    237 F.3d 371 (4th Cir. 2001) ...................................................................................59

*Grimes v. BNSF Ry. Co.*,
    746 F.3d 184 (5th Cir. 2014) ...................................................................................34

*Guardian Flight, L.L.C. v. Health Care Serv. Corp.*,
    140 F.4th 271 (5th Cir. 2025), *cert. denied*, No. 25-441, 2026 WL 79855 (U.S.
    Jan. 12, 2026)..............................................................................................15, 19, 67

*Guardian Flight, L.L.C. v. Med. Evaluators of Tex. ASO, L.L.C.*,
    140 F.4th 613 (5th Cir. 2025) ...............................................................15, 19, 21, 25

*Guardian Flight LLC v. Aetna Life Ins. Co.*,
    789 F. Supp. 3d 214 (D. Conn. 2025).................................................................15, 19

*Guerrero-Lasprilla v. Barr*,
    589 U.S. 221 (2020)..................................................................................................16

*Gulf Petro Trading Co., Inc. v. Nigerian Nat. Petroleum Corp.*,
    512 F.3d 742 (5th Cir. 2008) ..............................................................................22, 23

*Gulfstream Aerospace Corp. v. Optical Air Data Sys., LLC*,
    517 F. Supp. 3d 542 (E.D. Va. 2021) .......................................................................21

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989)..................................................................................................56

*In re Hadley*,
    No. 09-73717-FJS, 2011 WL 3664746 (Bankr. E.D. Va. Aug. 19, 2011) ..............30

*Hammock v. Watts*,
    146 F.4th 349 (4th Cir. 2025) ..................................................................................14

*Hare v. Simpson*,
    621 F. App'x 748 (4th Cir. 2015) .......................................................................31, 34

*Harper v. Pro. Prob. Servs. Inc.*,
    976 F.3d 1236 (11th Cir. 2020) ..........................................................................33, 39

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) ...................................................................................48

*Helfrich v. Lehigh Valley Hosp.*,
    CIV.A. No. 03-cv-05793, 2005 WL 1715689 (E.D. Pa. July 21, 2005)..................35

x

*Hengle v. Asner*,
   433 F. Supp. 3d 825 (E.D. Va. 2020), *aff'd sub nom.*, *Hengle v. Treppa*, 19
   F.4th 324 (4th Cir. 2021) ..................................................................................57

*HMK Corp. v. Walsey*,
   828 F.2d 1071 (4th Cir. 1987) ..........................................................................55

*Holland v. Cole Nat. Corp.*,
   No. CIV.A. 7:04CV00246, 2005 WL 1799540 (W.D. Va. July 28, 2005) .............53

*Holmberg v. Morrisette*,
   800 F.2d 205 (8th Cir. 1986) .............................................................................65

*Int'l Data Bank, Ltd. v. Zepkin*,
   812 F.2d 149 (4th Cir. 1987) .............................................................................55

*United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White
   Health*,
   816 F. App'x 892 (5th Cir. 2020) ......................................................................47

*Iron Workers Loc. 16 Pension Fund v. Hilb Rogal & Hobbs Co.*,
   432 F. Supp. 2d 571 (E.D. Va. 2006) ................................................................46

*Jones v. City of Greensboro*,
   1:24CV450, 2025 WL 969360 (M.D.N.C. Mar. 31, 2025) ...................................68

*Jones v. Dancel*,
   792 F.3d 395 (4th Cir. 2015) .............................................................................20

*Jordan v. Osmun*,
   No. 1:16-cv-501, 2016 WL 7173784 (E.D. Va. Dec. 8, 2016).............................67

*Kale v. Alfonso-Royals*,
   139 F.4th 329 (4th Cir. 2025) ...........................................................................29

*Kane v. Lewis*,
   604 F. App'x 229 (4th Cir. 2015) ......................................................................49

*Karic Fletcher v. Pizza Hut of Am., Inc.*,
   406 F. App'x 785 (4th Cir. 2011) ......................................................................49

*Karnani v. Interactive Brokers LLC*,
   25-cv-462(LMB/WEF), 2025 WL 1559151 (E.D. Va. May 30, 2025)..................35

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018)......................................................................37, 39, 41

*Kimberlin v. Nat'l Bloggers Club*,
No. GJH-13-3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015)................................40, 43, 45

*Knology, Inc. v. Insight Commc'ns Co.*,
393 F.3d 656 (6th Cir. 2004) ............................................................................................27

*Kremer v. Chem. Constr. Corp.*,
456 U.S. 461 (1982).........................................................................................................32

*Laber v. Harvey*,
438 F.3d 404 (4th Cir. 2006) ............................................................................................69

*Langley v. Booz Allen Hamilton Holding Corp.*,
No. 117CV696LMBTCB, 2018 WL 2108291 (E.D. Va. Feb. 8, 2018)................................46

*Littlejohn v. United States*,
321 F.3d 915 (9th Cir. 2003) ............................................................................................34

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2025).........................................................................................................30

*Malone v. WP Co., LLC*,
No. 3:22-CV-00046, 2023 WL 6447311 (W.D. Va. Sept. 29, 2023).......................................69

*Marshall v. Jerrico, Inc.*,
446 U.S. 238 (1980).....................................................................................................32, 33

*McCauley v. Home Loan Inv. Bank, F.S.B.*,
710 F.3d 551 (4th Cir. 2013) .................................................................................14, 42, 48

*McCullough v. Gannett, Co.*,
No. 122CV1099RDALRV, 2023 WL 3075940 (E.D. Va. Apr. 25, 2023)..............................68

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025).........................................................................................................16

*McNeil v. Cmty. Prob. Servs., LLC*,
1:18-cv-00033, 2021 WL 366776 (M.D. Tenn. Feb. 3, 2021) ...............................................33

*Menasco, Inc. v. Wasserman*,
886 F.2d 681 (4th Cir. 1989) .......................................................................................55, 56

*In re Microsoft Corp. Antitrust Litig.*,
355 F.3d 322 (4th Cir. 2004) ............................................................................................31

*Miller v. Dogwood Valley Citizens Ass'n, Inc.*,
No. CIV 306CV00020, 2008 WL 3992350 (W.D. Va. Aug. 28, 2008), *aff'd*,
346 F. App'x 925 (4th Cir. 2009) ......................................................................................40

*Morris v. City of Danville, Va.*,
    744 F.2d 1041 (4th Cir. 1984) ................................................................32

*Mylan Lab'ys, Inc. v. Akzo, N.V.*,
    770 F. Supp. 1054 (D. Md. 1991) ...........................................................23

*Nahigian v. Juno Loudoun, LLC*,
    684 F. Supp. 2d 731 (E.D. Va. 2010) ......................................................43

*Nash v. Bryce*,
    157 F.4th 436 (6th Cir. 2025) .................................................................32

*Nat'l Ass'n of Gov't Emps. v. Fed. Lab. Rels. Auth.*,
    830 F. Supp. 889 (E.D. Va. 1993) ..........................................................16

*Navient Sols., LLC v. L. Offs. of Jeffrey Lohman*,
    No. 119CV461LMBTCB, 2020 WL 1867939 (E.D. Va. Apr. 14, 2020)................................23

*Navient Sols., LLC v. L. Offs. of Lohman*,
    No. 119CV461LMBTCB, 2020 WL 6379240 (E.D. Va. June 12, 2020) .........................51, 52

*Navient Sols., LLC v. Lohman*,
    136 F.4th 518 (4th Cir. 2025) .................................................................24

*Nero v. Mayan Mainstreet Inv 1, LLC*,
    No. 6:14-cv-1363, 2014 WL 12610668 (M.D. Fla. Nov. 13, 2014)......................................41

*NOCO Co. v. OJ Com., LLC*................................................................52

*Nursing Registry, Inc. v. E. N.C. Reg'l Emergency Med. Servs. Consortium, Inc.*,
    959 F. Supp. 298 (E.D.N.C. 1997)...........................................................23

*Nutrishare, Inc. v. Connecticut Gen. Life Ins. Co.*,
    No. 2:13-CV-02378-JAM-AC, 2014 WL 2624981 (E.D. Cal. June 12, 2014) .......................59

*O'Reilly v. Cnty. Bd. of Appeals for Montgomery Cnty., Md.*,
    900 F.2d 789 (4th Cir. 1990) ..................................................................30

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014).........................................................................24, 27

*Oriole Grp., LLC v. Pool Scouts Franchising, LLC*,
    791 F. Supp. 3d 661 (E.D. Va. 2025) .....................................................54, 56

*Ornest v. Delaware N. Companies, Inc.*,
    818 F.2d 651 (8th Cir. 1987) ..................................................................55

*U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*,
    612 F.3d 724 (4th Cir. 2010) ...........................................................2, 18, 47

*Ownby v. Cohen*,
   19 F. Supp. 2d 558 (W.D. Va. 1998), *aff'd*, 194 F.3d 1305 (4th Cir. 1999) ...........................55

*Pac. & Arctic Ry. & Nav. Co. v. United Transp. Union*,
   952 F.2d 1144 (9th Cir. 1991) ......................................................................................22

*In re Pac One, Inc.*,
   No. 01-85027 MGD, 2007 WL 2083817 (N.D. Ga. July 17, 2007) .......................................44

*Paragon Servs., Inc. v. Hicks*,
   843 F. Supp. 1077 (E.D. Va. 1994) ................................................................................36

*Parcoil Corp. v. NOWSCO Well Serv., Ltd.*,
   887 F.2d 502 (4th Cir. 1989) ........................................................................................54

*Parklane Hosiery Co. v. Shore*,
   439 U.S. 322 (1979)....................................................................................................34

*PenneCom B.V. v. Merrill Lynch & Co., Inc.*,
   372 F.3d 488 (2d Cir. 2004)..........................................................................................36

*Perry v. Am. Airlines, Inc.*,
   405 F. Supp. 2d 700 (E.D. Va. 2005) .............................................................................36

*Peters v. Aetna, Inc.*,
   No. 1:15-CV-00109-MR, 2016 WL 4547151 (W.D.N.C. Aug. 31, 2016)..............................60

*Peterson v. Cooley*,
   142 F.3d 181 (4th Cir. 1998) ........................................................................................61

*Pompy v. Moore*,
   No. 19-10334, 2024 WL 845859 (E.D. Mich. Feb. 28, 2024)...............................................41

*Portis v. Ruan Transportation Mgmt. Sys., Inc.*,
   No. 7:15CV00118, 2016 WL 7388403 (W.D. Va. Dec. 19, 2016) .......................................21

*Potters Med. Ctr. v. City Hosp. Ass'n*,
   800 F.2d 568 (6th Cir. 1986) ........................................................................................28

*Pour Le Bebe, Inc. v. Guess*
   112 Cal. App. 4th 810 (2003) ........................................................................................21

*Pro. Real Estate Inv., Inc. v. Columbia Pictures, Indus.*,
   508 U.S. 49 (1993)......................................................................................................27

*Provident Life & Accident Ins. Co. v. Cohen*,
   423 F.3d 413 (4th Cir. 2005) ........................................................................................59

*Pubali Bank v. City Nat. Bank*,
  777 F.2d 1340 (9th Cir. 1985) ...............................................................................65

*Qiu v. Huang*,
  77 Va. App. 304 (2023) .........................................................................................66

*Raney v. Allstate Ins. Co.*,
  370 F.3d 1086 (11th Cir. 2004) .............................................................................40

*Raymond James Fin. Servs., Inc. v. Bishop*,
  596 F.3d 183 (4th Cir. 2010) .................................................................................20

*RBA Cap., LP v. Anonick*,
  No. CIV. A. 3:08CV494, 2009 WL 960090 (E.D. Va. Apr. 8, 2009) .....................65

*RE/MAX LLC v. M.L. Jones & Assocs., Ltd.*,
  No. 5:12-CV-768-D, 2013 WL 4647517 (E.D.N.C. Aug. 29, 2013) ......................23

*Reetz v. Aon Hewitt Inv. Consulting, Inc.*,
  74 F.4th 171 (4th Cir. 2023) ..................................................................................59

*Republic of Kazakhstan v. Stati*
  380 F. Supp. 3d 55 (D.D.C. 2019) .........................................................................39

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993)..........................................................................................52, 53

*Riley v. Bondi*,
  606 U.S. 259 (2025)................................................................................................16

*Rivers v. U.S.*,
  6:18-cv-00061, 2020 WL 1443723 (W.D. Va. Feb. 26, 2020)................................53

*Robertson v. Sea Pines Real Est. Companies, Inc.*,
  679 F.3d 278 (4th Cir. 2012) .................................................................................14

*Rolofson v. Fraser*,
  81 Va. App. 508 (2024) ..........................................................................................67

*Rolofson v. Fraser*,
  904 S.E.2d 284 (Va. App. 2024)..............................................................................67

*Rotkiske v. Klemm*,
  589 U.S. 8 (2019)....................................................................................................20

*RZS Holdings AVV v. PDVSA Petroleos S.A.*,
  598 F. Supp. 2d 762 (E.D. Va. 2009) .....................................................................22

*SAF Funding, LLC v. Taylor*,
    98 Va. Cir. 10 (2017) ..................................................................................................67

*Salinas v. U.S. R.R. Ret. Bd.*,
    592 U.S. 188 (2021)....................................................................................................16

*Santos-Zacaria v. Garland*,
    598 U.S. 411 (2023) ...................................................................................................16

*SAS Inst., Inc. v. Iancu*,
    584 U.S. 357 (2018)....................................................................................................16

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
    884 F.3d 489 (4th Cir. 2018) .....................................................................................49

*Smith v. Chapman*,
    No. 3:14-CV-00238-MOC, 2015 WL 5039533 (W.D.N.C. Aug. 26, 2015)............................44

*Smith v. Walmart, Inc.*,
    No. 7:22-CV-00568, 2023 WL 5215376 (W.D. Va. Aug. 14, 2023) ......................................35

*Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union*,
    No. CIV. A. 3:07CV641, 2008 WL 4925194 (E.D. Va. Oct. 14, 2008)..................................57

*St. Joseph's Hosp., Inc. v. Hosp. Corp. of America*,
    795 F.2d 948 (11th Cir. 1986) ...................................................................................28

*Staley v. Gilead Scis., Inc.*
    589 F. Supp. 3d 1132 (N.D. Cal. 2022) .....................................................................62

*Starr v. VSL Pharms., Inc.*,
    509 F. Supp. 3d 417 (D. Md. 2020) .....................................................................51, 54

*Staub v. Nietzel*,
    No. 22-5384, 2023 WL 3059081 (6th Cir. Apr. 24, 2023) ................................................34, 36

*Syngenta Crop Prot., LLC v. Atticus, LLC*,
    2022 WL 842938 (E.D.N.C. Mar. 21, 2022) .......................................................................23

*SynQor, Inc v. Vicor Corp.*,
    988 F.3d 1341 (Fed. Cir. 2021)...................................................................................35

*United States ex rel. Taylor v. Boyko*,
    No. 2:17-CV-04213, 2020 WL 520933 (S.D.W. Va. Jan. 31, 2020), *aff'd*, 39
    F.4th 177 (4th Cir. 2022) ...........................................................................................47

*Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.*
    492 F.3d 520 (4th Cir. 2007). ....................................................................................20

xvi

*Titan Am. LLC v. Riverton Inv. Corp.*,
264 Va. 292 (2002) ..............................................................................................25

*Tumey v. Ohio*,
273 U.S. 510 (1927)..............................................................................................32

*Turtle Island Restoration Network v. Evans*,
284 F.3d 1282 (Fed. Cir. 2002)............................................................................20

*U.S. Futures Exch., L.L.C. v. Bd. of Trade of City of Chi., Inc.*,
953 F.3d 955 (7th Cir. 2020) ..........................................................................27, 28

*United States v. Carpentieri*,
23 F. Supp. 2d 433 (S.D.N.Y. 1998).....................................................................31

*United States v. Koziol*,
993 F.3d 1160 (9th Cir. 2021) ..............................................................................38

*United States v. Lee*,
427 F.3d 881 (11th Cir. 2005) .........................................................................40, 41

*United States v. Mouzone*,
687 F.3d 207 (4th Cir. 2012) ................................................................................57

*United States v. Pendergraft*,
297 F.3d 1198 (11th Cir. 2002) .......................................................................38, 39

*United States v. Robinson*,
99 F.4th 344 (6th Cir. 2024) .................................................................................47

*UnitedHealthCare Servs. v. Team Health Holdings, Inc.*,
3:21-cv-00364, 2022 WL 1481171 (E.D. Tenn. May 10, 2022) ...........................59

*USS-POSCO Indus. v. Contra Costa Cnty.*,
31 F.3d 800. (9th Cir. 1994) ...........................................................................26, 27

*Va. Vermiculite, Ltd. v. Hist. Green Springs, Inc.*,
307 F.3d 277 (4th Cir. 2002) ................................................................................61

*Vein & Wellness Grp., LLC v. Becerra*,
No. 22-2253, 2024 WL 3064713 (4th Cir. June 20, 2024)..............................31, 32

*Vemco, Inc. v. Camardella*,
23 F.3d 129 (6th Cir. 1994) ..................................................................................55

*VIBO Corp. v. Conway*,
669 F.3d 675 (6th Cir. 2012) ................................................................................27

*United States ex rel. Virginia v. Century Park Cap. Partners, LLC*,
No. 7:21-CV-420, 2025 WL 1959356 (W.D. Va. July 16, 2025) ....................................15, 42

*U.S. ex rel. Vuyyuru v. Jadhav*,
555 F.3d 337 (4th Cir. 2009) .......................................................................................69

*Walnut St. Sec., Inc. v. Lisk*
497 F. Supp. 2d 714 (M.D.N.C. 2007). ........................................................................22

*Walters v. McMahen*,
795 F. Supp. 2d 350 (D. Md. 2011), *aff'd*, 684 F.3d 435 (4th Cir. 2012), *aff'd*,
684 F.3d 435 (4th Cir. 2012) ........................................................................................57

*WCCB-TV, Inc. v. Telerep, Inc.*,
601 F. Supp. 284 (W.D.N.C. 1984) ..............................................................................23

*Weirton Med. Ctr., Inc. v. QHR Intensive Res., LLC*,
682 F. App'x 227 (4th Cir. 2017) .................................................................................21

*Whelan v. Abell*,
48 F.3d 1247 (D.C. Cir. 1995) ......................................................................................28

*Whitt v. Wells Fargo Fin.*
664 F. Supp. 2d 537 (D.S.C. 2009).................................................................................32

*Winners Circle Imports, LLC v. Whitney's Auto. Venture Enter., LLC*,
No. 2:24-CV-718, 2025 WL 2856525 (E.D. Va. Oct. 8, 2025)..............................................69

*Wolf v. Klein*,
907 F.2d 1141 (4th Cir. 1990) ......................................................................................54

*WW, LLC v. Coffee Beanery, Ltd.*,
No. CIV.A. WMN-05-3360, 2012 WL 3728184 (D. Md. Aug. 27, 2012)..............................57

**Statutes**

5 U.S.C. § 580(c) ............................................................................................................20

5 U.S.C. § 805................................................................................................................17

9 U.S.C. § 5...................................................................................................................18

9 U.S.C. § 9...................................................................................................................18

9 U.S.C. § 10(a) .........................................................................................16, 19, 20, 21, 37

9 U.S.C. § 12.................................................................................................................18

18 U.S.C. § 1962(c) ...................................................................................................57

18 U.S.C. § 1962(d) ............................................................................................56, 57

29 U.S.C. § 1002(21)(A)............................................................................................58

29 U.S.C. § 1132(a)(3)........................................................................................59, 60

29 U.S.C. § 1401 .......................................................................................................20

35 U.S.C. § 294 .........................................................................................................20

38 U.S.C. § 511 .........................................................................................................17

41 U.S.C. § 7107........................................................................................................20

42 U.S.C. § 300gg-111(c) .................................................................................. *passim*

Employee Retirement Income Security Act of 1974 ("ERISA") .......................... *passim*

Federal Arbitration Act ("FAA")......................................................................... *passim*

No Surprises Act ("NSA").................................................................................... *passim*

Racketeering Influenced and Corruption Organizations Act ("RICO") ............... *passim*

VA. CODE ANN. § 8.01-223.2 (West 2025)....................................................3, 67, 68

VA. CODE ANN. § 18.2-499 (West 2025).......................................................3, 60, 61

VA. CODE ANN. § 18.2-500 (West 2025) ...............................................................3

VA. CODE ANN. § 59.1-196 *et seq.* (West 2025))....................................................3

VA. CODE ANN. § 59.1-199 ....................................................................................64

Virginia Balance Billing Law ..................................................................9, 10, 13, 46

**Other Authorities**

Arbitration Preclusion, 18B FED. PRAC. & PROC. JURIS. § 4475.1 (3d ed.)............35, 36

45 C.F.R. § 149.510(a)(2)(xi) .....................................................................................4

45 C.F.R. § 149.510(b)(1)............................................................................................4

45 C.F.R. § 149.510(b)(2)................................................................................3, 4, 41

45 C.F.R. § 149.510(c)(1)...............................................................................6, 29, 31

45 C.F.R. § 149.510(c)(4) ................................................................................7, 17

88 Fed. Reg. 88494 (Dec. 21, 2023) ...........................................................................6

About WIPO, World Intellectual Property Organization, https://bit.ly/40yl99j (last
    visited Mar. 16, 2026) ...........................................................................26

AGS HEALTH, PARTNERING FOR TRANSFORMATION: SCP HEALTH REDUCES COSTS
    BY 28% at 3 ("White Paper") ...........................................................................12, 45

CMS, FACT SHEET: CLEARING THE INDEPENDENT DISPUTE RESOLUTION BACKLOG
    (September 2025), https://www.cms.gov/files/document/fact-sheet-clearing-
    independent-dispute-resolution-backlog.pdf ...........................................................................70

CMS, Independent Dispute Resolution Reports, https://bit.ly/46Zb20Z...........................33

CMS, SUPPLEMENTAL BACKGROUND ON THE FEDERAL IDR PUBLIC USE FILES,
    JAN. 1, 2025-JUNE 30, 2025 (as of Jan. 21, 2026),
    www.cms.gov/files/document/federal-idr-supplemental-background-2025-q1-
    2025-q2.pdf;...........................................................................8

Fed R. Civ. P. Rule 9(b)........................................................................... *passim*

Fed R. Civ. P. Rule 12(b)(6) ...........................................................................47

Fed R. Civ. P. Rule 15(a) ...........................................................................69

Fed. R. App. P. 4...........................................................................18

*Federal IDR Technical Assistance for Certified IDR Entities and Disputing
    Parties* (June 2025), https://bit.ly/4owqN5H...........................................................................5

FEDERAL INDEPENDENT DISPUTE RESOLUTION PROCESS UNDER THE NO SURPRISES
    ACT, http://bit.ly/48xP1Yc (Oct. 31, 2022) ...........................................................................6

H.R. Rep. No. 116-615 (2020)...........................................................................3

IDR Portal (https://nsa-idr.cms.gov/ paymentdisputes/s/) ...........................................................................4

Independent Dispute Resolution Reports, CMS, https://bit.ly/46Zb20Z...........................................................................2

*No Surprises Act Arbitrators Vary Significantly in Their Payment Decision
    Making Patterns*, GEORGETOWN UNIV. CENTER ON HEALTH INS. REFORMS,
    http://bit.ly/4heOcWQ ...........................................................................5

*No Surprises Act Arbitrators Vary Significantly in Their Decision-Making
    Patterns*, HEALTH AFFAIRS https://bit.ly/3XQUUcO...........................................................................70

Restatement (Second) of Judgments...........................................................................34

WIPO Guide to the UDRP, WIPO, https://bit.ly/4bfmwjr (last visited Mar. 16, 2026) ....................................................................................................................26

## INTRODUCTION

The Complaint (ECF No. 1) seeks to hold Defendants[1] liable for filing millions of dollars' worth of fraudulent disputes against Anthem[2] through the "independent dispute resolution" ("IDR") process created by the No Surprises Act ("NSA"). As part of their "NSA Scheme," Defendants: (1) submit thousands of knowingly false attestations to federal agencies certifying that ineligible disputes involve "qualified" services within the scope of the IDR process; (2) employ artificial intelligence ("AI") to overwhelm the IDR system with hundreds of disputes at a time; and (3) request payment at rates vastly beyond what the market provides.

Defendants' NSA Scheme works by exploiting the NSA's honor system, under which providers and their IDR agents self-certify dispute eligibility. The Departments of Health and Human Services ("HHS"), Labor ("DOL"), and Treasury (collectively, the "Departments") built an online screening tool (the "IDR Portal") through which parties submit disputes and certify that they meet strict eligibility criteria. While this tool prevents parties from inadvertently submitting ineligible disputes, it cannot prevent fraud. There is no effective verification process; once Defendants make fraudulent submissions, the Departments automatically transmit the dispute to a certified IDR entity ("IDRE") tasked with making a payment determination.

Unlike court proceedings or commercial arbitrations, the IDR process contains no safeguards to prevent this type of fraud. The NSA itself does not delegate eligibility decisions to

---

[1] "Defendants" include (i) AGS Health, Inc. ("AGS"); (ii) The Schumacher Group of Louisiana Inc. and The Schumacher Group of Virginia, Inc. (together, "SCP"); and (iii) a network of emergency medicine provider groups (the "Provider Defendants") affiliated with SCP, including Ingleside Emergency Group, LLC ("Ingleside"); Kingsford Emergency Group, LLC ("Kingsford"); Lake Spring Emergency Group, LLC ("Lake Spring"); Western Virginia Regional Emergency Physicians, LLC ("Western"); and Wildwood Emergency Group, LLC ("Wildwood"). AGS, SCP, and the Provider Defendants are members of the "SCP Enterprise."

[2] "Anthem" includes Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Anthem BCBS") and Healthkeepers, Inc. ("Healthkeepers").

IDREs. Regulations direct IDREs to review eligibility, but they (1) only require IDREs to consider the providers' unilateral attestation of eligibility, and (2) do not require that IDREs consider health plan objections or issue any written eligibility decisions. Making matters worse, IDREs only get paid if they find a dispute is eligible and issue a payment determination. SCP alone submitted 128,560 disputes in the first half of 2025.[3] The IDREs overseeing those disputes stood to earn tens of millions of dollars if, and only if, they decided eligibility in SCP's favor.

Defendants' motions[4] ignore the realities of the IDR process and Anthem's well-pleaded factual allegations. By misquoting the NSA and invoking inapplicable doctrines, Defendants claim that the Court is powerless to address their fraud. Accepting these misguided arguments would give Defendants' NSA Scheme a judicial seal of approval and invite similar bad actors to follow suit, with devastating consequences for health plans and American consumers. The Court should deny Defendants' motions in their entirety for the following reasons:

*First*, Defendants cannot avoid judicial review of their fraud. The NSA limits judicial review of individual IDRE payment determinations; it does not bar review of Defendants' NSA Scheme, through which they knowingly submitted thousands of ineligible disputes. The *Noerr-Pennington* doctrine protects First Amendment activity, not fraudulent misrepresentations in private disputes. Collateral estoppel does not apply to eligibility "decisions," by partial IDREs who receive no compensation at all if they find the dispute is ineligible. And res judicata is wholly inapplicable given that Anthem could not assert affirmative claims of any kind in IDR.

*Second*, Anthem pleads all elements of its claims under the Racketeering Influenced and Corruption Organizations Act ("RICO"). The Fourth Circuit has not adopted the "litigation

---

[3] *See* Independent Dispute Resolution Reports, CMS, https://bit.ly/46Zb20Z.

[4] This opposition responds to motions to dismiss filed by (1) AGS ("AGS Br." at ECF No. 38), and (2) SCP and the Provider Defendants ("SCP Br." at ECF No. 41).

activities" exemption, which would not apply here in any event. *Third*, the relevant plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA") delegate to Anthem the authority to recover overpayments, and Anthem pleads violations of specific ERISA provisions and regulations. *Fourth*, Anthem adequately pleads claims under Virginia state law for violation of the Virginia Business Conspiracy Statute (VA. CODE ANN. §§ 18.2-499-500 (West 2025)), Civil Conspiracy, violation of the Virginia Consumer Protection Act of 1977 (VA. CODE ANN. § 59.1-196 *et seq.* (West 2025)) ("VCPA"), common law and constructive fraud, and conversion.

Finally, Virginia's anti-SLAPP law (VA. CODE ANN. § 8.01-223.2 (West 2025)) does not protect Defendants' intentional misrepresentations to IDREs which do not involve matters of public concerns.

## BACKGROUND

Before the NSA, out-of-network providers engaged in the financially devastating practice of "surprise billing." Compl. ¶¶ 32-35. Rather than go "in-network" and agree to reasonable rates with health plans, these providers exploited patients' inability to select an in-network provider for emergency care by billing them at "inflated," "non-market-based rates" known as "billed charges." *Id.*; H.R. Rep. No. 116-615, at 52-53 (2020). Patients faced astronomical bills for the difference between providers' billed charges and the amounts covered by health plans. Compl. ¶¶ 32-36.

Congress enacted the NSA (effective January 1, 2022) to protect patients from surprise bills and to bring down the cost of out-of-network care for specific types of plans and services. *Id.* ¶¶ 1, 37. If an out-of-network provider of NSA-covered services disagrees with the amount paid by a health plan, it has thirty business days to provide a notice of "open negotiation." *Id.* ¶¶ 38-40; 42 U.S.C. § 300gg-111(c)(1)(A). If the parties cannot reach a resolution in thirty days, and all other prerequisites are met, the provider may initiate IDR through the IDR Portal. Compl. ¶ 41; *see* 42 U.S.C. § 300gg-111(c)(1)(B); 45 C.F.R. § 149.510(b)(2)(i) (2024).

3

Critically, a provider may only initiate IDR for a "qualified IDR item or service," subject to strict criteria. Compl. ¶ 43; 42 U.S.C. § 300gg-111(c)(1); 45 C.F.R. § 149.510(a)(2)(xi), (b)(1)-(2) (2024). Among other requirements: (1) the patient must have coverage via a group health plan or health insurance issuer, and not a government plan like Medicare or Medicaid; (2) the dispute must not be governed by a state surprise billing law; and (3) the provider must have exhausted open negotiations and initiated the dispute in a timely manner. Compl. ¶ 43; 42 U.S.C. § 300gg-111(c)(1); 45 C.F.R. § 149.510(a)(2)(xi), (b)(1)-(2) (2024).

## I.    The NSA Uses an Honor System to Prevent Initiation of Ineligible Disputes.

Because the NSA limits the IDR process to payment disputes over a "qualified IDR item or service" that meets strict eligibility criteria (Compl. ¶ 43), HHS requires providers to initiate IDR though an eligibility screening tool on the IDR Portal (https://nsa-idr.cms.gov/paymentdisputes/s/). Compl. ¶ 48. To initiate a dispute, the provider must answer "Qualification Questions" and submit an eligibility attestation, confirming that the eligibility criteria are met. *Id.* ¶¶ 48-60. This self-certification, provided in a sworn statement to multiple government agencies, constitutes an honor system that safeguards against the filing of ineligible disputes. *See id.*

Through the Qualification Questions, the IDR Portal reminds providers of all eligibility criteria required to initiate a dispute. *Id.* ¶¶ 43, 49-58. If the provider fills out any field with an answer that would render the dispute ineligible, the IDR Portal immediately advises them of ineligibility and prevents them from submitting the form altogether. *Id.* ¶¶ 53-55.

For example, one of the Qualification Questions asks when the party began the open negotiation process. *Id.* ¶ 54. The Portal makes clear that "[t]he thirty business-day open negotiation period must elapse before starting the federal IDR process." *See id.* If the initiating submission is not made within four business days after the end of the open negotiation period, the initiating party must provide supporting documentation warranting an extension. *Id.* ¶ 57.

4

After answering all Qualification Questions, the provider must complete a Notice of IDR Initiation form with a signed attestation that "to the best of my knowledge . . . the item(s) and/or service(s) at issue are qualified item(s) and/or service(s) within the scope of the Federal IDR process." *Id.* ¶¶ 58-59. By making that attestation and submitting the form, the provider causes a copy of the Notice of IDR Initiation, with the attestation, to be sent to the Departments, the IDRE, and the relevant health plan. *Id.* ¶ 60. As soon as the Notice of IDR Initiation is submitted, both parties are responsible for paying a $115.00 administrative fee that will not be refunded, even if the dispute is later found to be ineligible for IDR. *Id.* ¶ 76.

## II.    Unlike Court Proceedings or Commercial Arbitration, the IDR Process Lacks Safeguards to Protect Against Fraud.

While sometimes referred to as arbitration, IDR bears no resemblance to the process that term commonly denotes. Congress designed IDR as a highly informal procedure to resolve relatively low-value disputes, without the need for legal counsel, based on the submission of blind "offers." *See* 42 U.S.C. § 300gg-111(c)(5). IDR has no discovery, no evidentiary requirements, no hearings, no testimony (live or written), and no procedures to even view—much less verify and rebut—an opposing party's offer. *See id*; Compl. ¶¶ 72-73. Disputes are decided by private entities (IDREs), not an identifiable judge or arbitrator. *See* Compl. ¶ 38. IDRE payment determinations "include minimal justification or rationale," and there is "limited transparency into how [IDREs] evaluate submissions." Compl. ¶ 101 & n.20; *No Surprises Act Arbitrators Vary Significantly in Their Payment Decision Making Patterns*, GEORGETOWN UNIV. CENTER ON HEALTH INS. REFORMS, http://bit.ly/4heOcWQ. These procedural shortcomings recently led the government to urge IDREs to "reduce errors" and institute "robust quality assurance (QA) programs to verify dispute eligibility[.]" *Federal IDR Technical Assistance for Certified IDR Entities and Disputing Parties* (June 2025) ("June 2025 Technical Assistance"), https://bit.ly/4owqN5H.

**A.    IDR Provides No Meaningful Due Process to Dispute Providers' Misrepresentations of Eligibility.**

Once a provider submits a dispute through the IDR Portal, there is no meaningful due process for health plans to dispute eligibility. The NSA itself does not provide a process for addressing eligibility. *See* 42 U.S.C. § 300gg-111. Regulations state that a health plan may submit eligibility objections to HHS through the IDR Portal within three business days. 45 C.F.R. § 149.510(c)(1)(iii) (2024). The regulations do not require HHS to share these objections with the IDRE. *See id.* Instead, the regulations state that IDREs "must review the information submitted in the notice of IDR initiation"—which only contains the provider's attestation of eligibility—"to determine whether the Federal IDR process applies." Compl. ¶ 70; 45 C.F.R. § 149.510(c)(1)(v) (2024). No law or regulation requires IDREs to consider information beyond the notice of IDR initiation with the provider's attestation. *See id*. Moreover, the regulations do not require IDREs to conduct hearings or issue decisions (written or otherwise) addressing eligibility. *See id*.

**B.    IDREs Have a Financial Stake in Eligibility Decisions.**

IDRE eligibility "decisions" are further compromised by a perverse economic incentive that would immediately disqualify a factfinder in any court or arbitration: IDREs are not paid unless they decide that a dispute is eligible for IDR. Compl. ¶¶ 77, 128; 42 U.S.C. § 300gg-111(c)(5)(F); CMS, *CALENDAR YEAR 2023 FEE GUIDANCE FOR THE FEDERAL INDEPENDENT DISPUTE RESOLUTION PROCESS UNDER THE NO SURPRISES ACT*, http://bit.ly/48xP1Yc (Oct. 31, 2022) ("[C]ertified IDR entities may not collect fees for those cases that they ultimately determine are ineligible for the Federal IDR process.").[5] This means that health plans can only prevail in their

---

[5] AGS contends that "IDREs receive their fee in part for 'the costs incurred in determining' eligibility." AGS Br. 3-4. But the cited language comes from a response to a notice of rulemaking and is taken out of context. *See* Federal Independent Dispute Resolution (IDR) Process Administrative Fee and Certified IDR Entity Fee Ranges, 88 Fed. Reg. 88494, 88505 (Dec. 21, 2023) (noting that IDREs "set their certified IDR entity fees within ranges established by the

objections to eligibility if the IDRE both: (1) expends the uncompensated time and resources necessary to appropriately evaluate eligibility (which the regulations do not require), and (2) reaches a decision requiring it to forego any compensation whatsoever. IDREs' fees range from several hundred to over a thousand dollars per dispute. Compl. ¶ 76. Against Anthem alone, Defendants have initiated over 27,000 IDR disputes in under two years. *Id*. ¶ 10. The IDREs deciding those disputes stand to gain millions of dollars if, and only if, they decide Defendants' disputes are eligible for IDR and/or otherwise proceed to a payment determination.

### C. The NSA Enables Providers to Obtain Radically Inflated Rates Through IDR Payment Determinations.

Unless the IDRE decides that a dispute is ineligible and that it will forego payment, the dispute proceeds to a payment determination. Compl. ¶ 71. The payment determination process is often described as "baseball-style" or "final offer" dispute resolution. *Id.* ¶ 72. The provider and health plan each submit payment offers to the IDRE, and the IDRE must select one of the two offers. *Id.* Neither the provider nor the payor gets to examine or rebut the other's offer. *Id.*

In choosing between offers, the NSA requires IDREs to consider the Qualifying Payment Amount ("QPA") (an approximation of the plan's in-network rate) and several "additional circumstances," such as the provider's quality, market share, case mix, and scope of services. *Id.* ¶ 73; 42 U.S.C. § 300gg-111(c)(5)(C). Although IDREs must issue a written payment determination, the regulations do not require any explanation or reasoning. *See* 45 C.F.R. § 149.510(c)(4)(vi) (2024). IDREs typically provide threadbare decisions containing the dollar amount selected for the dispute and a boilerplate list of factors considered, with no explanation as

---

Departments to ensure they remain financially viable and that such fees can cover their operating expenses to participate in the Federal IDR process, which include the costs incurred in determining the eligibility of items and services for the Federal IDR process."). Defendants cannot and do not dispute that IDREs receive no fee of any kind when they dismiss claims as ineligible.

to why those factors support their determination. Compl. ¶ 101; *No Surprises Act Arbitrators Vary Significantly in Their Decision-Making Patterns*, HEALTH AFFAIRS ("*NSA Arbitrators Vary*"), https://bit.ly/3XQUUcO.

IDR payment determinations overwhelmingly favor providers. In the most recent reporting period, providers prevailed in 88% of payment determinations.[6] When providers prevail, they do so at a median rate that is over 4.5 times greater than the QPA. Compl. ¶¶ 105, 133. In other words, by accessing the IDR system, providers recover a median rate over 459% higher than in-network market rates for identical services. *Id.* The federal IDR process is far more lucrative for Defendants than Virginia's state process; by flooding the federal process with knowingly ineligible disputes, Defendants regularly procure payments for ineligible disputes that are 400% to 600% higher than amounts provided under Virginia state law. *See, e.g.*, *id.* ¶¶ 167, 177, 186, 205, 211, 222.

## III.   The Parties.

Plaintiffs Anthem BCBS and Healthkeepers are Health Maintenance Organizations that are incorporated with their principal place of business in Richmond, Virginia. Compl. ¶¶ 12, 13. They offer a range of health care plans, insurance contracts, and services to plan sponsors and members, including fully insured and self-funded employee health benefit plans. *Id.* ¶ 24. They are responsible for ensuring that claims are paid accurately and in accordance with plan terms. *Id.*

Defendant The Schumacher Group of Louisiana, Inc., d/b/a SCP Health, is a holding company whose subsidiaries and affiliates provide staffing and management services to hospitals and health care facilities, including in Virginia. Compl. ¶ 14. It is incorporated in the State of Louisiana and maintains a principal place of business at 200 Corporate Blvd., Lafayette, Louisiana

---

[6] *See* CMS, SUPPLEMENTAL BACKGROUND ON THE FEDERAL IDR PUBLIC USE FILES, JAN. 1, 2025-JUNE 30, 2025 at 4 (as of Jan. 21, 2026), www.cms.gov/files/document/federal-idr-supplemental-background-2025-q1-2025-q2.pdf; *see also* Compl. ¶ 105 (for July 1, 2024-Dec. 31, 2024, reports showed providers prevailed in 85% of IDR payment determinations).

70508 (the "Lafayette Address"). *Id.* One of its subsidiaries is Defendant The Schumacher Group of Virginia, Inc., which is incorporated in the Commonwealth of Virginia with its principal place of business also at the Lafayette Address. *Id.* ¶ 15. The Schumacher Group of Louisiana, Inc., and The Schumacher Group of Virginia, Inc., (together, "SCP") operate nationwide through a closely managed network of subsidiaries and affiliated emergency medicine groups—like the Provider Defendants—that contract with medical professional corporations and individual physicians to perform emergency services under SCP's control. *Id.* ¶ 7.

The Provider Defendants are limited liability companies incorporated in the Commonwealth of Virginia; each is a subsidiary of The Schumacher Group of Louisiana, Inc., and all provide emergency medical services at hospitals in Virginia. *See id.* ¶¶ 16-20.

Defendant AGS is a health care revenue cycle management company incorporated with a principal place of business in the State of Delaware. *Id.* ¶ 21. AGS serves as the billing and revenue cycle manager for SCP and its affiliated providers, including the Provider Defendants. *Id.* ¶ 155.

## IV.    Defendants' Fraudulent NSA Scheme.

Beginning no later than January 2024, Defendants launched the NSA Scheme to defraud Anthem by fraudulently submitting thousands of disputes to the IDR process that were ineligible because, among other things, they were subject to the Virginia Balance Billing Law. Compl. ¶ 109. The core of the NSA Scheme relies on Defendants' calculated bet that repeated misrepresentations that disputes meet the criteria for the federal IDR process would not be caught. *Id.* ¶ 110. Nearly 60% of the disputes initiated by Defendants against Anthem that have reached a payment determination have been ineligible for the IDR process. *Id.* As a result of these ineligible disputes, Defendants have fraudulently secured improper IDR awards totaling millions of dollars. *Id.*

At the heart of the NSA Scheme, Defendants knowingly make false representations and attestations of eligibility in submissions to the IDR Portal; these false statements are made to

9

Anthem, the IDREs, and the Departments, and are necessary steps for accessing the IDR process. *Id.* ¶¶ 4, 115-16. Defendants' false representations include, for example, knowingly initiating disputes for services governed by the Virginia Balance Billing Law, which renders them ineligible for the federal IDR process. *Id.* ¶¶ 111, 117. Defendants also knowingly submit thousands of disputes for services where no open negotiation occurred, fabricating start dates of open negotiation and uploading fictitious documents to bypass the IDR Portal's safeguards. *Id.* ¶¶ 118, 120. Defendants know that their representations of eligibility are false when they make them because of, among other things: Anthem's explanations of payment ("EOPs") stating that services are subject to the Virginia Balance Billing Law; Anthem's direct and repeated notices during open negotiations and after IDR initiation that claims are ineligible; the warnings and screening mechanisms on the IDR Portal; and resources on the first page of the IDR initiation process identifying states with applicable surprise billing laws. *Id.* ¶¶ 64-68, 116-19.

Defendants also exploit the volume of their disputes to overcome the minimal safeguards in the IDR process. Before the NSA went into effect, CMS estimated that there would be about 22,000 IDR disputes annually. *Id.* ¶ 89. Yet in 2024, initiating parties submitted nearly 1.5 million disputes. *Id.* ¶ 124. SCP and AGS are among the five most prolific filers of IDR disputes: during the last six months of 2024, SCP initiated no fewer than 81,010 disputes through the IDR process— averaging more than 443 IDR disputes against health plans per day. *Id.* ¶ 92. Defendants have pulled this off by strategically exploiting technology such as AI and robotic process automation to submit massive numbers of disputes all at once; AGS advertises that it uses "bots" to "log into portals, and submit offers" in the IDR Portal. *Id.* ¶¶ 112, 123.

For example, on a single day in September 2024, Defendants initiated 954 separate IDR proceedings against Anthem, of which Anthem's records show that ***943 were not eligible*** for IDR

in the first place. *Id.* ¶ 126. Defendants' flooding strategy is designed to overwhelm Anthem's ability to identify and object to ineligible disputes within the three business day window for objection and exploits a structure that disincentivizes IDREs from dismissing ineligible disputes. *See id.* ¶¶ 127-28. The NSA Scheme often succeeds despite Anthem's frequent objections to eligibility. *See, e.g., id.* ¶¶ 126, 130, 166, 176, 185, 192, 204, 238, 258, 264, 270, 276.

The final element of the NSA Scheme is what makes it so lucrative: Defendants submit and often prevail with hugely inflated payment demands well in excess of the QPA. *Id.* ¶¶ 131-32. Since 2024, Defendants' payment offers on ineligible disputes alone are more than 535% of Anthem's QPA for the service at issue. *Id.* ¶ 135. These amounts far exceed what the Provider Defendants could receive for their services in a competitive market and far exceed the amount that would be recovered under applicable state surprise billing laws. *Id.* ¶ 136.

Defendants carry out their NSA Scheme through the "SCP Enterprise" consisting of SCP, the Provider Defendants, and AGS, who have associated together with the common purpose of engaging in a course of conduct to carry out the scheme. *Id.* ¶ 110. Each Defendant plays a critical role in the NSA Scheme. The Provider Defendants provide emergency services to patients and generate the out-of-network claims that are the lifeblood of the NSA Scheme. *Id.* ¶¶ 151-52. SCP exercises managerial and operational control over the Provider Defendants by directing their staffing, coordinating their emergency services, setting their compensation, and—individually or through AGS—initiating IDR proceedings to seek additional payments for their services. *Id.* ¶¶ 144, 147, 150. AGS offers the means by which the SCP Enterprise floods the IDR process, leveraging automation tools, a standardized platform, and a shared communications infrastructure to submit disputes on behalf of the Provider Defendants at an industrial scale. *Id.* ¶¶ 144, 155-56.

AGS has publicly touted its "strategic partnership" with SCP to implement "a new

'arbitration process'" for challenging reimbursement shortfalls. *Id*. ¶ 155. "In AGS's own words, AGS and SCP work with 'a shared mindset' and collaborate 'to brainstorm solutions.'" Compl. ¶ 155, n.41 (quoting AGS HEALTH, PARTNERING FOR TRANSFORMATION: SCP HEALTH REDUCES COSTS BY 28% at 3 ("White Paper")).[7] The "new" process AGS implemented, which included the use of bots, "was a deliberate component of the SCP Enterprise's strategy to bypass the limitations of individual-provider capacity, automate the submission of disputes at scale, and conceal the ineligibility or inflation embedded in each claim." Compl. ¶¶ 156-58. AGS, SCP, and the Provider Defendants "coordinated to pursue the common purpose of exploiting the IDR process by maximizing the number of disputes submitted and inflating payment demands well beyond commercially reasonable rates." Compl. ¶ 158.

As AGS's White Paper explains in discussing the "new arbitration process": "Because states differ in their arbitration requirements, having a partner [*i.e.*, AGS] that understands the nuances is beneficial." White Paper at 3. This public declaration of expertise confirms AGS was the architect of the "new arbitration process" used by the SCP Enterprise's NSA Scheme, including the assessment of whether claims were subject to a state surprise billing law and therefore ineligible for IDR. Yet under the process the "AGS Health helped SCP develop" (*id.*), "nearly 60 percent of disputes from Defendants that reached a payment determination were ineligible for the IDR process" (Compl. ¶¶ 5, 110), despite Anthem's explicit notices of ineligibility and repeated objections (*e.g.*, *id.* ¶¶ 166, 192, 216, 238).[8] AGS's new process nevertheless pressed forward with those claims, showing that the 60% ineligibility rate was not the result of good-faith error, but a

---

[7] For the Court's convenience, Anthem attaches a copy of the White Paper as Exhibit 1 because the link provided in the Complaint requires registration to download the White Paper.

[8] Given that AGS was "directly integrated into SCP's systems" for the purpose of handling IDR disputes (Compl. ¶ 157), AGS was on notice even if communications and objections went to SCP.

calculated design integral to the scheme to illegally maximize Defendants' profits.

The SCP Enterprise has carried out the NSA Scheme for thousands of claims and across all Provider Defendants. For example, the IDR proceeding captioned DISP-788337 involved a service that Wildwood rendered on July 7, 2023, to a member of a health plan administered by Healthkeepers. *Id.* ¶ 266. Wildwood billed $2,089.00 for this service. *Id.* As a fully insured plan, the member's plan was subject to the Virginia Balance Billing Law—rather than the NSA—which dictates a $263.76 reimbursement rate. *Id.* When Healthkeepers issued payment, the remittance advice sent to Wildwood reflected that the claim was processed pursuant to an explanation code stating: "Following Virginia Balance Billing Laws and Rules, we paid the doctor/facility based on the member's benefits when they receive care in their plan's network." *Id.* ¶ 267. Despite this clear notice, Wildwood sent a notice of open negotiation purporting to "negotiate" 152 services at once. *Id.* ¶ 268. SCP then initiated IDR on behalf of Wildwood, in coordination with AGS, and falsely attested that the service was a qualified item or service within the scope of the federal IDR process. *Id.* ¶ 269. Healthkeepers submitted an explicit objection to eligibility, but neither Wildwood nor SCP withdrew the dispute, and AGS continued to press the claim. *Id.* ¶ 270. As a result, Healthkeepers was required to pay $1,091.00 for the ineligible service—for a total of approximately six times the state-mandated amount—along with $447.00 in unnecessary IDR-related fees. *Id.* ¶ 271.

## V.    Defendants' NSA Scheme Damages Anthem in Multiple Respects.

Defendants' NSA Scheme damaged Anthem in multiple independent ways. First, every time Defendants submit one of their hundreds of fraudulent disputes against Anthem to the IDR Portal, Anthem must pay a $115.00 administrative fee to HHS, which Anthem cannot recover even if the dispute is deemed ineligible. Compl. ¶ 76. Second, Anthem must spend enormous amounts of time and money to identify and contest hundreds of Defendants' fraudulent disputes. *Id.* ¶ 137.

13

Third, through their fraudulent submissions, Defendants have (so far) obtained millions of dollars in improper IDR awards against Anthem. *Id.* ¶¶ 10, 130, 137-40. Fourth, for each award in Defendants' favor, Anthem must also pay hundreds of dollars in fees to the IDRE. *Id.* ¶ 76. To date, Anthem has incurred hundreds of thousands of dollars in fees based on Defendants' fraudulent disputes, and it has been ordered to pay millions of dollars in ineligible and/or inflated IDR payments based on Defendants' knowingly false statements. *Id.* ¶¶ 10, 110.

## VI.    Causes of Action.

Anthem asserts thirteen causes of action against all Defendants for violations of RICO (Counts I and II); violation of the Virginia Business Conspiracy Statute (Count III); violation of the VCPA (Count IV); common law and constructive fraud (Counts V and VI); civil conspiracy (Count VII); conversion (Count VIII); vacatur of IDR determinations (in the alternative) (Count IX); and violations of ERISA (Count X). *See* Compl. ¶¶ 278-385.

## LEGAL STANDARD

On a motion to dismiss, the court must accept the facts in the complaint as true and construe them in the light most favorable to the plaintiff. *Hammock v. Watts*, 146 F.4th 349, 359 (4th Cir. 2025). "A complaint need not make a case against a defendant or forecast evidence sufficient to prove an element of the claim. It need only allege facts sufficient to state elements of the claim." *Robertson v. Sea Pines Real Est. Companies, Inc.*, 679 F.3d 278, 291 (4th Cir. 2012) (citation modified).

Rule 9(b)'s pleading standard applies to fraud claims. Courts must deny a motion to dismiss "under Rule 9(b) if [they are] satisfied (1) that the defendant has been made aware of the particular circumstances for which [they] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (internal citation omitted). Where, as here, a plaintiff pleads

14

numerous misrepresentations over an extended period of time, it need only plead particularized "examples of fraud" to "give the court confidence that permitting this case to proceed will not lead to a 'frivolous' 'fishing expedition.'" *United States ex rel. Virginia v. Century Park Cap. Partners, LLC*, No. 7:21-CV-420, 2025 WL 1959356, at *19 (W.D. Va. July 16, 2025) (citation omitted).

## ARGUMENT

### I. Defendants Cannot Avoid Judicial Review of Their Fraud.

Defendants seek dismissal based on inapplicable statutory and doctrinal grounds. Defendants: (1) misquote the NSA's Judicial Review Provision (42 U.S.C. § 300gg-111(c)(5)(E)(i)(II)) to argue that Anthem may only file a petition to vacate IDR awards via the Federal Arbitration Act ("FAA"), which is not true; (2) invoke the collateral attack doctrine, which does not apply in the absence of exclusive procedural remedies; (3) claim they are immune from liability under *Noerr-Pennington*, which does not apply to IDR proceedings or to factual misrepresentations; and (4) raise affirmative defenses of issue and claim preclusion without the necessary supporting proof or the ability to meet their elements. None of these arguments immunize Defendants' NSA Scheme.

### A. The NSA's Judicial Review Provision Does Not Apply to Anthem's Claims.

The plain language of the Judicial Review Provision applies solely to individual IDRE payment determinations. It does not limit judicial review of Defendants' NSA Scheme, through which they submitted thousands of knowingly ineligible disputes.[9]

---

[9] All of Defendants' authorities address claims to enforce or vacate individual IDRE payment determinations via the NSA. *See Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 275 (5th Cir. 2025) ("*HCSC*") (holding only that the NSA "contains no express right of action to enforce or confirm an IDR award"), *cert. denied*, No. 25-441, 2026 WL 79855 (U.S. Jan. 12, 2026); *Guardian Flight, L.L.C. v. Med. Evaluators of Tex. ASO, L.L.C.*, 140 F.4th 613, 620 (5th Cir. 2025) (dismissing vacatur claim disputing payment determination); *Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214, 225 (D. Conn. 2025) (finding NSA provides private right

To determine the scope of review under a statute, "we begin with the strong presumption in favor of judicial review," which can only be overcome by "clear and convincing indications that Congress meant to foreclose review." *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 370 (2018) (internal citation omitted); *see also Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (collecting cases). "To the extent there is ambiguity in the [provision] it must be resolved in [] favor" of providing for judicial review. *Salinas v. U.S. R.R. Ret. Bd.*, 592 U.S. 188, 196 (2021) (internal quotation and citation omitted); *accord McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 162 (2025). This presumption applies even when reviewing "statutes that [expressly] limit or preclude review." *Cuozzo Speed Techs. v. Com. for Intell. Prop.*, 579 U.S. 261, 273 (2016). "[I]n other words, the presumption dictates that such provisions must be read narrowly." *El Paso Natural Gas Co. v. United States*, 632 F.3d 1272, 1276 (D.C. Cir. 2011).[10]

There is no indication—much less "clear and convincing indications"—that Congress intended to bar judicial review of Defendants' NSA Scheme. The NSA states that "[a] determination of a certified IDR entity ***under subparagraph (A)*** . . . shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II) (emphasis added). The only "determination" an IDRE makes under subparagraph (A) is its decision to "select one of the offers submitted . . . to be the amount of payment." *Id.* § 300gg-111(c)(5)(A). The text of the Judicial Review Provision thus

---

of action to enforce IDR awards). None pertain to a fraudulent scheme involving the submission of knowingly ineligible disputes in violation of independent federal and state laws.

[10] AGS cites inapposite cases, none of which support its attempt to ignore the plain language of the Judicial Review Provision. *See Riley v. Bondi*, 606 U.S. 259, 263 (2025) ("30-day filing deadline" under INA was not jurisdictional); *Santos-Zacaria v. Garland*, 598 U.S. 411, 431 (2023) (exhaustion requirement under INA not a jurisdictional precondition to judicial review); *Nat'l Ass'n of Gov't Emps. v. Fed. Lab. Rels. Auth.*, 830 F. Supp. 889, 891 (E.D. Va. 1993) (finding Federal Service Labor–Management Relations Statute granted Federal Labor Relations Authority unreviewable discretion to correct arbitral awards involving military promotion decisions).

16

only limits judicial review of the IDRE's selection of a "Payment Determination." Defendants ignore this narrowing language. SCP Br. 7; AGS Br. 12. Nothing in the NSA suggests that a scheme involving thousands of ineligible disputes is immune from judicial review.

The Departments' NSA-implementing regulations confirm that the Judicial Review Provision is strictly limited to IDRE payment determinations, and there is no limitation that applies to the NSA Scheme. Under 45 C.F.R. § 149.510(c)(4)(vii) ("Effects of Determination"), HHS specified that "[a] determination made by a certified IDR entity under paragraph (c)(4)(ii) of this section . . . is not subject to judicial review [.]" The sole determination described under (c)(4)(ii) is the IDRE's decision to "[s]elect as the out-of-network rate for the qualified IDR item or service one of the offers submitted" by the parties. The regulatory language addressing IDRE decisions on eligibility appears in a different provision: paragraph (c)(1)(v) ("[T]he certified IDR entity selected must . . . determine whether the Federal IDR process applies."). Like the NSA itself, these regulations confirm the limitation on judicial review does not apply to any decisions regarding eligibility, which is at the heart of Defendants' fraud. Congress has created an extremely narrow restriction on judicial review that applies exclusively to IDRE payment determinations "under subparagraph (A)." 42 U.S.C. § 300gg-111(c)(5)(E) (i)(II).

Federal legislation in other contexts further confirms that Congress intended to limit judicial review solely for IDRE payment determinations. For example, the Congressional Review Act broadly states, "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. The Veterans Judicial Review Act similarly states that the Secretary "shall decide *all questions of law and fact* necessary to" address "the provision of benefits," and "the decision of the Secretary *as to any such question* shall be final and conclusive and may not be reviewed by any other official or by any court . . . ." 38 U.S.C. § 511 (emphasis

17

added). Such language is glaringly absent from the NSA. Had Congress intended to broadly preclude judicial review of all decisions by an IDRE under the NSA, it would have done so. Instead, it solely limited judicial review of the IDRE's selection of the payment determination "under subparagraph (A)." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II).

## B.    The Collateral Attack Doctrine Does Not Apply Because the NSA Does Not Incorporate FAA Procedures, Much Less Make Them an Exclusive Remedy.

Defendants' effort to invoke the collateral attack doctrine similarly fails, because Congress did not enact any *procedural* limitations in the NSA for judicial review. The collateral attack doctrine prevents parties from circumventing the "exclusive remedy" for seeking judicial review of a court judgment or arbitration award. *See Bachman Sunny Hill Fruit Farms, Inc. v. Producers Agriculture Ins. Co.*, 57 F.4th 536, 543 (6th Cir. 2023). With courts, parties must follow state or federal court procedures to appeal a final and binding judgment. *E.g.*, Fed. R. App. P. 4. With arbitrations, parties must follow the FAA's procedures to confirm or contest a final and binding arbitration award. 9 U.S.C. §§ 5, 9, 12; *see Corey v. N.Y. Stock Exch.*, 691 F.2d 1205, 1212-13 (6th Cir. 1982) ("The three month notice requirement in section 12 [of the FAA] for an appeal of the award . . . is meaningless if a party to the arbitration proceedings may bring an independent direct action asserting such claims outside of the statutory time period provided for in section 12."); *see also Ctr. for Excellence in Higher Educ., Inc. v. Accreditation All. of Career Schs. & Colleges*, 166 F.4th 452, 461 (4th Cir. 2026) ("[T]he impermissible-collateral-attack rule is necessary to fully effectuate the exclusivity of the Federal Arbitration Act."). The collateral attack doctrine has no application to Defendants' NSA Scheme for multiple reasons.

*First*, there is no "exclusive remedy" that limits the Court's review of Defendants' NSA Scheme. *Cf. Bachman Sunny Hill Fruit Farms*, 57 F.4th at 543; *Ctr. for Excellence in Higher Educ.*, 166 F.4th at 461. The NSA only limits judicial review of the IDRE's selection of the payment

18

determination. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); *see supra* Section I.B. Anthem is seeking

relief due to Defendants' scheme to flood the IDR process with knowingly ineligible disputes. *See*

Compl. ¶¶ 1-11. Because there is no "exclusive remedy" for seeking relief due to Defendants'

fraudulent NSA Scheme, the collateral attack doctrine does not apply.

     ***Second***, even for challenges to the IDRE's selection of the payment determination (and

this case does not bring such a challenge), the NSA does not dictate an "exclusive remedy"[11] that

could implicate the collateral attack doctrine. The NSA provides that "[a] determination of a

certified IDR entity under subparagraph (A) . . . shall not be subject to judicial review, except in a

case described in any of paragraphs (1) through (4) of section 10(a) of title 9 [*i.e.*, the FAA]." 42

U.S.C. § 300gg-111(c)(5)(E)(i)(II). As the court in *Med-Trans Corp.* noted:

> Although this explains the grounds upon which a party may challenge an award, it
> does not discuss how to raise this challenge. In the FAA, those rules are found in
> other sections, such as §§ 6, 9, and 12 of the FAA. But the NSA does not invoke or
> discuss §§ 6, 9, 12, or any other sections of the FAA . . . . [C]ourts must presume
> that a legislature says in a statute what it means and means in a statute what it says
> there. Congress invoked four paragraphs of the FAA to describe "cases" where an
> IDR decision may be "subject to judicial review"—nothing more. 42 U.S.C.
> § 300gg-111(c)(5)(E)(i)(II). The FAA's procedural requirements for vacating an
> award . . . are not incorporated.

700 F. Supp. 3d at 1083 (internal citations omitted); *see also HCSC*, 140 F.4th at 276 ("Congress

chose not to incorporate § 9 [governing award confirmation] into the NSA.").

---

[11] None of Defendants' authorities support the proposition that "the exclusive means to challenge
a binding IDR award in court is to seek vacatur[.]" AGS Br. 12. Some simply addressed the
question of whether the NSA provides a private right of action to *enforce* IDR awards. *See HCSC*,
140 F.4th at 275; *Aetna*, 789 F. Supp. 3d at 225. Others dismissed requests to vacate IDR payment
determinations where: (1) the petitioner ***was*** challenging the IDRE's selection of the payment
determination; (2) the petitioner did not assert any other claims; (3) the petitioner did not dispute
IDR eligibility; and (4) the petitioner's allegations did not meet one of the four circumstances in 9
U.S.C. § 10(a)(1)-(4). *See Med. Evaluators*, 140 F.4th at 620 (petitioner failed to adequately plead
fraud); *Reach Air*, 160 F.4th at 1115 (petitioner challenges IDRE's reasoning for payment
determination, which is not subject to judicial review).

In contrast to the NSA, Congress has expressly incorporated FAA procedures into other statutes, either by listing out each provision or incorporating all of Title 9.[12] Congress chose not to do so with the NSA, and Defendants' request to read the FAA's procedures into the NSA must be rejected. *See Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) ("Atextual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision.") (citations and internal quotations omitted); *accord Turtle Island Restoration Network v. Evans*, 284 F.3d 1282, 1296 (Fed. Cir. 2002) ("When Congress omits from a statute a provision found in similar statutes, the omission is typically thought deliberate.").

**Third**, even if Anthem were disputing individual Payment Determinations (and it is not), it would still be entitled to seek judicial review because the IDREs "exceeded their powers" by issuing determinations on ineligible disputes. 9 U.S.C. § 10(a)(4). The NSA only permits IDREs to issue a payment determination for a dispute over a "qualified IDR item or service." 42 U.S.C. § 300gg-111(c)(5)(A). Anthem pleads that IDREs issued thousands of payment determinations for services that were plainly not "qualified IDR item[s] or service[s]." *E.g.*, Compl. ¶¶ 323, 373. As contemplated by the Judicial Review Provision, this is a "case described in" 9 U.S.C. § 10(a)(4) because the IDREs "acted outside the scope of the authority granted" to them, *see Jones v. Dancel*, 792 F.3d 395, 405 (4th Cir. 2015), and "exceeded the bounds of arbitrable [] disputes" under the NSA. *Raymond James Fin. Servs., Inc. v. Bishop*, 596 F.3d 183, 193 (4th Cir. 2010).[13]

---

[12] *See, e.g.*, 5 U.S.C. § 580(c) (government employment disputes) ("A final award . . . may be enforced pursuant to sections 9 through 13 of title 9."); 29 U.S.C. § 1401 (ERISA) (awards shall be enforced "under Title 9"); 35 U.S.C. § 294 (patent disputes) ("[A]wards by arbitrators and confirmation of awards shall be governed by title 9 . . . ."); 41 U.S.C. § 7107 (agency contract disputes) ("[C]onfirmation of awards shall be governed by title 9.").

[13] AGS cites *Three S Delaware, Inc. v. DataQuick Info. Sys., Inc.*, to suggest that courts must defer to an arbitrator's determination that a dispute is subject to arbitration. AGS Br. 32. But there, both parties agreed the dispute fell within a contractual arbitration provision. 492 F.3d 520, 531 (4th Cir. 2007). The court deferred to the arbitrator's finding that, during the arbitration hearing,

20

Anthem may also seek judicial review of IDR payment determinations because they were "procured by . . . fraud." 9 U.S.C. § 10(a)(1). "[P]erjury materially related to an issue in the arbitration" is sufficient to meet this standard. *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383-84 (11th Cir. 1988).[14] As discussed *infra* in Section II.B.1, Anthem does not plead good faith mistakes about "contestable evidentiary matters," but rather a "willful intent to give false testimony." SCP Br. 17-18. And while this fraud is not newly discovered (*see* AGS Br. 31-32; SCP Br. 17), "the purpose of requiring fraud to be newly discovered . . . is to avoid reexamination, by the courts, of credibility matters which either could have been or were in fact called into question during the course of the arbitration proceedings." *Portis v. Ruan Transportation Mgmt. Sys., Inc.*, No. 7:15CV00118, 2016 WL 7388403, at *3 (W.D. Va. Dec. 19, 2016) (internal citation omitted). This principle presumes the existence of an opportunity to challenge fraud "at a confrontational, adversarial hearing[.]" *Pour Le Bebe, Inc. v. Guess? Inc.*, 112 Cal. App. 4th 810, 833 (2003); *see also Weirton Med. Ctr., Inc. v. QHR Intensive Res., LLC*, 682 F. App'x 227, 228 (4th Cir. 2017) (plaintiff "had the opportunity to question" witnesses at arbitration hearing); *Belmont Partners, LLC v. Mina Mar Grp., Inc.*, 741 F. Supp. 2d 743, 754 (W.D. Va. 2010) (motion to vacate was "an attack on the witness's credibility and the arbitrator's assessment of it") (internal citation omitted).

Here, there was no "confrontational, adversarial hearing" on eligibility. *See supra* pp. 3-8. While Anthem did often object to eligibility, IDREs generally issue no written eligibility decisions,

---

claimant had asserted contract damages for a particular time period and thus that it had authority to grant that portion of damages. *Id*. The law is clear that "the question of whether the parties agreed to arbitrate" an issue in the first place "is to be decided by the court, not the arbitrator." *See AT&T Techs.*, 475 U.S. at 649; *cf. Gulfstream Aerospace Corp. v. Optical Air Data Sys., LLC*, 517 F. Supp. 3d 542, 568 (E.D. Va. 2021) (neither party disputed arbitrability and award of attorney's fees did not exceed arbitrator's authority because contract did not prohibit fee award).

[14] Defendants' citation to other cases involving fraud in IDR proceedings are inapposite. *See Med. Evaluators,* 140 F.4th at 622 (plaintiff failed to plead any specific misrepresentation about QPA in single IDR proceeding); *Reach Air,* 160 F.4th at 1122 (same).

much less decisions addressing any claims of fraud. *See id.*; *cf. RZS Holdings AVV v. PDVSA Petroleos S.A.*, 598 F. Supp. 2d 762, 772 (E.D. Va. 2009)[15] (The "award indicates that these allegations were considered and determined to be baseless."). And in any event, "[f]raud properly embraces a situation in which the supposedly neutral arbitrator exhibits a complete unwillingness to respond . . . to any evidence or argument in support of one of the parties' positions." *Pac. & Arctic Ry. & Nav. Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir. 1991). This is precisely what has occurred here; IDREs are not required to consider Anthem's objections and are financially incentivized to disregard them. *See supra* p. 6.

**Fourth**, Anthem seeks injunctive and other relief that cannot possibly be construed as a collateral attack on any prior IDR award because it is not seeking "the relief [it]sought in arbitration" but failed to procure. *Ctr. for Excellence*, 166 F.4th at 461-62.[16] Anthem is challenging Defendants' NSA Schemes—which are far broader than any individual IDR proceeding—and seeks relief that it could not have obtained in IDR proceedings or via vacatur (Count IX). Anthem seeks "[i]njunctive relief prohibiting Defendants from continuing to submit false attestations and from continuing to initiate IDR for items or services that are not qualified for IDR" to prevent future injury from the NSA Scheme. Compl. at 103.[17] And Anthem also seeks damages for: (1)

---

[15] *Walnut St. Sec., Inc. v. Lisk* is inapposite. SCP Br. 18. In that case, the court denied a motion to vacate because the defendant corrected the alleged misrepresentation during the arbitration and thus could not have mislead the tribunal. 497 F. Supp. 2d 714, 723 (M.D.N.C. 2007).

[16] *See also Gulf Petro Trading Co., Inc. v. Nigerian Nat. Petroleum Corp.*, 512 F.3d 742, 750 (5th Cir. 2008) (plaintiff's damages are simply the "award it believes it should have received"); *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906, 910 (6th Cir. 2000) (plaintiff sought only to "rectify the alleged harm she suffered by receiving a smaller arbitration award than she would have received"); *Fakhri v. Marriot Int'l Hotels, Inc.*, 201 F. Supp. 3d 696, 716 (D. Md. 2016) (plaintiff was seeking "the very same damages that were presented to the ICC [arbitrators]").

[17] In *Texas Brine*, the plaintiff's only "equitable" relief was "disgorge[ment]" of amounts paid during the arbitration," not injunctive relief. 955 F.3d 482, 489 (5th Cir. 2020). And while the plaintiff in *Ctr. for Excellence* purported to seek injunctive relief, its injunctive relief consisted of an order vacating the arbitrator's decisions and enjoining due process violations that the arbitrator

22

time and money spent addressing Defendants' fraudulent submissions, and (2) IDR administrative fees paid to HHS, which are not refundable. *See supra* pp. 13-14. *Anthem incurs these damages even in the IDR proceedings in which it prevails*. Anthem could not recover its injunctive relief or these damages in IDR (or through vacatur), and thus it not pursuing the "award it believes it should have received." *Gulf Petro Trading Co., Inc.*, 512 F.3d at 750.

**C.     The *Noerr-Pennington* Doctrine Does Not Immunize Defendants from Liability for Their Fraudulent NSA Scheme.**

Defendants defrauded Anthem by initiating thousands of IDR proceedings with knowingly false attestations of eligibility to obtain millions of dollars in payment determinations for patently ineligible disputes. Defendants claim that they were engaging in "core petitioning activity," under the First Amendment and that their fraudulent NSA Scheme should therefore be immune to liability under the *Noerr-Pennington* doctrine. *E.g.*, SCP Br. 28. They are wrong.

Defendants' argument is premature. Because *Noerr-Pennington* is an affirmative defense, courts routinely "decline[] to address the *Noerr-Pennington* doctrine at the motion to dismiss stage[.]" *Navient Sols., LLC v. L. Offs. of Jeffrey Lohman*, No. 119CV461LMBTCB, 2020 WL 1867939, at *4 (E.D. Va. Apr. 14, 2020) (citing *Waugh Chapel South. LLC v. United Food & Commercial Workers Union Local 27*, 728 F.3d 354, 362 (4th Cir. 2013)).[18] In any event,

---

held did not exist. 166 F.4th at 461–62. In other words, the plaintiff sought the exact same injunctive relief it had sought in the underlying arbitration.

[18] In arguing the Court should apply the *Noerr-Pennington* doctrine now, Defendants cite inapposite decisions on whether plaintiffs adequately pled the requirements for the sham exception to *Noerr*, which is not at issue here. *See RE/MAX LLC v. M.L. Jones & Assocs., Ltd.*, No. 5:12-CV-768-D, 2013 WL 4647517, at *3 (E.D.N.C. Aug. 29, 2013); *Nursing Registry, Inc. v. E. N.C. Reg'l Emergency Med. Servs. Consortium, Inc.*, 959 F. Supp. 298, 305 (E.D.N.C. 1997); *Syngenta Crop Prot., LLC v. Atticus, LLC*, 2022 WL 842938, at *3 (E.D.N.C. Mar. 21, 2022); *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 770 F. Supp. 1054, 1063-64 (D. Md. 1991); *WCCB-TV, Inc. v. Telerep, Inc.*, 601 F. Supp. 284, 285-86 (W.D.N.C. 1984); *EQMD, Inc. v. Farm Bureau Gen. Ins. Co.*, 2021 WL 843145, at *5-8 (E.D. Mich. Mar. 5, 2021).

23

Defendants' argument fails as a matter of law for at least two reasons. First, IDR disputes "before a private organization do not implicate the First Amendment," such that applying *Noerr* immunity would be "far-removed from the constitutional foundation for the doctrine." *Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 862, 868-69 (E.D. Va. 2013). Second, even in public court proceedings, factual misrepresentations are not entitled to *Noerr* immunity. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972).

### 1.    *Noerr* Immunity Does Not Apply in a Private Commercial Dispute.

*Noerr* immunity does not apply to Defendants' false statements made as part of a private payment dispute before private companies (IDREs). *Ford Motor Co.*, 972 F. Supp. 2d at 868-69. *Noerr* immunity is premised on the First Amendment's Petition Clause, and "guarantees citizens their First Amendment right to petition the government for redress without fear of [] liability." *Baltimore Scrap Corp. v. David J. Joseph Corp.*, 237 F.3d 394, 398 (4th Cir. 2001). The doctrine protects "conduct (including litigation) aimed at influencing decision making by the government." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014) (applying *Noerr* immunity to statements in public court litigation). The Supreme Court created the doctrine to immunize legitimate efforts to lobby the government. *See, e.g.*, *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 525-27 (2002). The Fourth Circuit has consistently applied it only to actions that seek relief from a defendant's petitioning of the government. *See*, *e.g.*, *Baltimore Scrap Corp.*, 237 F.3d at 398; *A Fisherman's Best, Inc. v. Recreational Fishing All.*, 310 F.3d 183, 189 (4th Cir. 2002) (*Noerr-Pennington* "states that horizontal competitors may join together to lobby government[.]"); *Eden Hannon & Co. v. Sumitomo Tr. & Banking Co.*, 914 F.2d 556, 564 (4th Cir. 1990) (*Noerr* applies to "the filing of a lawsuit (or the seeking of other government action)[.]"); *Navient Sols., LLC v. Lohman*, 136 F.4th 518, 524-25 (4th Cir. 2025) (holding that "the district court's decision to immunize the TCPA arbitrations . . . may have been error" but that it was

24

unnecessary to decide because the plaintiff's damages claims related only to litigation); *see also BCD, LLC v. BMW Mfg. Co.*, No. 6:05-CV-2152-GRA, 2008 WL 304878, at *12 (D.S.C. Jan. 31, 2008) (*Noerr* "immuniz[es] parties from liability for efforts to seek relief from the government."); *Titan Am. LLC v. Riverton Inv. Corp.*, 264 Va. 292, 301 (2002) ("This doctrine is based on the federal constitutional rights to free speech and to petition the government" and "has been expanded to apply to actions taken in adjudicatory proceedings before administrative agencies and courts.").

Defendants submit false attestations of eligibility in non-public IDR proceedings before private IDREs that may independently issue "binding" payment determinations with no agency review or government input. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I). Such statements "before a private organization do not implicate the First Amendment." *Ford Motor Co.*, 972 F. Supp. 2d at 868-69.[19] There is no precedent from the Supreme Court, the Fourth Circuit, or any other U.S. Court of Appeals applying *Noerr* immunity to petitioning directed to non-governmental bodies like IDREs. Defendants cite only inapt and unpersuasive decisions to stretch *Noerr* beyond its recognized scope.[20] AGS asserts that *Noerr* applies because "the IDR procedure has the character of an agency adjudication." AGS Br. 28. But its cited authority held that *Noerr* immunity applies only where the harm at issue "is the result of valid *governmental* action, as opposed to private action." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1998) (citation omitted) (emphasis added); *see also Trucking Unlimited*, 404 U.S. at 510 (*Noerr* applies only to

---

[19] Defendants make false statements to the Departments via the IDR Portal, but *Noerr* does not apply if "the government acts in a [] ministerial or non-discretionary capacity in direct reliance on the representations made by private parties." *In re Buspirone Pat. Litig.*, 185 F. Supp. 2d 363, 369 (S.D.N.Y. 2002). The Departments do not exercise discretion based on Defendants' falsehoods; the IDR Portal relies on those misrepresentations to automatically grant access to the IDR process.

[20] *Med. Evaluators* (SCP Br. 29) did not address *Noerr* immunity at all, nor did it find that IDREs are "quasi-public" entities. Instead, it found only that IDREs are "arbiters of payment disputes" and therefore concluded they enjoy arbitral immunity. 140 F.4th at 623. The Court expressly based its decision on the IDREs' function in resolving disputes and not their status. *Id.*

allegations of harm to plaintiff resulting directly from action by government officials). With IDR, there is no discretionary "government action;" IDREs select and issue payment determinations.

Defendants' reliance on *Eurotech, Inc. v. Cosmos Eur. Travels Aktiengesellschaft* is also misplaced. 189 F. Supp. 2d 385, 392 (E.D. Va. 2002). *Eurotech* involved an isolated dispute brought under the World Intellectual Property Organization's ("WIPO") Uniform Domain Name Dispute Resolution ("UDRP") Policy. WIPO is a "quasi-public organization that is an integral part of the United Nations." 189 F. Supp. 2d at 392; *see also* About WIPO, World Intellectual Property Organization, https://bit.ly/40yl99j (last visited Mar. 16, 2026) (WIPO is a "United Nations agency"). WIPO UDRP proceedings are disputes over public registrations of Internet domain names and involve formal complaints, arbitral records, and published reasoned decisions. WIPO Guide to the UDRP, WIPO, https://bit.ly/4bfmwjr (last visited Mar. 16, 2026).

WIPO UDRP proceedings bear no resemblance to IDR. An IDRE is neither a government agency nor a "quasi-public organization that is an integral part of" or an agency. Rather, IDREs apply to the Departments for certification and function as private contractors. Moreover, IDR proceedings do not: (1) involve matters of public concern (*e.g.*, public registration of Internet domain names), (2) proceed with formal complaints or arbitration records, or (3) result in published reasoned decisions. Rather, IDR is a purely private commercial dispute resulting in a privately issued payment determination by private entities with minimal justification or rationale.[21] Because IDR proceedings do not implicate First Amendment concerns, *Noerr* does not apply.[22]

---

[21] Providers' attempt to invoke Virginia's "public-concern" test fails. *See* SCP Br. 29-30. Their authorities do not address *Noerr*, and private disputes over the amount owed for a service does not implicate the First Amendment simply because the service relates to health care. *See supra* Section V.

[22] *USS-POSCO Indus. v. Contra Costa Cnty.* is inapposite. SCP Br. 29. That case applied *Noerr-Pennington* to a policy campaign involving eight labor arbitrations, thirty-six lawsuits, and extensive lobbying activities. 31 F.3d 800, 804, 810 n.9 (9th Cir. 1994). As the Supreme Court

### 2.    *Noerr* Does Not Immunize Fraud in Adjudicatory Proceedings.

*Noerr* does not apply to Defendants' NSA Scheme for a second, independent reason: Defendants' intentional misrepresentations of fact preclude *Noerr* immunity as a matter of law. *See Trucking Unlimited*, 404 U.S. at 513 ("Misrepresentations . . . are not immunized when used in the adjudicatory process."). The fraud exception to *Noerr* is distinct from the sham litigation exception and applies where the defendant made misrepresentations in an adjudicative setting that "deprive[] litigation of its legitimacy." *Baltimore Scrap Corp.*, 237 F.3d at 402; *see also, e.g.*, *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) (distinguishing "intentional misrepresentations to the court" from other types of shams).[23]

Although the Fourth Circuit has not yet ruled on a case where the fraud exception applies, it has acknowledged that the exception may be recognized. *See Baltimore Scrap Corp.*, 237 F.3d at 401-02; *see also DeLoach v. Philip Morris Companies, Inc.*, No. 1:00CV01235, 2001 WL 1301221, at *11 (M.D.N.C. July 24, 2001) ("While neither the Supreme Court nor the Fourth Circuit has addressed the question of whether fraudulent submissions to a government agency acting on that information are prohibited by the antitrust laws, other circuits have held that such activity violates the Sherman Act."). Courts across the country have also recognized the fraud

---

recognized, the immunity in *USS-POSCO* turned on the unions' "lobbying officials or petitioning courts and agencies . . . ." *BE & K Constr.,* 536 U.S. at 521.

[23] Defendants' arguments and authorities addressing the sham litigation exception—which applies when plaintiffs are not actually trying to prevail in the underlying proceeding—are inapposite. *See, e.g.*, *Octane Fitness*, 572 U.S. at 555–56; *Pro. Real Estate Inv., Inc. v. Columbia Pictures, Indus.*, 508 U.S. 49, 60 n.5 (1993); *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991); *A Fisherman's Best, Inc. v. Recreational Fishing All.*, 310 F.3d 183, 191 (4th Cir. 2002); *Baltimore Scrap Corp. v. David J. Joseph Corp.*, 237 F.3d 394, 399 (4th Cir. 2001) *Eden Hannon & Co. v. Sumitomo Tr. & Banking Co.*, 914 F.2d 556, 565 (4th Cir. 1990); *U.S. Futures Exch., L.LC. v. Bd. of Trade of City of Chi., Inc.*, 953 F.3d 955, 963 (7th Cir. 2020); *VIBO Corp. v. Conway*, 669 F.3d 675, 686 (6th Cir. 2012); *Knology, Inc. v. Insight Commc'ns Co.*, 393 F.3d 656, 658 (6th Cir. 2004); *CareFirst of Md. v. Johnson & Johnson*, 2025 WL 3486761, at *9 (E.D. Va. Oct. 10, 2025); *BCD, LLC v. BMW Mfg. Co.*, 2008 WL 304878, at *14 (D.S.C. Jan. 31, 2008).

27

exception. *See, e.g.*, *U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chicago, Inc.*, 953 F.3d 955, 960 (7th Cir. 2020) ("Fraudulent misrepresentations made in an adjudicative proceeding before an administrative agency are not protected[.]"); *Amphastar Pharm. Inc. v. Momenta Pharm., Inc.*, 850 F.3d 52, 56 (1st Cir. 2017) (*Noerr-Pennington* "has a well-established exception for knowing misrepresentations[.]") (citation modified); *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 124 (3d Cir. 1999) ("[A] *material* misrepresentation that affects the very core of a litigant's . . . case will preclude *Noerr–Pennington* immunity."); *Whelan v. Abell*, 48 F.3d 1247, 1255 (D.C. Cir. 1995) ("However broad the First Amendment right to petition may be, it cannot be stretched to cover petitions based on known falsehoods."); *St. Joseph's Hosp., Inc. v. Hosp. Corp. of America*, 795 F.2d 948, 955 (11th Cir. 1986) ("Misrepresentations . . . do not enjoy *Noerr* immunity."); *Potters Med. Ctr. v. City Hosp. Ass'n*, 800 F.2d 568, 580 (6th Cir. 1986) (holding that the "willful submission of false facts" does not enjoy *Noerr* immunity).

Anthem alleges that Defendants' false attestations "deprive[] [the IDR proceeding] of its legitimacy" by allowing initiation of IDR for statutorily ineligible disputes. *See Baltimore Scrap Corp.*, 237 F.3d at 402. Congress limited the IDR process to disputes over a "qualified IDR item or service," and Defendants' NSA Scheme pushes patently ineligible disputes to payment determinations where the IDRE clearly has no jurisdiction. *See* 42 U.S.C. § 300gg-111(c). Without those misrepresentations, there would have been no IDR proceedings. For that reason, Defendants' misrepresentations are not protected petitioning activity and do not enjoy *Noerr* immunity.

**D.     Collateral Estoppel Does Not Apply to Anthem's Claims.**

The IDR payment determinations that Defendants procured through their fraudulent NSA Scheme do not collaterally estop Anthem's claims. No IDRE has (or can) evaluate Anthem's allegations regarding Defendants' scheme to submit thousands of knowingly ineligible IDR disputes against Anthem. Nor did Congress (or even the Departments) dictate meaningful

procedures in any law or regulation addressing eligibility for any individual IDR proceeding.

In the NSA, Congress did not delegate eligibility decision making to IDREs. *See* 42 U.S.C. § 300gg-111. And the regulations simply state that, for each individual IDR proceeding, an IDRE "must review the information submitted in the notice of IDR initiation to determine whether the IDR process applies," which only includes information provided by the initiating party (*i.e.*, Defendants). Compl. ¶ 70; 45 C.F.R. § 149.510(c)(1)(v) (2024). The eligibility decision-making process is "a cursory review by the IDRE based on incomplete, one-sided information." Compl. ¶ 70. No regulation requires an IDRE to conduct hearings, consider a health plan's factual objections, or issue decisions (written or otherwise) describing their rationale. *See id.* And IDREs have a vested financial interest in finding a dispute eligible because "they only receive compensation if a dispute reaches a payment determination." *Id*. ¶ 128; *supra* pp. 6-7.

The Court should disregard nonbinding guidance cited by Defendants to dispute the Complaint's well-pleaded facts and the plain language of the NSA and its implementing regulations. *See* SCP Br. 5-6. Courts may take judicial notice of the "existence of [public] documents," not "the underlying facts included within these documents." *Kale v. Alfonso-Royals*, 139 F.4th 329, 336 n.4 (4th Cir. 2025); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) (a district court errs by "assum[ing] the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings, [and taking] judicial notice of the truth of disputed factual matters.") (internal citation omitted).

Citing nonbinding guidance, Defendants argue IDREs must also review "the notification from the non-initiating party claiming the Federal IDR Process is inapplicable . . . to determine whether the Federal IDR process applies." SCP Br. 5-6 (citing https://www.cms.gov/files/document/rev-102822-idr-guidance-disputing-parties.pdf). But that is

not evidence of a full and fair review process in practice. And after this guidance, the Departments admonished IDREs to "reduce errors" and adopt "robust quality assurance (QA) programs to verify dispute eligibility[.]" *See* June 2025 Technical Assistance. Nonbinding guidance cannot override the plain language of the NSA,[24] controlling regulations, and Anthem's Complaint.

Collateral estoppel is also an affirmative defense, which means "the party asserting the defense bears the burden of proof." *Driggs v. Cent. Intel. Agency*, No. 1:23CV1124 (DJN), 2025 WL 2242761, at \*7 (E.D. Va. Aug. 6, 2025). When raised on a motion to dismiss, the party asserting estoppel must provide evidence to demonstrate with "certainty that [the prior proceeding] decided the identical issue raised" in the subsequent action. *O'Reilly v. Cnty. Bd. of Appeals for Montgomery Cnty., Md.*, 900 F.2d 789, 792 (4th Cir. 1990); *In re Hadley*, No. 09-73717-FJS, 2011 WL 3664746, at \*15, n.6 (Bankr. E.D. Va. Aug. 19, 2011) (party asserting collateral estoppel must provide evidence confirming "what precise issues were actually litigated" in the prior action). Defendants do not and cannot submit evidence of any decision regarding the NSA Scheme or even the eligibility of any individual IDR dispute. Thus, their argument fails at the outset.

Defendants also cannot establish the elements of collateral estoppel, which require that the issue or fact is: (1) "identical to the one previously litigated," (2) "was actually resolved in the prior proceeding," (3) "was critical and necessary to the judgment in the prior proceeding," (4) "the judgment in the prior proceeding is final and valid,"[25] and (5) Anthem "had a full and fair

---

[24] Even if the NSA were ambiguous (it is not), courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2025).

[25] Defendants simultaneously argue that IDR decisions are binding but also that "there exists an eligibility reconsideration process" under which "a party may seek to re-open closed IDR proceedings for 'jurisdictional error[s],' such as when an IDRE 'incorrectly determines' eligibility." AGS Br. 8, n.4. The cited guidance states this process "is not intended to have the force of law." June 2025 Technical Assistance. The new process also does not state that it provides an exclusive remedy, and it could not remedy or enjoin Defendants' NSA Scheme.

opportunity to litigate the issue or fact in the prior proceeding." *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004).

### 1. The Issues Are Not Identical Because IDREs Did Not Determine Whether Defendants Engaged in Fraud.

IDREs' eligibility "decisions" are limited in scope. Regulations only require IDREs to "review the notice of IDR initiation" with the provider's attestation of eligibility "to determine whether the Federal IDR process applies." Compl. ¶ 128; 45 C.F.R. § 149.510(c)(1)(v) (2024). The issue before this Court is categorically different: whether Defendants made thousands of fraudulent submissions to the IDR Portal as part of a scheme to defraud Anthem. These are "two, quite separate inquiries." *See United States v. Carpentieri*, 23 F. Supp. 2d 433, 435–36 (S.D.N.Y. 1998) (distinguishing, for the purposes of a statute barring judicial review, between two questions: (1) "whether [defendant] falsified his initial employment papers and his claim forms for FECA" and (2) whether the defendant's "submission, if not fraudulent, establishes eligibility for benefits").

### 2. Defendants' Fraud Was Not Actually Resolved or Necessary.

With no written eligibility determination, Fourth Circuit case law precludes any assumption that the IDREs resolved eligibility (let alone fraud). This authority preludes the Court from inferring the existence of eligibility determinations because "every IDR award necessarily relies on an eligibility finding." AGS Br. 17; *cf. Hare v. Simpson*, 621 F. App'x 748, 754 (4th Cir. 2015) (rejecting argument that issue was implicitly resolved in court's decision because estoppel requires finding that issue was "actually determined"). "A judgment in a prior action . . . operates as an estoppel not as to issues which 'might have,' or even should have, 'been litigated and determined, but only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.'" *Vein & Wellness Grp., LLC v. Becerra*, No. 22-2253, 2024 WL 3064713, at *5 (4th Cir. June 20, 2024) (internal citation omitted). The fact that eligibility

31

determination "may be necessary to a proper [pricing] determination . . . does not mean that the issue was in fact litigated and decided in the prior action." *See id.*

Moreover, where an issue is "not 'actually litigated' [it] could not possibly have been 'critical and necessary' to the judgment." *See CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1318 (11th Cir. 2003); *see also Whitt v. Wells Fargo Fin.*, Inc., 664 F. Supp. 2d 537, 543 (D.S.C. 2009) ("[T]he identical issue presented to this court was not presented or actually determined" and thus was not "a critical and necessary part of the *Castle* court's decision.").

### 3. Anthem Did Not Have a Full and Fair Opportunity.

Collateral estoppel also does not apply where, as here, "there is reason to doubt the quality, extensiveness, or fairness of the procedures followed in prior litigation." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 (1982) (internal citation omitted); *Vein & Wellness Grp., LLC*, 2024 WL 3064713, at *4 (same). Anthem did not have a full and fair opportunity to contest Defendants' NSA Scheme, or even to contest eligibility in any individual IDR proceeding.

First, to establish fairness in a prior proceeding, a party must have "the opportunity to present evidence and arguments" before an "impartial" fact finder. *Nash v. Bryce*, 157 F.4th 436, 445 (6th Cir. 2025); *Morris v. City of Danville, Va.*, 744 F.2d 1041, 1044 (4th Cir. 1984) ("An impartial decisionmaker is an essential element of due process.") (internal citation omitted). Under the NSA, however, IDREs only receive payment if they deny or ignore an eligibility objection and issue a payment determination. Compl. ¶¶ 77, 128.

The Supreme Court has long held that due process requires an impartial factfinder and prohibits adjudicators from overseeing cases in which they have a "direct, personal, substantial, pecuniary interest." *Tumey v. Ohio*, 273 U.S. 510, 523 (1927). This "stringent rule" is focused on the "appearance of justice" and precludes adjudication even by "judges who have no actual bias." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243 (1980). For example, in *Connally v. Georgia*, a state

32

law empowered an unsalaried justice of the peace to issue search warrants, compensating him $5.00 for each warrant issued and nothing for warrants that were denied. 429 U.S. 245 (1977). After the justice issued a search warrant leading to the plaintiff's arrest and conviction for drug possession, the plaintiff raised a due process challenge based on the justice's financial incentive for issuing the warrant. The Supreme Court agreed that the fee structure violated due process, explaining that "[t]he justice is not salaried . . . . His financial welfare, therefore is enhanced by positive action and is not enhanced by negative action. The situation . . . is one which offers a possible temptation to the average man as a judge" to rule in a particular direction. *Id*. at 250; *see also Harper v. Pro. Prob. Servs. Inc.*, 976 F.3d 1236, 1241, 1243-44 (11th Cir. 2020) (because defendant received a "$40 monthly fee only as long as a probationer remained on probation . . . it couldn't determine probation sentencing matters impartially"); *McNeil v. Cmty. Prob. Servs., LLC*, 1:18-cv-00033, 2021 WL 366776, at *18 (M.D. Tenn. Feb. 3, 2021) (collecting cases).

Anthem did not have any opportunity to present evidence or arguments to any trier of fact regarding Defendants' NSA Scheme. Nor did it have the opportunity to present evidence before an impartial fact finder to evaluate the eligibility of any individual IDR proceeding. SCP alone submitted 128,560 disputes in the first half of 2025.[26] The IDREs deciding those disputes stood to earn millions of dollars if, and only if, they decided eligibility in Defendants' favor. Compl. ¶¶ 77, 128; 42 U.S.C. § 300gg-111(c)(5)(F). Judges are typically compensated with a salary, and arbitrators are paid for all their work on a case *up through the point of dismissal*. But per the NSA, an IDRE who dismisses a dispute as ineligible forfeits the right to any compensation at all. Compl. ¶¶ 77, 128; 42 U.S.C. § 300gg-111(c)(5)(F). Because IDREs have an immediate financial stake in the outcome of their eligibility "decisions," they are not impartial fact finders to whom collateral

---

[26] *See* CMS, Independent Dispute Resolution Reports, https://bit.ly/46Zb20Z.

estoppel applies.

Separate from partiality, the "claim preclusive effect . . . does not hold universally" to non-judicial proceedings. *Littlejohn v. United States*, 321 F.3d 915, 921 (9th Cir. 2003). The law is clear that estoppel cannot apply where the procedures in the prior proceeding "provided [a party] with neither the tools nor the opportunity to fully litigate" the relevant issues. *Id*. at 923; *see also Bell v. CSX Transportation, Inc.*, 733 F. Supp. 3d 385, 398-99 (D. Md. 2024) ("Before determining whether to apply issue preclusion to a prior proceeding, the Court must satisfy itself that the prior proceeding contained sufficient procedural safeguards to protect the litigants' rights").

Collateral estoppel especially does not apply where, as here, the procedures in the prior proceeding were "tailored to the prompt, inexpensive determination of small claims" that would be "wholly inappropriate to the determination of the same issues when presented in the context of a much larger claim." Restatement (Second) of Judgments § 28 (1982);[27] *Hare v. Simpson*, 621 F. App'x 748, 754 (4th Cir. 2015) (collateral estoppel may not apply "where there are substantial differences in the procedures available in different actions"); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 332 (1979) (collateral estoppel should not apply if there are "procedural opportunities available" in the second suit "that were unavailable in the first . . . [and] might be likely to cause a different result"); *Staub v. Nietzel*, No. 22-5384, 2023 WL 3059081, at *6 (6th Cir. Apr. 24, 2023) (courts may refuse to apply estoppel where "an earlier action involved relaxed rules of evidence, a system to quickly determine [claims], and concerned minimal amounts of damages"); *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014) (quotations omitted) ("If the procedural

---

[27] In analyzing collateral estoppel, the Supreme Court "regularly turns to the Restatement (Second) of Judgments." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015).

34

differences might be likely to cause a different result, then collateral estoppel is inappropriate.").[28]

Defendants generalize that collateral estoppel applies to arbitration and administrative proceedings, but their cited authorities confirm that courts must carefully consider the adequacy of procedures in prior proceedings. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 158 (2015) (courts must ask "whether the procedures used in the first proceeding were fundamentally poor, cursory, or unfair"); *SynQor, Inc v. Vicor Corp.*, 988 F.3d 1341, 1350-51 (Fed. Cir. 2021) (same); *Design Gaps, Inc. v. Distinctive Design & Constr. LLC*, 162 F.4th 452, 476 (4th Cir. 2025) (noting courts must consider whether party to arbitration faced "procedural limitations affecting his opportunity to litigate" and finding adequate opportunity where plaintiff was able to take discovery and depose and cross-examine witnesses at a live hearing); *Fonseca v. Am. Nat'l Red Cross*, No. 320CV00526RJCDSC, 2021 WL 627043, at *1 (W.D.N.C. Feb. 1, 2021) (plaintiff represented by counsel in two-day live hearing); Arbitration Preclusion, 18B FED. PRAC. & PROC. JURIS. § 4475.1 (3d ed.) ("Courts tend to be suspicious of relaxed arbitration procedures and are likely to give special meaning to the general requirement that the first proceeding afford a 'full-and-fair opportunity' to litigate.").[29]

Here, Congress deliberately created IDR as an informal process to efficiently resolve

---

[28] *See also Helfrich v. Lehigh Valley Hosp.*, CIV.A. No. 03-cv-05793, 2005 WL 1715689, at *19 (E.D. Pa. July 21, 2005) ("[P]rocedural and economic disparities between unemployment compensation proceedings and later civil proceedings negate the preclusive effect of a Referee's factual findings."); *Cold Springs Farm Dev., Inc. v. Ball*, 661 A.2d 89, 91–92 (Vt. 1995) (informality of small claims court procedures render estoppel inapplicable); *Clusiau v. Clusiau Enters., Inc.*, 236 P.3d 1194, 1198–99 (Az. Ct. App. 2010) (collecting cases).

[29] Defendants other cited authorities are inapposite. *See Smith v. Walmart, Inc.*, No. 7:22-CV-00568, 2023 WL 5215376, at *6 (W.D. Va. Aug. 14, 2023) (noting only that "collateral estoppel (issue preclusion) might apply" to a future arbitration); *see Chin-Young v. United States*, 774 F. App'x 106, 118 (4th Cir. 2019) (addressing claim preclusion not issue preclusion); *Karnani v. Interactive Brokers LLC*, 25-cv-462(LMB/WEF), 2025 WL 1559151, at *5 (E.D. Va. May 30, 2025) (same).

relatively low-value payment disputes without the need for legal counsel. *See supra* pp. 3-8. IDR has no discovery, no evidentiary requirements, no hearings, no testimony, and no procedures to even view—much less verify or rebut—an opposing party's submission. *Id.* IDR is precisely the kind of "prompt, inexpensive determination of small claims" for which collateral estoppel is "wholly inappropriate." *See Staub,* 2023 WL 3059081, at *6.

In any event, "issue preclusion is in the broad discretion of the trial court, [and] courts should not apply it if unfairness results." *Arnlund v. Smith*, 210 F. Supp. 2d 755, 772 (E.D. Va. 2002); *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004) (invocation of collateral estoppel "is influenced by considerations of fairness in the individual case"). Where, as here, a party alleges the outcome of a prior proceeding resulted from a "fraudulent scheme to dupe" the finders of fact, a court should not apply collateral estoppel without the benefit of discovery. *See PenneCom*, 372 F.3d at 493.

### E.    Claim Preclusion Does Not Apply to Anthem's Claims.

Defendants' attempt to invoke claim preclusion (SCP Br. 32) fails for the obvious reason that Anthem could not assert affirmative claims of any kind in IDR proceedings. "A party is not precluded from bringing a claim that he was unable to bring in the initial litigation, regardless [of] whether that claim constitutes part of the same 'conduct, transaction, or occurrence.'" *Bennett v. Garner*, 913 F.3d 436, 440 (4th Cir. 2019); *Perry v. Am. Airlines, Inc.*, 405 F. Supp. 2d 700, 706 (E.D. Va. 2005) (explaining "it is well settled that claim preclusion does not apply to a cause of action the claimant could not have brought in a prior litigation"); *Paragon Servs., Inc. v. Hicks*, 843 F. Supp. 1077, 1080 (E.D. Va. 1994) ("Since Paragon could not have brought its copyright claim in the prior state court action, this claim is not barred by res judicata.").

### F.    In the Alternative, Anthem Pleads a Claim for Vacatur (Count IX).

Anthem has also asserted an alternative claim for vacatur. Compl. ¶¶ 370-77 (Count IX).

36

Defendants argue that Anthem's grounds for vacatur do not satisfy the substantive requirements of 9 U.S.C. § 10(a). AGS Br. 31-33; SCP Br. 18-20. Those arguments fail. *See* Section I.B.

AGS suggests Anthem "cannot plead vacatur en masse" and must "identify each award and the supposed error that affected each individual proceeding." AGS Br. 33. But AGS cites no authority for this proposition.[30] Defendants' argument might have merit in a vacatur action governed by the FAA procedures, but as detailed in Section I.B., "the NSA does not invoke or discuss §§ 6, 9, 12, or any" section of the FAA other than § 10. *Med-Trans*, 700 F. Supp. 3d at 1083. There is no basis to impose FAA procedural requirements on a vacatur claim under the NSA.

## II.    Anthem States Claims for Violations of RICO (Counts I & II).

Defendants and the SCP Enterprise have engaged in extensive RICO violations, employing interstate wires to submit thousands of fraudulent IDR submissions to Anthem, the Departments, and IDREs. Compl. ¶¶ 3-11. Defendants' motions ignore Anthem's factual allegations and misconstrue applicable law. As detailed below: (1) the litigation activities exemption does not apply; and (2) Anthem pleads (a) predicate acts of wire fraud, (b) an enterprise, (c) a pattern of racketeering activity, and (d) conspiracy.

### A.    The "Litigation Activities" Exemption Does Not Apply.

In another attempt to immunize their fraud, Defendants invoke the so-called RICO "litigation activities" exemption, a policy-based doctrine under which courts may decide on a case-by-case basis to exempt litigation filings from serving as a basis for RICO predicate acts. *Kim v. Kimm*, 884 F.3d 98, 103-04 (2d Cir. 2018). The Fourth Circuit has not applied the doctrine. And it does not apply here for at least two independent reasons. First, the policy reasons behind the doctrine do not remotely apply to IDR. Second, Defendants' "litigation activities" here are

---

[30] *Reach Air*, which addressed a single IDR award, is irrelevant. 160 F.4th at 1121–23.

independently intended to deceive the Departments (not simply IDREs), and their NSA Scheme targets insurers other than Anthem.

### 1.    RICO Does Not Exempt Fraud in IDR Proceedings.

As part of the NSA Scheme, Defendants used false attestations of eligibility to initiate thousands of ineligible IDR proceedings against Anthem. Compl. ¶ 10. No court has exempted IDR from RICO liability, and this Court should decline Defendants' invitation to do so. Indeed, the policy reasons warranting trust in the litigation process are notably absent from the IDR process—which is why Defendants have been able to carry out their NSA Scheme at scale.

The policy rationale for the litigation activities exemption is rooted in the courts' extensive procedures and mechanisms for policing fraudulent filings, including rules of procedure, rules of evidence, the right to cross-examination, and penalties for perjury. *See United States v. Pendergraft*, 297 F.3d 1198, 1206-07 (11th Cir. 2002). Where parties and their counsel submit fraudulent filings, they may be subject to sanctions, disbarment, or state law remedies like malicious prosecution. *See id.* ("We trust the courts, and their time-tested procedures, to produce reliable results, separating validity from invalidity, honesty from dishonesty."). Courts decline to apply the doctrine where "the policy concerns asserted in these cases [that have applied it] are not implicated." *United States v. Koziol*, 993 F.3d 1160, 1174 (9th Cir. 2021).

IDR does not implicate any of these policy concerns. Unlike litigation, IDR proceedings do not use "time-tested procedures[] to produce reliable results, separating validity from invalidity, honesty from dishonesty." *Cf. Pendergraft*, 297 F.3d at 1206. In IDR, attestations of eligibility are not filed by attorneys who are bound by ethical obligations and subject to court and professional sanctions. *Cf. id.* at 1206. IDR does not provide any opportunity for discovery or cross examination. *Compare supra* pp. 3-8, *with Pendergraft*, 297 F.3d at 1206. IDREs are not neutral parties when evaluating eligibility; they have a direct financial incentive to find that disputes are

38

eligible, or else they receive no compensation. *Supra* pp. 6-7; *see Harper*, 976 F.3d at 1241. IDR also cannot serve as the basis for a malicious prosecution claim. *Cf. Pendergraft*, 297 F.3d at 1207-08 (civil litigants may police false filings with malicious prosecution claims, and there is no reason to "transform[ ] a state common-law action into a federal crime").

Moreover, principles of res judicata and collateral estoppel do not apply to IDR proceedings. *Compare* Section I.D, *with Kim*, 884 F.3d at 104 (RICO claims based on litigation activities "erode the principles . . . of res judicata and collateral estoppel"). IDR proceedings are not open to the public, and a disproportionately small number of providers initiate the overwhelming majority of IDR disputes. Compl. ¶ 91 (ten companies initiated 71% of all disputes). Permitting claims based on fraudulent IDR submissions has no potential to chill "open access to the courts" or "inundate the federal courts" with RICO cases. *Cf. Kim*, 884 F.3d at 104. Nor are there policy concerns about restricting access to IDR; that was the government's intention when it limited IDR to a "qualified IDR item or service" subject to strict criteria and expected only 22,000 disputes annually. *See* Compl. ¶¶ 43-45, 88-92.

In June 2025, the Departments urged IDREs to "reduce errors" and institute "robust quality assurance (QA) programs to verify dispute eligibility and review payment determinations." June 2025 Technical Assistance. Those overseeing the IDR process do not believe IDREs "produce reliable results, separating validity from invalidity, honesty from dishonesty." *See Pendergraft*, 297 F.3d at 1206.[31] There is no basis to exempt IDR activities from RICO.

---

[31] Defendants cite *Republic of Kazakhstan v. Stati* to suggest that the doctrine applies to private arbitration and is not limited to public court proceedings. But that case involved RICO claims premised on filings in both arbitration and federal court. 380 F. Supp. 3d 55, 61 (D.D.C. 2019). Moreover, on appeal, the D.C. Circuit affirmed on alternate grounds without any reliance on the litigation activities exemption. 801 F. App'x 780 (D.C. Cir. 2020).

### 2.    The Exemption Does Not Apply Because Defendants Intentionally Deceive HHS.

The RICO litigation activities exemption does not apply for a separate, independent reason. Courts reject its application to schemes that either: (1) seek to deceive a third party, not simply the court; or (2) target victims not party to the underlying proceeding. *See United States v. Lee*, 427 F.3d 881, 890 (11th Cir. 2005); *Carroll v. U.S. Equities Corp.*, No. 18-cv-667, 2020 WL 11563716, at *9 (N.D.N.Y. Nov. 30, 2020). Here, the NSA Scheme (i) seeks to deceive the Departments, not simply IDREs; and (ii) targets other insurers in addition to Anthem. Compl. ¶¶ 3-11.

As articulated by the Eleventh Circuit in *Lee*, the fact that a document is prepared for or used in litigation is not, by itself, sufficient to invoke the litigation activities exemption. 427 F.3d at 890.[32] Rather, litigation activities may form the basis for wire fraud where defendant intends for litigation materials to deceive someone other than the court. *Id.* In *Lee*, defendants were convicted of mail fraud based on having served a "motion to dismiss" containing false affidavits on opposing counsel in a foreclosure action. The defendants appealed their conviction on this count, invoking the litigation activities exemption. In affirming, the Eleventh Circuit rejected a categorical bar against premising wire fraud on litigation activities. The court held that the exemption would apply

---

[32] Many of Defendants' cited authorities do not address mail or wire fraud claims premised on litigation filings. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004) (noting any allegations of mail fraud were subsumed under Hobbs Act extortion claim and holding that litigation filings cannot be deemed extortion for purpose of 18 U.S.C. § 1951); *Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *8 (D. Md. Mar. 17, 2015) (dismissing mail and wire fraud for failure to comply with Rule 9(b) and separately noting that "filing a lawsuit and demanding a settlement" is insufficient to establish extortion under 18 U.S.C. § 1951); *Miller v. Dogwood Valley Citizens Ass'n, Inc.*, No. CIV 306CV00020, 2008 WL 3992350, at *7 (W.D. Va. Aug. 28, 2008), *aff'd*, 346 F. App'x 925 (4th Cir. 2009) (noting plaintiff abandoned mail fraud claim and finding no extortion because defendant home owners association believed it had right to assess road maintenance fees); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) (finding threats of litigation insufficient to constitute extortion but denying motion to dismiss mail fraud and wire fraud claims).

40

only if the relevant scheme was intended solely to deceive the court. *Lee*, 427 F.3d at 890. In contrast, defendants in *Lee* committed wire fraud because they used litigation documents to mislead "the lender and its counsel," rather than simply "influencing the court." *Id*.

Even though the IDR process does not qualify as a "litigation" activity, the reasoning of *Lee* is instructive. Before Defendants can deceive IDREs, they must first deceive the Departments. Before an IDRE is selected, Defendants must unlock the IDR process by deceiving HHS with false attestations of eligibility. 45 C.F.R. § 149.510(b)(2)(iii)(C) (2024) (the initiating party will "furnish the notice of IDR initiation to the Secretary [of HHS] by submitting the notice through the Federal IDR portal"); *see also* Compl. ¶¶ 47, 60, 113, 115. For this additional reason, the litigation activities exemption does not apply.

The exemption also does not apply because the NSA Scheme involves thousands of different proceedings and targets other health plans in addition to Anthem. Courts have limited application of the exemption to cases in which a plaintiff alleges wire fraud based on materials from "a single frivolous, fraudulent, or baseless lawsuit." *Kim*, 884 F.3d at 105. *Kim*—the leading authority on this exemption—"leaves open the door for RICO claims premised on abusive litigation activities involving conduct beyond a single lawsuit." *Carroll*, 2020 WL 11563716, at *9 (allowing RICO claim based on false filings in thousands of cases)[33]; *cf. Dees v. Zurlo*, 1:24-cv-1, 2024 WL 2291701, at *2, 5 (N.D.N.Y. May 21, 2024) (finding *Kim* did "not automatically

---

[33] *Cf. Pompy v. Moore*, No. 19-10334, 2024 WL 845859, at *16 (E.D. Mich. Feb. 28, 2024) (dismissing RICO claims on multiple grounds and noting in *dicta* that litigation materials exception likely applied to court ordered transmission of search warrants in single criminal proceeding); *Gabovitch v. Shear*, 70 F.3d 1252 (1st Cir. 1995) (dismissing mail fraud claim premised on alleged perjury in single lawsuit); *Nero v. Mayan Mainstreet Inv 1, LLC* No. 6:14-cv-1363, 2014 WL 12610668, at *17 (M.D. Fla. Nov. 13, 2014) (dismissing wire fraud claim premised on filings in single action because "there is no indication that any of the filings… [were] transmitted across state lines."), *aff'd*, 645 F. App'x 864, 868 (11th Cir. 2016).

preclude" RICO claim seeking "to overturn state-court custody and support decisions" "related to the custody and supervision of Plaintiff Smith's children" but concluding that the "reasons" and "principle[s]" behind the exemption supported its application under those facts).

### B.    Anthem Pleads Predicate Acts of Wire Fraud.

Anthem has satisfied Rule 9(b) and supported its wire fraud claim by identifying the precise misrepresentations that Defendants must make to initiate an ineligible dispute on the IDR Portal (Compl. ¶¶ 48-63), and by setting forth the specific time, date, source, and content of demonstrative misrepresentations constituting wire fraud. *Id*. ¶¶ 161-272. Anthem also set forth allegations tying Defendants' conduct to its injuries, including millions of dollars in IDR fees and payment determinations and operational expenses to combat Defendants' fraud. Defendants do not and cannot meaningfully dispute that Anthem pleads the elements of wire fraud, including causation.

### 1.    The Wire Fraud Allegations Satisfy Rule 9(b).

Controlling law forecloses Defendants' 9(b) arguments. Defendants argue that Anthem's wire fraud claims do not comply with Rule 9(b) because the 385-paragraph Complaint alleges thousands of misrepresentations but identifies the specific time and content of eighteen examples. Courts will deny a motion to dismiss "under Rule 9(b) if [they are] satisfied (1) that the defendant has been made aware of the particular circumstances for which [they] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *McCauley*, 710 F.3d at 559 (internal citation omitted). Where, as here, a plaintiff pleads numerous misrepresentations over an extended period of time, the plaintiff need only plead "examples of fraud" to "give the court confidence that permitting this case to proceed will not lead to a 'frivolous' 'fishing expedition'." *Century Park Cap. Partners, LLC*, 2025 WL 1959356, at *19; *U.S. ex rel. Carter v. Halliburton Co.*, No. 1:08cv1162 (JCC), 2009 WL 2240331, at *8 (E.D. Va.

42

July 23, 2009) ("Where the claims are numerous and extend over the course of several years," plaintiffs are not required to "plead the facts of each individual" misrepresentation.) (internal citation omitted).[34]

Here, Anthem pleads numerous concrete examples of fraud to satisfy Rule 9(b) that include specific actors, specific IDR proceedings, specific dates, specific email addresses, specific false representations, and specific dollar amounts paid in reliance on those false statements. As just one example, on November 17, 2023—despite the clear application of the Virginia Balance Billing laws—SCP, on behalf of Lake Spring and in coordination with AGS, initiated IDR and falsely attested that the services were a qualified item or service within the scope of the federal IDR process, listing the email address **scp**.reimbursement@**ags**health.com on the Notice of IDR Initiation. Compl. ¶ 215 (emphasis added). The IDR initiation form was signed by Paul Jordan. *Id*. As a result of these fraudulent attestations, Healthkeepers paid $834.94 for the ineligible service— approximately three times the state-mandated payment amount for the service—along with $415.00 in unnecessary IDR-related fees. *Id.* ¶ 217. The Complaint provides multiple examples like this for each Provider Defendant, including examples demonstrating the involvement of SCP and AGS. *See id.* ¶¶ 161-86 (Ingleside); ¶¶ 187-205 (Kingsford); ¶¶ 206-22 (Lake Spring); ¶¶ 223-53 (Western Virginia); ¶¶ 254-77 (Wildwood).[35]

The Complaint also details each Defendant's role in the NSA Scheme. *See, e.g.*, Compl. ¶¶ 145-50 (SCP), ¶¶ 151-54 (Provider Defendants), ¶¶ 155-58 (AGS). These "particularized allegations regarding each Defendant's respective role" in the fraud mean the Complaint complies

---

[34] *See also Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 738 (E.D. Va. 2010) (holding no requirement to allege "the exact date and time" of each misrepresentation).

[35] *Cf. Kimberlin*, 2015 WL 1242763, at *5 (plaintiff failed "to allege the time, place, and contents of any of the alleged mail and wire communications"); *Baltimore Flips Israel 2020 LLC v. Yosef*, 769 F. Supp. 3d 370, 404 (D. Md. 2025) (same).

with Rule 9(b), even if it refers to Defendants collectively at times. *See In re Cap. One 360 Sav. Acct. Int. Rate Litig.*, 779 F. Supp. 3d 666, 709 (E.D. Va. 2024). AGS's argument that Anthem fails to particularly allege its role in the fraud is flatly controverted by the Complaint. *See, e.g.*, Compl. ¶¶ 9, 21, 92, 112, 121-22, 125, 142-44, 155-58, 165. Given those factual allegations, AGS cannot plausibly contend it is not on notice of "the nature of [its] alleged participation in the fraud." *Cf. Corder v. Antero Res. Corp.*, 57 F.4th 384, 403 (4th Cir. 2023) (complaint lacked particularity where it was unclear whether plaintiffs "meant to charge" all or "only some defendants" in the fraud count); *In re Pac One, Inc.*, No. 01-85027 MGD, 2007 WL 2083817, at *8 (N.D. Ga. July 17, 2007) (plaintiff made "no attempt to specify [each defendant's] individualized involvement," alleging at most that the individual who submitted the false certificates acted "pursuant to the instructions" of the other defendants collectively); *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 474 (D. Md. 2012) (no allegations on "which Defendant played which role" in RICO action related to refinancing and foreclosure of plaintiff's home); *De Silva v. Am. Brokers Conducit*, No. GJH-14-03462, 2015 WL 275769, at *4 (D. Md. Jan. 21, 2015) (lack of individualized allegations made it "impossible for any of the individual defendants to determine . . . what role they are alleged to have played in the fraud"); *Smith v. Chapman*, No. 3:14-CV-00238-MOC, 2015 WL 5039533, at *12 (W.D.N.C. Aug. 26, 2015) (granting summary judgment on RICO claims for lack of evidence that individual defendant "committed any of the predicate acts alleged or was otherwise connected to the fraudulent scheme").

To the extent AGS contends Anthem should have pleaded even more details about the roles of AGS and SCP in the IDR process, that information is uniquely in Defendants' knowledge. *Cf. Corder*, 57 F.4th at 403 (dismissing where plaintiffs "failed to identify a specific defendant even where it was possible to do so"). For example, Anthem has alleged instances where IDR notices

44

were submitted in the name of an SCP employee using an AGS email address, making it unclear whether AGS was submitting on behalf of SCP or whether SCP was submitting in coordination with AGS. *See* Compl. ¶ 215; AGS Br. 22. Either way, AGS is involved in the SCP Enterprise.

AGS's attempt to distance itself from the NSA Scheme fails. It does not simply sell SCP an off-the-shelf "tool." *See* AGS Br. 21 (internal quotation marks omitted). AGS publicly boasts of its "strategic partnership" with SCP, including "implementation of a new 'arbitration process' for challenging reimbursement shortfalls." *See* Compl. ¶ 155 (explaining AGS and SCP work with "a shared mindset" and collaborate "to brainstorm solutions"); *id.* n.41 (AGS White Paper detailing its close, strategic partnership with SCP). "AGS openly markets its use of 'Robotic Process Automation' to engage in the IDR process." *Id.* ¶ 156. AGS's active engagement in the IDR process is evidenced by references to AGS in Defendants' IDR submissions and communications, confirming that AGS is directly integrated into SCP's systems and submitting IDR claims through concealed automation in SCP's name. *See, e.g., id.* ¶ 157 (explaining that AGS identifies itself in the footers of emails purportedly sent by SCP). And AGS serves as SCP's "partner that understands the nuances" among state "arbitration requirements." White Paper at 3. This is far from the "threadbare allegations about the alleged fraud" in AGS's authorities. *See Kimberlin*, 2015 WL 1242763, at *4 (internal citation omitted) ("[T]he requirement of 'particularity' does not require the elucidation of every detail of the alleged fraud . . . ."); *Reach Air*, 160 F.4th at 1122 (payor failed to plead any factual misrepresentations).

Contrary to Defendants' arguments (SCP Br. 21-23; AGS Br. 34-35), Anthem has pleaded intentionally false representations. Under Rule 9(b), "intent, knowledge, and other conditions of a

person's mind may be alleged generally." Fed. R. Civ. P. 9(b).[36] But even if more were required, Anthem does not simply plead that Defendants knew the certifications of eligibility were fraudulent without any factual basis. Anthem alleges that Defendants knew their representations were false and sets forth facts demonstrating how and why they knew disputes were ineligible, including (i) Anthem's EOPs, which specifically inform Defendants whether the member's plan is subject to the Virginia Balance Billing Laws or eligible for the federal IDR process (*e.g.*, Compl. ¶¶ 64-65, 162-64, 169-70, 179-80, 188-89, 195-96, 201-02, 207-08, 213-14, 219, 224, 230, 241, 248, 255, 261, 267, 273), (ii) Anthem's communications during open negotiations and in IDR advising Defendants again that disputes were ineligible (*e.g.*, *id.* ¶¶ 66-68, 166, 173-74, 176, 183, 185, 192, 198, 204, 210, 216, 221, 227, 233, 238, 243, 245, 250, 252, 258, 264, 270, 276) and (iii) readily accessible information confirming disputes were ineligible. *See, e.g.*, *id.* ¶ 324 (Defendants had access to, among other things, "patient's insurance cards, [ ] the plain text of federal laws and regulations, [and] CMS publications and resources[.]"). Given AGS's integration into SCP's systems to facilitate IDR claims submissions on SCP's (and Provider Defendants') behalf (*e.g.*, Compl. ¶ 157), Anthem has plausibly alleged AGS would also have knowledge of the underlying facts and communications about these very claims. *Cf. United States ex rel. Complin v. N. Carolina Baptist Hosp.*, 818 F. App'x 179, 183 (4th Cir. 2020) (explaining plaintiff did "not allege any facts from which one could infer knowledge of a false claim") (cited by AGS). These allegations far

---

[36] Defendants' cases where plaintiffs failed to allege multiple essential elements in securities fraud cases are inapposite. *Cf. Iron Workers Loc. 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 595 (E.D. Va. 2006) (securities fraud plaintiffs failed to allege any material misstatements or omissions, scienter under the heightened standard for securities claims, and lack of facts to support claims of securities fraud); *Langley v. Booz Allen Hamilton Holding Corp.*, No. 117CV696LMBTCB, 2018 WL 2108291, at *2 (E.D. Va. Feb. 8, 2018) (securities fraud plaintiffs failed to "allege who was committing the fraud, what the nature or extent of the fraud was, or how long the fraud had been taking place" and failed to meet "heightened requirements of the PSLRA").

46

exceed the requirements for pleading knowledge.

While certain Defendants argue their false attestations were made on "belief" (SCP Br. at 34) and dispute that they had knowledge of the true facts from insurance ID cards, federal laws and regulations, or Anthem's communications (SCP Br. at 34), those factual disputes are implausible and not a valid basis for dismissal under Rule 12(b)(6). Defendants could not have a reasonable "belief" that claims for fully-insured plans were somehow eligible for the federal IDR process when Anthem repeatedly communicated those claims were subject to the Virginia Balance Billings Laws. Indeed, Defendants represent that only "medical insurers possess the relevant plan information" (AGS Br. 4); they thus have no basis to dispute a health plan's repeated communications expressly advising them of the relevant plan information that renders their disputes ineligible for the IDR process. Further, "nearly 60% of disputes from Defendants that reached a payment determination were ineligible for the IDR process." Compl. ¶ 5. The high volume of errors over more than one year "support[s] a showing of intent to defraud in the context of the overarching scheme rather than inadvertence." *United States v. Robinson*, 99 F.4th 344, 357–58 (6th Cir. 2024).[37]

Anthem's detailed allegations comport with Rule 9(b) because they reflect substantial

---

[37] Defendants' authorities are inapposite. SCP Br. 35. In those cases, the challenged conduct was either expressly permitted by regulation or consistent with accepted industry practice. *United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 898 (5th Cir. 2020) (statistical evidence alleged by plaintiff "strongly indicated" defendant "was simply ahead of the healthcare industry at implementing Medicare reimbursement guidelines," which encouraged the specific coding practice plaintiff challenged); *United States ex rel. Taylor v. Boyko*, No. 2:17-CV-04213, 2020 WL 520933, at *7 (S.D.W. Va. Jan. 31, 2020), *aff'd*, 39 F.4th 177 (4th Cir. 2022) (billing "mid-level providers" "at a physician rate in some circumstances" was permitted under regulations); *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 730 (4th Cir. 2010) (affirming summary judgment for defendant where evidence confirmed use of "larger size rebar than called for in design plans" "was permitted under industry practices"). No authority permits Defendants to seek or obtain IDR awards for ineligible claims.

prediscovery evidence on, and notice to Defendants of, the facts relevant to Anthem's claims. *See McCauley*, 710 F.3d at 559; *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 789 (4th Cir. 1999) (recognizing "clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed") (internal citation omitted).

### 2.     Anthem Pleads Causation.

The Complaint alleges that Defendants' NSA Scheme proximately caused Anthem's injuries. *See supra* pp. 13-14. Defendants blame others for Anthem's injuries, arguing they cannot be liable because IDREs failed to detect their fraud or Anthem failed to adequately object. These arguments are irreconcilable with Anthem's well-pleaded allegations and controlling law.

First, Defendants disregard Anthem's well-pleaded allegation that, as a result of their NSA Scheme, Anthem must (1) spend time and money to identify the fraud and submit an objection to eligibility (*e.g.*, Compl. ¶ 137), and (2) pay a $115.00 administrative fee that it cannot recover even when "the IDRE determines that the dispute does not qualify for IDR[.]" *Id.* ¶ 76. Anthem incurs these damages as an immediate result of Defendants' submissions, even before an IDRE is selected, and even when an IDRE agrees that disputes are ineligible.

Defendants claim that IDREs conduct eligibility assessments in each proceeding, but the Complaint alleges that (1) Defendants submit an avalanche of disputes simultaneously to overwhelm the IDR system, (2) IDREs often conduct only "a cursory review" of the "one-sided information" from Defendants, (3) IDREs "rely on Defendants' false attestations of eligibility," and (4) IDREs are financially incentivized to find that disputes are eligible for IDR or else forego any payment. Compl. ¶¶ 5, 70, 128-29. The only relevant language in the regulations directs IDREs to "review the information submitted in the notice of IDR initiation" "to determine whether the Federal IDR process applies." *Id*. ¶¶ 128-29 (quoting 45 C.F.R. § 149.510(c)(1)(v) (2024)). That notice includes only the initiating party's (*i.e.*, provider's) attestation of eligibility. *See id.*

48

Defendants seek to dispute Anthem's well-pleaded allegations with informal and non-binding technical guidance issued by the Departments. Defendants cannot rely on this document to override the plain language of the controlling regulations and Anthem's allegations. *See* Section I.D.

Defendants also misstate the law on causation. RICO proximate cause is adequately pleaded where a complaint alleges that the plaintiff "was injured in her business or property 'by reason of' the RICO violation." *Bowen v. Adidas Am., Inc.*, No. CV 3:18-3118-JFA, 2020 WL 13076114, at *5 (D.S.C. Oct. 23, 2020) (quoting *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 6 (2010)). "The phrase 'by reason of' requires a 'direct relation' between the plaintiff's injury and the defendant's RICO violation." *Albert v. Glob. Tel*Link*, 68 F.4th 906, 910–11 (4th Cir. 2023) (internal citation omitted). The fact that IDREs are a necessary and foreseeable part of the scheme does not negate proximate causation. SCP Br. 26–27; AGS Br. 23–24. Under controlling Supreme Court law, a representation made to and relied upon by IDREs does not constitute an "independent factor" that breaks the chain. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 656-59 (2008). It is sufficient to show that "someone relied on the defendant's misrepresentations" and, as a result, the plaintiffs were harmed. *Id.* at 658.[38]

---

[38] Defendants' cited authorities are inapposite. *See Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 492 (4th Cir. 2018) (finding theory of causation too attenuated where plaintiff, a construction firm, alleged it was underpaid as a result of defendants' insurance claim, but plaintiff was simply "a subcontractor of First Atlantic, who [was] a contractor of City Line, who ha[d] an insurance policy with Wright [Insurance], who employed the [defendants]" to review the relevant claims); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 235 (4th Cir. 2004) (dismissing RICO claim because contract language could not reasonably be construed as misrepresenting defendants' reimbursement practices); *Kane v. Lewis*, 604 F. App'x 229, 235 (4th Cir. 2015) (overturning trial verdict because, among other things, evidence was insufficient to establish causation for 42 U.S.C. § 1983 wrongful death claim against police officer); *Karic Fletcher v. Pizza Hut of Am., Inc.*, 406 F. App'x 785, 787 (4th Cir. 2011) (affirming personal injury verdict in favor of Pizza Hut and finding that any negligence by delivery person who left disabled vehicle on street was superseded by another driver's independent decision to run a red light).

The Fourth Circuit's decision in *Albert* is instructive. Defendants in that case provided inmate calling services, and plaintiffs were consumers of those services. 68 F.4th at 908-10. Plaintiffs alleged that defendants violated RICO by conspiring to inflate the price of calls and, in that process, misrepresented the amount of their transaction costs to government entities, which led to plaintiffs' own independent injuries. *Id.* at 909–10, n.1. Finding proximate cause lacking, the district court dismissed plaintiffs' RICO claim. *Id.* at 910. But the Fourth Circuit disagreed. In outlining the limiting principles that shape the "direct relation" concept, the Fourth Circuit reasoned that "proximate causation is lacking when (1) there is a 'more direct victim' from whom (or intervening factor from which) the plaintiff's injuries derive, or (2) the alleged RICO predicate violation is 'too distinct' or logically unrelated from the cause of the plaintiff's injury." *Id.* at 911. Plaintiffs' complaint suffered neither deficiency. *Id.* at 913. Relying on *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), the Fourth Circuit held: "Plaintiffs allege a RICO-violating scheme that first required Defendants to trick government entities, which led to their own independent injuries. This was good enough for *Bridge* to hold that the plaintiffs' injuries were the 'direct result' of the defendants' scheme. So too here." *Albert*, 68 F.4th at 913 (citation omitted).

And also here. Like plaintiffs in *Albert*, Anthem alleges a RICO-violating scheme that first requires Defendants to trick IDREs, which leads to Anthem's injuries. Those injuries—being forced to participate in IDR for ineligible services, subsequently paying "excessive amounts for medical services[,] and" incurring "unnecessary administrative and IDRE fees," Compl. ¶ 137—directly result from Defendants "flooding the IDR process with disputes that are plainly ineligible for the federal process," *id.* ¶ 2. *See, e.g.*, *id.* ¶¶ 168–86. There is no other party "more closely or directly victimized by [Defendants'] wrongdoing," *see Albert*, 64 F.4th at 911, and Defendants identify none. What's more, Anthem's injury (unnecessary administrative fees and excessive

50

amounts for medical services) is a corollary of Defendants' predicate violation (flooding the IDR with ineligible claims); it is not logically unrelated or "too distinct." *Cf. Albert*, 64 F.4th at 912.

Finally, AGS argues that Anthem cannot establish causation to the extent it failed to raise timely eligibility objections in certain disputes.[39] This argument entirely ignores that Defendants use robotic automation processes to purposefully and strategically submit an avalanche of disputes all at once so that "health plans have insufficient time to challenge eligibility, and IDREs cannot complete fulsome reviews in the timeline provided by the NSA, in furtherance of the NSA Scheme[.]" Compl. ¶ 123. "Defendants' goals are to interfere with Anthem's ability to effectively identify ineligible disputes and to overwhelm the IDR system and the IDREs tasked with making applicability and payment determinations." *Id.* ¶ 127; *see id.* ¶ 5. That Anthem may not have timely objected to every ineligible dispute is a direct, foreseeable, and intended consequence of Defendant's NSA Scheme; there is plainly "a 'direct relation' between [Anthem's] injury and the [D]efendant[s'] RICO violation." *See Albert,* 68 F.4th at 910–11. AGS attempts to blame the victim (Anthem) of the NSA Scheme for not identifying Defendants' fraud earlier, claiming this is an intervening cause of Anthem's damages; that is not the law. *See Navient Sols., LLC v. L. Offs. of Lohman*, No. 119CV461LMBTCB, 2020 WL 6379240, at *4 (E.D. Va. June 12, 2020) (denying RICO defendants' discovery request and finding defendants' theory—that plaintiffs failed to

---

[39] Even if this were true as a legal proposition, Anthem seeks damages based both on instances in which it did and did not submit objections. *See* Compl. ¶ 130 ("[N]early 60 percent of disputes initiated by Defendants against Anthem that reached a payment determination were ineligible for the IDR process, often despite objections from Anthem."); *see also id.* ¶¶ 166, 192, 216, 238 (identifying eligibility objections). AGS's argument is thus not grounds for dismissal. Anthem's failure to submit objections in some disputes would "not break the causal chain but instead [simply presents] a question of proof regarding the total number of [ineligible disputes reaching pricing determinations] that were attributable to [Defendants'] actions." *See Starr v. VSL Pharms., Inc.*, 509 F. Supp. 3d 417, 442 (D. Md. 2020) (quoting *In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21, 39 (1st Cir. 2013)).

mitigate damages from defendants' fraud—"misconstrue[d] causation"); *id*. at n.2 ("Plaintiff does not paint a picture where some relatively unrelated instances of mail and wire fraud started a chain of events that eventually cost Plaintiff money.").[40]

### C.    Anthem Pleads a RICO Enterprise.

While Defendants do not dispute that Anthem adequately alleges a RICO enterprise, AGS contends Anthem has failed to adequately plead its role in the enterprise. AGS Br. 25. But the Complaint alleges detailed facts on AGS's "participat[ion] in the operation or management" of the SCP Enterprise, confirming it is subject to RICO liability. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (RICO liability reaches those who are "'associated with' the enterprise and participate in the conduct of its affairs").

Having publicly touted its "strategic partnership" with SCP to implement "a new 'arbitration process'" for challenging supposed reimbursement shortfalls (Compl. ¶ 155), AGS cannot claim to be merely "an unwitting tool" of the SCP Enterprise. AGS Br. 25 (quoting *Rivers v. U.S.*, 6:18-cv-00061, 2020 WL 1443723, at *12 (W.D. Va. Feb. 26, 2020)). The "new" process AGS implemented, which included the use of bots, "was a deliberate component of the SCP Enterprise's strategy to bypass the limitations of individual-provider capacity, automate the submission of disputes at scale, and conceal the ineligibility or inflation embedded in each claim." Compl. ¶¶ 156-58. In other words, AGS, SCP, and the Provider Defendants "coordinated to pursue the common purpose of exploiting the IDR process by maximizing the number of disputes submitted and inflating payment demands well beyond commercially reasonable rates." *Id.* ¶ 158.

---

[40] AGS relies on *NOCO Co. v. OJ Com., LLC*, which bears no resemblance to this case. In *NOCO*, the court affirmed a grant of summary judgment on an Ohio state law tortious interference claim based on, among many other things, a finding that plaintiff could have prevented the temporary deactivation of their Amazon seller's account. 35 F.4th 475, 481 (6th Cir. 2022).

AGS's public statements also confirm it holds itself out as an expert in navigating IDR and similar state processes (*see supra* p. 12) and that AGS was the architect of the "new arbitration process" used by SCP. Yet under this process that "AGS Health helped SCP develop" (*id.*), "nearly 60 percent of disputes from Defendants that reached a payment determination were ineligible for the IDR process" (Compl. ¶¶ 5, 110), despite Anthem's explicit notices of ineligibility and repeated objections (*e.g.*, *id.* ¶¶ 166, 192, 216, 238).[41] AGS's new process nevertheless pressed forward with those claims, showing that the 60% ineligibility rate was not the result of good-faith error, but a calculated design integral to the scheme to illegally maximize Defendants' profits.

AGS's role thus far exceeds "ordinary professional assistance" of the banker in *Rivers*. *Cf.* 2020 WL 1443723, at *14 (bank simply "maintained customer accounts, accepted deposits, and wired customers' funds to accounts at other financial institutions"). Anthem has more than satisfied the requirement of alleging facts showing AGS had at least "*some* part in directing the enterprise's affairs." *Reves*, 507 U.S. at 179; *see also Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 380 (6th Cir. 1993) (finding sufficient RICO control where, "even after MONY had received numerous warnings concerning FIA's fraudulent sales tactics, MONY continued to allow, if not actively encourage, Fletcher and his associates to carry on with their scheme").[42]

### D.    Anthem Pleads a Pattern of Racketeering Activity.

Defendants argue there is no "continuity of predicate acts" sufficient "to constitute a pattern of racketeering activity" because the predicate acts, victim, scheme, and injuries are not sufficiently numerous or varied. *See* SCP Br. 21–23. Their attempt to mechanically apply factors

---

[41] Given that AGS was "directly integrated into SCP's systems" for the purpose of handling IDR disputes (Compl. ¶ 157), AGS was on notice even if communications and objections went to SCP.

[42] *Cf. Holland v. Cole Nat. Corp.,* No. CIV.A. 7:04CV00246, 2005 WL 1799540, at *4 (W.D. Va. July 28, 2005) (Nothing defendant did impacted the "operation and management of Sears, or put another way, caused it to make any business decisions in any respect.").

that are neither exclusive nor determinative fails. *See Brandenburg v. Seidel*, 859 F.2d 1179, 1185 (4th Cir. 1988) (pattern question must be "decided on a case-by-case basis" "with special attention to the context in which the predicate acts occur").

First, Defendants have not cited any authority to suggest that a scheme involving thousands of acts of wire fraud over several years is not a sufficient pattern simply because each instance involves the same type of wire fraud. SCP Br. 22. In *Parcoil*, the court found no pattern because of the short duration of the predicate acts, not their lack of variation. *Parcoil Corp. v. NOWSCO Well Serv., Ltd.*, 887 F.2d 502, 504 (4th Cir. 1989). And the court held a "single scheme" did constitute a RICO pattern in *Starr v. VSL Pharms., Inc.*, 509 F. Supp. 3d 417, 441 (D. Md. 2020).

Second, there is no rule that a RICO claim cannot be based on a "single victim" or limited number of victims. *See, e.g.*, *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) ("There is no per se rule against a RICO claim involving only one victim."); *Wolf v. Klein*, 907 F.2d 1141 (4th Cir. 1990) (unpublished) (reversing dismissal of RICO claim alleging single scheme over three years to defraud single individual and his eponymous company); *Oriole Grp., LLC v. Pool Scouts Franchising, LLC*, 791 F. Supp. 3d 661, 692 n.23 (E.D. Va. 2025) (rejecting argument that number of victims is dispositive). While the number of victims may be an important consideration when only a small number of predicate acts of mail or wire fraud have been alleged, that is not the case here. *Compare Oriole Grp.*, 791 F. Supp. 3d at 691 (considering number of victims because plaintiff alleged only 14 predicate acts of wire fraud) *with* Compl. ¶¶ 138-39 (alleging thousands of predicate acts). In any event, Anthem BCBS and Healthkeepers[43] are not the only victims of this scheme. SCP Br. 22. Anthem handles IDR disputes not just for its own

---

[43] Defendants have no support for the assertion that Anthem BCBS and Healthkeepers are not separate victims because of their shared parent company and principal place of business. SCP Br. 22.

fully-insured business, but also on behalf of self-funded health plans and other Blue Cross Blue

Shield plans through the BlueCard Program. Compl. ¶¶ 24-30; *see also id.* ¶¶ 378-85 (alleging

cause of action under ERISA because the NSA Scheme harms ERISA-governed benefit plans).

And Anthem explicitly alleges that Defendants target "other health care payors." *Id.* ¶ 6.[44]

Third, Defendants incorrectly argue that a single scheme cannot constitute a pattern under

RICO. SCP Br. 22-23. The Supreme Court long ago "put an end to the requirement previously

imposed by the Fourth Circuit and other courts that more than one scheme was necessary to

constitute a pattern of racketeering." *Ownby v. Cohen*, 19 F. Supp. 2d 558, 565 (W.D. Va. 1998),

*aff'd*, 194 F.3d 1305 (4th Cir. 1999) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229

(1989)). Plaintiffs' sole authority predates this controlling Supreme Court ruling and is inapposite.

*Cf. HMK Corp. v. Walsey,* 828 F.2d 1071, 1075 (4th Cir. 1987) (describing the case as

"extraordinarily simple": an ordinary zoning dispute between two developers about a particular

tract of land).[45] Defendants' own authorities confirm that "multiple predicate acts"—like the

---

[44] For the same reason, there is not a single "type" of injury. *See* SCP Br. 22. Even looking only at
Anthem, it does not suffer a single type of injury. It is injured not just by paying unwarranted and
exorbitant IDR awards, but also by paying the non-refundable IDR administrative fees and the
costs of considerable operational burden and expense in responding to ineligible IDR disputes.
*See, e.g.*, Compl. ¶¶ 76, 282, 325, 333, 345.

[45] Defendants' other cases purportedly supporting the argument that a single scheme and small
number of victims defeats a RICO claim are not factually comparable. *See Anderson v. Found. for
Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (no pattern based
on failure to pay plaintiff two commissions and alleged separate scheme unrelated to plaintiff);
*Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (no pattern where sole perpetrator
had limited purpose of defrauding two companies out of oil interests and transaction occurred in
one year); *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) (no pattern where
challenged acts arose in context of ordinary business contract dispute); *Int'l Data Bank, Ltd. v.
Zepkin*, 812 F.2d 149, 154 (4th Cir. 1987) (no pattern where "one allegedly misleading prospectus
reached the hands of ten investors"); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994)
("a single fraudulent scheme . . . to misrepresent a guaranteed price in a building contract"); *Ornest
v. Delaware N. Companies, Inc.*, 818 F.2d 651, 652 (8th Cir. 1987) (single scheme to defraud
plaintiffs of "contractual share of vending machine sales commissions").

"continuous and related" acts alleged here—may satisfy the pattern requirement even if part of a "single scheme." *Menasco, Inc.*, 886 F.2d at 684 (citing *H.J. Inc.*, 492 U.S. at 237).

Further, Anthem alleges facts establishing that these predicate acts "are part of the regular way of doing business for an ongoing entity," which suffices to allege the required continuity. *H.J. Inc.*, 492 U.S. at 230, 242. For example, "[f]rom January 2024 to August 2025," "Defendants initiated tens of thousands of IDR proceedings against Anthem" and "nearly 60 percent were ineligible for IDR." *See* Compl. ¶¶ 138-39; *see also id.* ¶¶ 11, 137, 282, 296, 383 (alleging ongoing enterprise and harm). Others have recognized that the volume and frequency of Defendants' initiation of this type of dispute indicates a "general business practice." *See* Compl. ¶ 84 (Virginia agency recognized SCP's frequent dispute initiation in the state balance billing regime indicated a "general business practice").

The ongoing scheme to fraudulently obtain IDR awards involves thousands of predicate acts (*e.g.*, *id.* ¶¶ 11, 137-39, 282) "whose scope and persistence pose a special threat to social well-being," particularly given the impact on overall healthcare costs and consumers. *Compare id.* ¶¶ 106, 137, *with Menasco*, 886 F.2d at 684 (holding year-long scheme to deprive two companies of oil interests did not "pose a special threat to social well-being") (internal citation omitted). That the NSA Scheme is conducted in the context of a statutorily-created dispute resolution program designed to lower medical costs only confirms the threat to "social well-being." *See Oriole Grp.*, 791 F. Supp. 3d at 693 (recognizing the significance of defendants' use of "financial disclosures required by federal law" as the vehicle for their fraudulent statements). Anthem has plainly alleged a pattern of racketeering activity sufficient to state a RICO claim.

## E.     Anthem Pleads a RICO Conspiracy.

Anthem clears the bar for pleading a RICO conspiracy under 18 U.S.C. § 1962(d), and Defendants' assertions to the contrary are unavailing. AGS Br. 27; SCP Br. 27-28. As an initial

56

matter, as discussed in Sections II.A-D, Anthem adequately pleads a substantive RICO claim under 18 U.S.C. § 1962(c). Moreover, "simply agreeing to advance a RICO undertaking is sufficient" to establish liability under 18 U.S.C. § 1962(d). *United States v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012). Defendants argue that Anthem has failed to plead in detail "when an agreement between the Defendants to commit the predicate acts was entered into or the contours of any such agreement," (SCP Br. 28), but that is not required at this stage of the litigation. Indeed, "[p]roof of such an agreement may be established solely by circumstantial evidence." *Hengle v. Asner*, 433 F. Supp. 3d 825, 898 (E.D. Va. 2020) (internal citation omitted), *aff'd sub nom.*, *Hengle v. Treppa*, 19 F.4th 324 (4th Cir. 2021); *Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union*, No. CIV. A. 3:07CV641, 2008 WL 4925194, at *6 (E.D. Va. Oct. 14, 2008) ("Because conspirators normally attempt to conceal their conduct, the elements of a conspiracy offense may be established *solely* by circumstantial evidence.").

The requirement to plead an agreement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 556 (2007). Anthem has surpassed that requirement, both through explicit allegations of an agreement among the Defendants and the obvious inferences to be drawn from Anthem's allegations regarding Defendants' coordinated scheme to defraud Anthem and other victims.

Indeed, the Complaint pleads an express retention arrangement.[46] SCP, on behalf of and in

---

[46] *Cf. WW, LLC v. Coffee Beanery, Ltd.*, No. CIV.A. WMN-05-3360, 2012 WL 3728184, at *16 (D. Md. Aug. 27, 2012) (dismissing conspiracy claim under the intracorporate conspiracy doctrine); *Walters v. McMahen*, 795 F. Supp. 2d 350, 352 (D. Md. 2011), *aff'd*, 684 F.3d 435 (4th Cir. 2012), *aff'd*, 684 F.3d 435 (4th Cir. 2012) (finding plaintiffs' theory of a conspiracy among midlevel human resources employees implausible and, in any event, barred under intracorporate conspiracy doctrine); *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 608 (D. Md. 2014) (plaintiff pleaded neither existence of express agreement nor facts supporting agreement).

coordination with the Provider Defendants, retained AGS to initiate open negotiations, file IDR disputes, and submit offers and documentation on their behalf in the ineligible IDR proceedings. Compl. ¶ 357. It alleges a shared corporate infrastructure binding all Defendants. SCP and the Provider Defendants share the same principal office address (the corporate headquarters of SCP); the same authorized official, Lisha Falk (Vice President of Contracting and Corporate Secretary at SCP), who signed the Articles of Formation for each entity and is listed on their NPI records as the corporate representative; a single point of contact for billing, payment, appeals, and correspondence; and use of @scp-health.com or @agshealth.com email domains on all IDR submissions and correspondence. *See* Compl. ¶¶ 16-20, 153; Section II.B.1. And the frequency, pattern, and volume of Defendants' thousands of false submissions confirm that these are not isolated or inadvertent actions but instead arise from a carefully orchestrated scheme. Anthem far exceeds its obligation to "articulate facts that, read favorably, support the reasonable inference that [Defendants] agreed to engage in a conspiracy." *Gibbs v. Elevate Credit, Inc.*, No. 3:20CV632, 2021 WL 4851066, at *18 (E.D. Va. Oct. 17, 2021)

### III.    Anthem States a Claim under ERISA (Count X).

Contrary to Defendants' arguments, Anthem adequately alleges its fiduciary status. *See* SCP Br. 35. ERISA defines "fiduciary" as follows:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan . . . .

29 U.S.C. § 1002(21)(A).

Anthem alleges that the employer sponsors of certain ERISA-governed health plans: (1) "delegate to Anthem discretionary authority to recover overpayments, including those resulting

58

from fraud, waste, or abuse"; and (2) "delegate authority to Anthem to administer the IDR process on behalf of the plans." Compl. ¶¶ 33, 361. Pursuant to this authority, Anthem now seeks to enjoin Defendants' fraudulent and abusive practices to protect and control the management and disposition of plan assets. *See id.* ¶¶ 364-65, 367; *see also* 29 U.S.C. § 1132(a)(3) (authorizing a fiduciary of a health plan to bring a civil action to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan"); *Provident Life & Accident Ins. Co. v. Cohen*, 423 F.3d 413, 425 (4th Cir. 2005); *Griggs v. E.I. DuPont de Nemours & Co.,* 237 F.3d 371, 384 (4th Cir. 2001) (discussing right of fiduciary to seek injunctive and other appropriate equitable relief relating to the same).

Next, Defendants claim that Anthem is required "to identify with particularity the self-funded plans at issue."[47] SCP Br. 35. But at the pleading stage, a plaintiff need allege only "the existence of an ERISA plan." *Abira Med. Lab'ys, LLC v. Anthem Health Plans of Virginia, Inc.*, No. 3:25CV108 (RCY), 2026 WL 281172, at *5 (E.D. Va. Feb. 3, 2026); *see also Nutrishare, Inc. v. Connecticut Gen. Life Ins. Co.*, No. 2:13-CV-02378-JAM-AC, 2014 WL 2624981, at *3 (E.D. Cal. June 12, 2014) ("Once the case is allowed to proceed to discovery, CIGNA would be required to specifically identify the plans at issue."); *UnitedHealthCare Servs. v. Team Health Holdings, Inc.*, 3:21-cv-00364, 2022 WL 1481171, at *8 (E.D. Tenn. May 10, 2022) ("The interests of judicial economy counsel that United be allowed to produce the relevant documents for its ERISA claim in the normal course of discovery."). The Complaint alleges that the self-funded plans at

---

[47] Defendants further claim that "Anthem or an affiliate have disavowed the ERISA fiduciary designation to avoid liability." SCP Br. 36. These cases do not involve "affiliates" of Anthem. More importantly, a party may be a fiduciary for certain purposes but not for others; it is necessarily a fact-specific question. *See Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171, 179 (4th Cir. 2023); *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 192 (4th Cir. 2002).

59

issue are subject to ERISA. *See* Compl. ¶¶ 33, 361, 365. Additionally, it alleges the terms of those ERISA plans confer discretionary authority to Anthem. *See id.* ¶ 379. This is all that is required.[48]

Finally, there is no merit to Defendants' argument that, because Anthem alleges violations of ERISA provisions that were enacted through the NSA, the NSA's Judicial Review Provision somehow bars Anthem's ERISA claim. AGS Br. 33. Under 29 U.S.C. § 1132(a)(3), Anthem is authorized to bring an action to address conduct that "violates any provision of this subchapter." There are no exceptions. And there is no rational basis to suggest that Congress intended to limit actionable ERISA claims, especially for injunctive relief that is not available in IDR proceedings.

## IV.    Anthem States Claims Under Virginia Law.

### A.    Anthem Pleads Business Conspiracy (Count III).

Defendants' NSA Scheme constitutes a violation of Virginia's Business Conspiracy statutes (VA. CODE ANN. §§ 18.2-499 (West 2025)), and Defendants' arguments to the contrary are unavailing. First, Defendants argue that Anthem does not plead the underlying fraudulent conduct with particularity. *See* AGS Br. 34; SCP Br. 37.[49] As detailed in Section II.B, Anthem plainly satisfies Rule 9(b).

Second, AGS contends that Anthem has failed to plead that Defendants "acted out of a desire to injure [plaintiffs] in their business," as opposed to merely "act[ing] for [a] legitimate business purpose[.]" AGS Br. 34 (quoting *Peterson v. Cooley*, 142 F.3d 181, 187–88 (4th Cir.

---

[48] Again, "fiduciary status is a fact sensitive inquiry," and courts often will have insufficient facts at the motion to dismiss stage to determine fiduciary status. *See Feamster v. Mountain State Blue Cross & Blue Shield, Inc.*, No. 6:10-CV-00241, 2010 WL 2854302 at *4 (S.D. W. Va. July 19, 2010) (collecting cases). Consequently, it is typically premature to determine fiduciary status at the motion to dismiss stage. *See id.*; *Peters v. Aetna, Inc.*, No. 1:15-CV-00109-MR, 2016 WL 4547151 at *10 (W.D.N.C. Aug. 31, 2016).

[49] SCP and Provider Defendants do not seek dismissal on all grounds raised by AGS, arguing only that Anthem's Complaint does not sufficiently allege a factual basis for the agreement element of conspiracy. *See* SCP Br. 37. This argument is addressed in Section IV.B concerning Count VII.

1998)). But under Virginia Code § 18.2–499, "'[i]t is not necessary for a plaintiff to prove that the defendant conspirators acted with actual malice, *i.e.*, ill-will, hatred, or spite directed toward the plaintiff,' but only that they acted with 'legal malice, *i.e.*, intentionally, purposefully, and without lawful justification.'" *Chipper Pro, LLC v. Bandit Indus., Inc.*, 616 F. Supp. 3d 525, 536-37 (W.D. Va. 2022) (internal citation omitted). Anthem alleges that Defendants engaged in a carefully orchestrated scheme to defraud Anthem, including by filing thousands of false certifications with the government. *E.g.*, Compl. ¶¶ 108, 109, 308, 323. Anthem is not seeking to hold Defendants liable for actions taken for a "legitimate business purpose." *Cf. Peterson v. Cooley*, 142 F.3d 181, 187 (4th Cir. 1998) (defendant could not be held liable for engaging in lawful conduct that "any purchaser of credit would do in the same circumstances").

Third, AGS suggests that Anthem's claim is premised on a desire to "dodg[e] the mandatory IDR process," which is not a legally protected interest. *See* AGS Br. 34. But Anthem's claims are based on its legally protected interest in seeking damages, declaratory, and injunctive relief due to Defendants' violations of federal and state laws. *Cf. Va. Vermiculite, Ltd. v. Hist. Green Springs, Inc.*, 307 F.3d 277, 284 (4th Cir. 2002) (plaintiff had no right to challenge defendant's decision to donate its own land to non-profit organization).

Finally, Defendants argue that Anthem has failed to allege a factual basis for the agreement elements of a conspiracy. Virginia law permits a conspiratorial agreement to be inferred from coordinated conduct. *See All Business Solutions,* 629 F. Supp. 2d at 557. Here, Anthem has pled more than adequate facts to establish an agreement. *See supra* Sections II.E, & IV.B.

**B.    Anthem Pleads Civil Conspiracy (Count VII).**

Defendants' NSA Scheme also constitutes Civil Conspiracy under Virginia law, and Defendants identify no basis for dismissal. First, AGS argues that participation in the IDR process is federally authorized and cannot be the basis for unlawful conspiracy. *See* AGS Br. 37. But

61

Anthem does not seek to hold Defendants liable for participating in the IDR process. Rather, it seeks to hold them liable for their fraudulent NSA Scheme, which is not authorized by any law.

Second, Defendants argue the Complaint fails to allege an agreement and "preconceived plan" among the Defendants. *See* AGS Br. 37; SCP Br. 37. This argument fails. *See* Background, Section IV. & Argument, Section II.E. The coordinated actions, mutual financial incentives, and repeated patterns of conduct across all Defendants demonstrate a shared intent to pursue improper IDR payments on a mass scale. Virginia law permits a conspiratorial agreement to be inferred from such coordinated conduct. *See All Business Solutions,* 629 F. Supp. 2d at 557. The uniformity of the scheme—the same email domains, signatories, automated platforms, and fraudulent attestation language deployed across thousands of proceedings—compels that inference. And the repetition of the scheme across thousands of false filings confirms this was not happenstance or spontaneous.

Third, AGS argues that Anthem has failed to plead an underlying tort. *See* AGS Br. 37. For the reasons stated in Section IV, Anthem pleads viable tort claims.

### C.    Anthem Pleads a Viable Claim under the VCPA (Count IV).

Defendants' NSA Scheme also violates the VCPA, and Defendants' arguments for dismissal fail. First, AGS argues Anthem does not plead the underlying fraudulent conduct with particularity. *See* AGS Br. 34-35. As detailed in Section II.B, Anthem plainly satisfies Rule 9(b).

Second, Defendants argue that Anthem fails to allege a claim because it is not a consumer. *See* AGS Br. 35; SCP Br. 38. But as the payor for the underlying medical services, Anthem is a consumer vis-à-vis Provider Defendants. As the court in *Staley v. Gilead Scis., Inc.* explained:

> [A] third party payor . . . falls squarely within the ordinary definition of 'consumer,' which means 'one that utilizes economic goods.' In this case, [the payor] uses economic goods, namely drugs . . . to provide prescription reimbursements for treatment of its members and beneficiaries . . . Under this ordinary definition, it matters not that [the payor] itself did not physically consume or use the drug[.]

589 F. Supp. 3d 1132, 1137–38 (N.D. Cal. 2022) (citation omitted) (applying Indiana law).

62

In any event, Anthem need not be a consumer or be in privity with Defendants to plead a violation of the VCPA. "It is not privity that is the limiting principle here but rather whether [Defendants'] conduct is foreseeably 'in connection with' a consumer transaction, in this case by enabling it." *Garvin v. LBAS, Inc.*, No. 0661-24-1, 2025 WL 2956445, at *4 (Va. Ct. App. Oct. 21, 2025); *see also Alexander v. Se. Wholesale Corp.*, 978 F. Supp. 2d 615, 622 (E.D. Va. 2013) ("The allegedly fraudulent acts only need be 'in connection with' a consumer transaction.") (quoting *Branin v. TMC Enterprises, LLC*, 832 F. Supp. 2d 646, 650 (W.D.Va. 2011)). Here, the underlying services—emergency medical care provided to Anthem's members—are quintessential consumer transactions squarely within the VCPA's protective ambit. And Defendants' conduct is plainly "in connection" with their provision of services to Anthem's members.[50]

Nor does the VCPA require that a misrepresentation be made directly from the Defendant to the end user of a service or product. In *Commonwealth ex rel. Herring v. Teva Pharms. USA, Inc.*, the Commonwealth of Virginia brought VCPA claims against pharmaceutical manufacturers who marketed opioid drugs to doctors, rather than directly to consumers. 107 Va. Cir. 44 (Richmond City Cnty. Cir. Ct. 2020). The defendants argued that the Commonwealth's claims did not constitute "consumer transactions" because defendants did not sell or market their drugs directly to consumers, and that the allegedly unlawful transactions only involved merchants and were thus too attenuated from the ultimate consumer to fall within the VCPA's scope. *Id.* at 48. The court rejected this argument, noting that the VCPA defines a "supplier" as one who "who advertises and sells . . . goods or services to be resold . . . by other persons in consumer transactions," and that the "to be resold" language renders it immaterial whether the supplier sells

---

[50] *Cf. Benkirane v. City Concrete Corp.*, 918 S.E.2d 274, 282 (Va. Ct. App. 2025) (concrete services contract between two business had no connection to any consumer transaction).

63

directly to consumers. *Id*. (citing VA. CODE ANN. § 59.1-198 (West 2025)). "Furthermore, federal courts have been consistent in their interpretation of the VCPA, holding that a direct sale to a consumer is not required for the transaction to be covered by the VCPA." *Id*. (citing *Alexander*, 978 F. Supp. 2d at 622; *Branin v. TMC Enters., LLC*, 832 F. Supp. 2d 646, 650 (W.D. Va. 2011)).

Finally, Defendants argue that because participation in the IDR process is federally authorized and thus exempt from VCPA liability under Va. Code § 59.1-199, it cannot be the basis for unlawful conspiracy. *See* SCP Br. 38. Again, Anthem seeks to hold Defendants liable for their fraudulent NSA Scheme, not for participating in the IDR process.

**D.      Anthem Pleads Common Law and Constructive Fraud (Counts V & VI).**

Anthem pleads all elements of common law and constructive fraud. As detailed in the Complaint in compliance with Rule 9(b) (*see* Section II.B), Defendants deliberately and knowingly submitted thousands of false representations to the IDR Portal. In addition to deceiving Anthem, Defendants intended to deceive HHS and the IDREs, who could directly compel Anthem to pay fees and awards. As intended, (1) HHS (via the IDR Portal) relied on the false statements by opening IDR proceedings and charging Anthem administrative fees, and (2) IDREs relied on the statements by issuing eligibility decisions and awards against Anthem.

Defendants argue that Anthem has failed to adequately plead reliance because Anthem itself often knew the Defendants' statements were false and even objected to them. In most circumstances, plaintiffs must rely directly on a defendant's misrepresentation to state a claim. But courts have recognized an exception to this rule where, as here, the defendant intentionally induces reliance by an intermediary who has the legal authority to compel the plaintiff's financial loss.

This principle is applied, for example, to permit plaintiffs to assert fraud where a defendant deceives a bank into paying under a letter of credit issued by the plaintiff. *See, e.g.*, *ADA-ES, Inc. v. Big Rivers Elec. Corp.*, 465 F. Supp. 3d 703, 711 (W.D. Ky. 2020) (although bank issued payment

in reliance on defendant's misrepresentation, plaintiff was "obligated to repay the Bank, suffer[ing] injury that was the proximate result of [defendant's]representation"); *Holmberg v. Morrisette*, 800 F.2d 205, 211 (8th Cir. 1986) ("The bank accepted the falsified documents that defendants presented and in reliance on them paid defendants $125,000. Accordingly, Holmberg, who then was obligated to repay the bank, suffered injury that was the proximate result of defendants' intentional misrepresentations."); *Pubali Bank v. City Nat. Bank*, 777 F.2d 1340, 1342 (9th Cir. 1985) (defendants held "liable for damages suffered by [plaintiff] when Manufacturers Hanover Bank honored the letters of credit and offset [plaintiff's] account in those amounts").

While Virginia courts do not appear to have directly addressed this issue, the U.S. Supreme Court has explained that:

> [W]hile it may be that first-party reliance is an element of a common-law fraud claim, there is no general common-law principle holding that a fraudulent misrepresentation can cause legal injury only to those who rely on it. The Restatement [(Second) of Torts § 548A] . . . certainly does not support that proposition. It provides only that the plaintiff's loss must be a foreseeable result of *someone's* reliance on the misrepresentation. It does not say that only those who rely on the misrepresentation can suffer a legally cognizable injury. And any such notion would be contradicted by the long line of cases in which courts have permitted a plaintiff directly injured by a fraudulent misrepresentation to recover even though it was a third party, and not the plaintiff, who relied on the defendant's misrepresentation . . . and the Restatement specifically recognizes "a cause of action" in favor of the injured party where the defendant "defrauds another for the purpose of causing pecuniary harm to a third person." *Id.*, § 435A, Comment *a*.

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 656–57 (2008). None of Defendants' authorities address comparable circumstances in which defendants intentionally defraud a third party to inflict immediate financial harm on the plaintiff.[51]

---

[51] *See Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 478 (4th Cir. 2006) (holding, in securities fraud case, "plaintiff must allege that the [stock] price fell after the truth came to light about a misrepresentation"); *RBA Cap., LP v. Anonick*, No. CIV. A. 3:08CV494, 2009 WL 960090, at *4 (E.D. Va. Apr. 8, 2009) (shareholders could not state fraud claim because corporate entity itself paid money in reliance on misrepresentations); *Bailey v. Ethicon, Inc.*, No. 7:20-CV-622, 2021 WL 2345357, at *6 (W.D. Va. June 8, 2021) (dismissing patient's fraud claim against medical product

Here, in contrast, Anthem was *immediately* required to pay administrative IDR fees the moment that Defendants fraudulently initiated each proceeding. Compl. ¶ 76. And as a result of the IDR proceedings themselves, Anthem was ordered to pay further fees and awards. *E.g.*, *id*. ¶¶ 167, 193, 222, 234, 277. "This is not a case of a person being held accountable for an act he never intended to commit, or becoming liable to another whom he never intended to defraud." *See Fla. Rock & Tank Lines, Inc. v. Moore*, 258 Ga. 106, 107 (1988) (affirming fraud verdict where defendant's misrepresentation to a third party caused plaintiff's financial loss). Defendants deliberately sought to induce reliance by HHS and the IDREs for the sole purpose of defrauding Anthem. Anthem was clearly the intended victim of these misrepresentations and should be permitted to pursue its misrepresentation claims.

### E.    Anthem Pleads Conversion (Count VIII).

Defendants' NSA scheme also makes them liable for conversion. Defendants argue that Anthem cannot plead wrongful dominion and control because Anthem's payments were directed by an IDR payment determination, which provides a "lawful justification." *See* AGS Br. 37; SCP Br. 39-40. But Defendants' authorities bar conversion only where a defendant takes action pursuant to "a facially valid court order." *Bitseller Expert Ltd. v. Verisign, Inc.*, No. 119CV01140AJTJFA, 2019 WL 13251185, at *7 (E.D. Va. Dec. 20, 2019); *Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 838 F. Supp. 2d 436, 441 (E.D. Va. 2012) ("[D]efendant had no legal right to take title to the Jeep without first obtaining a court order.").[52] An IDR payment determination is not a court order and

---

manufacturer because patient decided to have procedure without relying on manufacturer's marketing materials); *Commonwealth Transp. Com'r v. Saunders*, 52 Va. Cir. 216 (2000) (dismissing fraud claim premised on allegation that misrepresentation caused a third party to file a lawsuit against plaintiff); *Qiu v. Huang*, 77 Va. App. 304, 315 (2023) (dismissing fraud claim against ex-spouse's attorney for misrepresentation in custody dispute).

[52] *Grayson v. Westwood Buildings L.P.* held only that a counterclaim defendant had a perfected security interest funds, and thus there could be no conversion. 300 Va. 25, 73 (2021).

is not even enforceable in court. *See HCSC*, 140 F.4th at 275. Moreover, even a court order cannot provide a lawful justification where, as here, it was "procured by fraud and thus void *ab initio*." *SAF Funding, LLC v. Taylor*, 98 Va. Cir. 10 (2017) (denying motion to dismiss conversion claim where plaintiff alleged judgment was procured through "filing false affidavits with the Court containing material misrepresentations").

Nor can AGS escape liability simply because it did not receive any payments directly from Anthem. *See* AGS Br. 36. AGS is liable for conversion as a joint tortfeasor because it was an active participant in Defendants' scheme. *See* Compl. ¶¶ 21, 155-58; *see Cook v. The 1031 Exch. Corp.*, 29 Va. Cir. 302 (1992) (liability for conversion extends to defendants who "participate[] in converting [] funds"); *cf. Jordan v. Osmun*, No. 1:16-cv-501, 2016 WL 7173784, at *6 (E.D. Va. Dec. 8, 2016) (dismissing where defendant took no "affirmative action" to facilitate conversion).

## V.    The Virginia Anti-SLAPP Statute Does Not Apply.

As alleged in the Complaint, Defendants' speech is not protected under Virginia's Anti-SLAPP law, Va. Code § 8.01-223.2, for at least two reasons. *See* AGS Br. 38; SCP Br. 29-31. First, Defendants incorrectly contend that the challenged statements are immunized because they relate to "matters of public concern that would be protected under the First Amendment." AGS Br. 38; SCP Br. 28-31. "Matters of public concern" are those that involve "an issue of social, political, or other interest to a community." *Rolofson v. Fraser*, 904 S.E.2d 284, 293-94 (Va. App. 2024). Here, the challenged statements address "matters of personal interest." *See id.* at 294. Defendants (dubiously) contend there is a "public concern" in "securing fair payment" for emergency services provided to Virginians (SCP Br. 30), but the relevant statements address only whether specific medical services provided to specific individuals meet certain requirements for review by an IDRE. And in making those statements, Defendants did "not seek to communicate to the public" at all, let alone "to advance a political or social point of view." *See id.* at 295; *see also Rolofson v.*

67

*Fraser*, 81 Va. App. 508, 531 (2024) ("Nothing in the record indicates that Fraser was attempting to speak with the public"); *cf. Jones v. City of Greensboro*, 1:24CV450, 2025 WL 969360, at \*5 (M.D.N.C. Mar. 31, 2025) (addressing Facebook posts about "racial tensions and societal unrest" and other "matters of national debate"). Instead, they sought to further their own financial self-interest in a private commercial dispute. The statements are therefore not immunized by the Virginia statute.[53]

Second, even if they related to "matters of public concern," Virginia's statute does not protect statements the declarant "knew or should have known were false or were made with reckless disregard for whether they were false." VA. CODE ANN. § 8.01-223.2(B) (West 2025); *Brooks-Buck v. Wahlstrom*, 921 S.E.2d 223, 231 (Va. 2025). Anthem alleges that Defendants made the challenged statements with knowledge of falsity. *See, e.g.*, Compl. ¶¶ 4, 10, 109, 113, 115-16, 120-22, 330. The Complaint includes detailed allegations on why Defendants had knowledge of the relevant facts and had to disregard or misrepresent those facts to initiate IDR proceedings for ineligible claims. Compl. ¶¶ 48-61, 116 (explaining how IDR initiation process itself gives notice to the initiating party that a dispute is not eligible and requires attestation of eligibility); *id.* ¶¶ 30, 54, 56, 79, 118 (providers have knowledge of relevant eligibility facts through their own records or public records); *id.* ¶¶ 4, 30, 46, 64-68, 116-19 (Anthem provides notice of ineligibility through EOPs and direct communications with providers and initiating parties). Defendants' motion to dismiss pursuant to Virginia's anti-SLAPP law should be denied.[54]

---

[53] The statements are also not "petitioning activity" protected by the First Amendment. *Compare* AGS Br. 38, *with* Section I.C.

[54] If, nonetheless, the Court orders dismissal under Virginia's anti-SLAPP law, no fees or costs should be awarded here because Anthem's claims had a substantial basis in law and fact. *McCullough v. Gannett, Co.*, No. 122CV1099RDALRV, 2023 WL 3075940, at \*15 (E.D. Va. Apr. 25, 2023) (denying fees where "there was some basis in fact and in law for Plaintiff to bring [the]

## VI.    Alternatively, Anthem Should be Allowed to Amend to Cure Any Deficiencies.

Anthem has stated a plausible claim for relief with respect to each count. However, if the Court finds any claim inadequately pleaded, Anthem should be afforded leave to remedy any deficiencies. The Fourth Circuit has "interpreted Rule 15(a) to provide that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (internal citation omitted). None of these conditions are present, and Anthem should be permitted to amend to cure any pleading deficiency.

## VII.    The Court Should Disregard SCP's Factual Arguments and Submission.

This Court should disregard SCP's inappropriate fact declaration. ECF No. 40. SCP cites *U.S. ex rel. Vuyyuru v. Jadhav,* 555 F.3d 337, 347 (4th Cir. 2009) for the proposition that a court may consider affidavits when a defendant challenges subject matter jurisdiction. But as evident in that case, this rule applies only where "subject-matter jurisdiction turns on contested facts." *Id*. at 348 (internal citation omitted). Here, SCP's sole argument about subject matter jurisdiction is premised on the Judicial Review Provision of the NSA. SCP Br. 15. SCP's brief does not even cite the declaration in support of *any legal argument*. SCP's declaration attempts to introduce irrelevant factual matters into the record and should be disregarded.

In addition, SCP makes a purely *factual* argument to suggest that Anthem failed to submit timely objections to IDREs and defaulted in connection with the specific disputes identified in the complaint. SCP Br. 11-12. But that is not at all what the Complaint alleges, and Defendants' efforts to raise factual defenses are improper on a motion to dismiss. *See*, *e.g.*, *Winners Circle Imports,*

---

action"); *Malone v. WP Co., LLC*, No. 3:22-CV-00046, 2023 WL 6447311, at *9 (W.D. Va. Sept. 29, 2023) (declining to award fees where claim was not frivolous).

69

*LLC v. Whitney's Auto. Venture Enter., LLC*, No. 2:24-CV-718, 2025 WL 2856525, at *9 (E.D. Va. Oct. 8, 2025) (refusing to adopt the "version of events laid out in [defendant's] brief" and noting that "courts construe the facts and reasonable inferences in a complaint in the light most favorable to the plaintiff, and a defendant's allegations to the contrary are disregarded").

In each of the relevant disputes, Anthem pleads that it submitted objections during the proceedings and notes that Defendants refused to withdraw the disputes in response to those objections. Compl. ¶¶ 166, 176, 185, 192, 198, 204, 210, 216, 221, 227, 233, 238, 245, 252, 258, 264, 270, 276. While SCP notes that Anthem *continued* to file objections in some instances many months after a proceeding was initiated (SCP Br. 11-12), this is unsurprising. While the statute technically requires that IDREs issue determinations within 30 days of their selection, the extraordinary volume of disputes has resulted in widespread months-long delays and backlogs.[55]

## CONCLUSION

For the foregoing reasons, Anthem respectfully requests that the Court deny Defendants' Motions in their entirety.

---

[55] "In the first year of implementation," the volume of disputes so far exceeded capacity that "certified IDR entities reached a payment determination in only 8% of all disputes submitted." CMS, FACT SHEET: CLEARING THE INDEPENDENT DISPUTE RESOLUTION BACKLOG at 1 (September 2025), https://www.cms.gov/files/document/fact-sheet-clearing-independent-dispute-resolution-backlog.pdf. And in 2023, most IDRES reported taking an average of over 100 days to reach a payment determinations, with one IDRE reporting an average of nearly 200 days. *NSA Arbitrators Vary*, https://bit.ly/3XQUUcO.

70

Respectfully Submitted,

*/s/ Jed Wulfekotte*
Jed Wulfekotte
VA Bar No. 73538
**Crowell & Moring LLP**
1001 Pennsylvania Ave. NW
Washington, DC 20004
Tel: (202) 624-2693
Fax: (202) 628-5116
jwulfekotte@crowell.com

Martin J. Bishop (*pro hac vice* forthcoming)
Illinois Bar No. 6269425
Alexandra M. Lucas (*pro hac vice* forthcoming)
Illinois Bar No. 6313385
Jason T. Mayer (*pro hac vice* forthcoming)
Illinois Bar No. 6309633
**Crowell & Moring LLP**
300 N. LaSalle Drive
Suite 2500
Chicago, IL 60654
Tel: (312) 321-4200
mbishop@crowell.com
alucas@crowell.com
jmayer@crowell.com

*Attorneys for Plaintiffs Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield and Healthkeepers, Inc.*

71