CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 30, 2026
LAURA A. AUSTIN, CLERK
BY: /s/L. Ayers
DEPUTY CLERK

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **ANTHEM HEALTH PLANS OF VIRGINIA et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Civil Action No.: 7:25-cv-00804** |
| **AGS HEALTH et al.,** | ) | |
| **Defendants.** | ) | |

# MEMORANDUM OPINION

Plaintiffs Anthem Health Plans of Virginia and Healthkeepers are licensed health maintenance organizations in Virginia. Their claims arise out of the independent dispute resolution ("IDR") process created by the No Surprises Act to resolve certain billing disputes between health plans and out-of-network providers. Defendants Schumacher Group of Louisiana and Schumacher Group of Virginia (collectively, "SCP") are affiliated entities that provide staffing and management services to hospitals and healthcare facilities, including emergency and hospital medicine services. Defendants Ingleside Emergency Group, Kingsford Emergency Group, Lake Spring Emergency Group, Western Virginia Regional Emergency Physicians, and Wildwood Emergency Group (the "Provider Defendants") belong to a network of emergency medicine provider groups affiliated with SCP. Defendant AGS is a healthcare revenue cycle management company that serves as the billing and revenue cycle manager for SCP and the Provider Defendants.

Before the Court are Defendants' Motions to Dismiss (Dkts. 37, 39) and related Request for Judicial Notice (Dkt. 57) which the Court **GRANTS**.

**FACTS**

The No Surprises Act, effective January 2022, bans surprise billing for three categories of out-of-network healthcare: (1) emergency services, (2) non-emergency services by out-of-network providers at in-network facilities, and (3) air ambulance services. Dkt. 1 ¶ 37 (citing 42 U.S.C. §§ 300gg-131–132, 300gg-135). The Act also establishes a dispute resolution process known as an IDR to resolve specific types of eligible surprise billing disagreements. *Id.* ¶ 38 (citing 42 U.S.C. § 300gg-111(c)).

When a health plan receives an eligible claim, it either makes an initial payment or issues a notice of denial of payment. *Id.* ¶ 39 (citing 42 U.S.C. § 300gg-111(a)(1)(C)(iv)(I)). If the provider is dissatisfied with the outcome, it may initiate open negotiations with the health plan over a period of 30 days. *Id.* ¶ 40 (citing 42 U.S.C. § 300gg-111(c)(1)(A)). If negotiations fail, the provider may then initiate the IDR process to determine the out-of-network rate for qualified IDR items or services. *Id.* ¶ 41 (citing 42 U.S.C. § 300gg-111(c)(1)(B); 45 C.F.R. § 149.510(b)(2)(i)).

After a provider initiates the IDR process, the parties select, or the Department of Health and Human Services appoints, an Independent Dispute Resolution Entity ("IDRE"). *Id.* ¶ 69 (citing 42 U.S.C. § 300gg-111(c)(4)(F)). The IDRE reviews the information submitted in the notice of IDR initiation to "determine whether the IDR process applies." *Id.* ¶ 70 (citing 45 C.F.R. § 149.510(c)(1)(v)). If it determines the process does apply, the IDRE makes a payment determination. *Id.* ¶ 71 (citing 42 U.S.C. § 300gg-111(c)(5)(A)). This determination is binding unless there was "a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim." *Id.* ¶ 74 (quoting 42 U.S.C. § 300gg-111(c)(5)(E)(i)). Further, the determination is not subject to judicial review "except in a case described in any of

paragraphs (1) through (4) of section 10(a) of title 9." *Id.* ¶ 75 (quoting 42 U.S.C. § 300gg-111(c)(5)(E)(II)). Section 10(a) of title 9, which refers to the Federal Arbitration Act, allows for vacatur of an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4).

Importantly, the IDR process is only available for a "qualified IDR item or service." *Id.* ¶ 43 (quoting 42 U.S.C. § 300gg-111(c)(1); 45 C.F.R. § 149.510(a)(2)(xi), (b)(1), (b)(2)). Of particular relevance here, the IDR process does not apply if an existing state law already governs out-of-network payment rates. *Id.* ¶ 44 (citing 42 U.S.C. § 300gg-111(a)(3)(H)–(K), (c)(1); 49 C.F.R. § 149.510(a)(2)(xi)(A)). In Virginia, the Virginia Balance Billing Law covers emergency, surgical, and ancillary services and provides its own payment-setting mechanism, rendering many disputes for healthcare services by Virginia providers ineligible for the No Surprises Act's IDR process. *Id.* ¶ 45 (citing Va. Code Ann. §§ 38.2-3445.01(A), 38.2-3445.02).

Plaintiffs in this case administer healthcare claims and IDR proceedings for members and plan sponsors. *Id.* ¶¶ 25–29. They contend that, despite built-in eligibility safeguards and their own notices to providers, Defendants submitted thousands of disputes that were plainly ineligible for the IDR process—particularly disputes governed by Virginia law. *Id.* ¶ 109. Plaintiffs allege that Defendants (1) made repeated false representations and attestations of eligibility; (2) manipulated the IDR process by submitting large numbers of open negotiations and IDR

initiations; and (3) demanded inflated, commercially unreasonable payment amounts. *Id.* ¶ 113. They claim that, since 2024, nearly 60 percent of Defendants' disputes that reached a determination were ineligible and Defendants have improperly secured millions of dollars in IDR awards. *Id.* ¶ 130.

Plaintiffs assert the following claims:

Count I – Violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c), based on allegations that Defendants knowingly submitted claims that were ineligible for the IDR process and knowingly demanded payments far in excess of commercially reasonable amounts.

Count II – Conspiracy to Violate RICO Act, 18 U.S.C. § 1962(c), based on the allegations above.

Count III – Conspiracy to Injure Another in Trade, Business or Profession, Va. Code Ann. §§ 18.2-499–500, based on the allegations above.

Count IV – Violation of Virginia's Unfair and Deceptive Trade Practices Act, Va. Code Ann. §§ 59.1-196 *et seq.*, based on the allegations above.

Count V – Common Law Fraud/Fraudulent Misrepresentation based on the allegations above.

Count VI – Constructive Fraud based on the allegations above.

Count VII – Civil Conspiracy based on the allegations above.

Count VIII – Conversion based on the allegations above.

Count IX – Vacatur of No Surprises Act IDR Awards based on the allegations above, brought in the alternative.

Count X – Violation of ERISA § 502(a)(3) based on the allegations above.

Defendants filed substantively similar motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

---

[1] Defendant AGS asks the Court to take judicial notice of six federal agency publications describing the IDR process. Dkt. 57. Plaintiffs do not oppose judicial notice of the existence of agency guidance documents but argue that these documents "cannot be used to establish facts in

## STANDARD OF REVIEW

### I. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss an action for lack of subject matter jurisdiction. In reviewing a Rule 12(b)(1) motion, a court determines "whether plaintiff's allegations, standing alone and taken as true [plead] jurisdiction and a meritorious cause of action." *Allianz Ins. Co. of Canada v. Cho Yang Shipping Co.*, 131 F. Supp. 2d 787, 789 (E.D. Va. 2000) (quoting *Dickey v. Greene*, 729 F.2d 957, 958 (4th Cir. 1984)). The party seeking to invoke the court's authority bears the burden of establishing subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

"When a defendant files a motion under Rule 12(b)(1) challenging subject-matter jurisdiction and relying simply on the allegations of the complaint, the court must take the jurisdictional facts alleged as true—as in the case of a motion filed under Rule 12(b)(6)—and determine, as a matter of law, whether the court has jurisdiction." *Blenheim Cap. Holdings Ltd. v. Lockheed Martin Corp.*, 53 F.4th 286, 292 (4th Cir. 2022). "But if the defendant disputes the facts alleged for jurisdiction, providing the court with contradicting facts, the court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." *Id.* (internal quotation marks omitted). "A Rule 12(b)(1) motion to dismiss should be granted 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Zeigler v. Eastman Chem. Co.*, 54 F.4th 187, 194 (4th Cir.

---

dispute at the motion to dismiss stage." Dkt. 71. I **GRANT** the request for judicial notice and consider the guidance documents as a description of how the IDR process is supposed to work, not as evidence of how it actually worked for any particular dispute. *See Anthem Blue Cross Life & Health Ins. Co. v. HaloMD LLC*, No. 8:25-CV-01467-KES, 2026 WL 982629, at *3 n.3 (C.D. Cal. Apr. 9, 2026).

2022) (quoting *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999)).

**II. 12(b)(6)**

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions, however, are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 679.

## ANALYSIS

**I. Subject Matter Jurisdiction - Counts I–VIII, X**

Plaintiffs' claims all rest on the same theory: that Defendants submitted ineligible disputes to the IDR process, falsely attested to eligibility, manipulated the IDR process by flooding it with open negotiations and IDR initiations, and obtained IDR awards they should not have received. These claims seek to invalidate or collaterally attack IDRE determinations, and the Court lacks subject matter jurisdiction to entertain all but the vacatur claim.

The No Surprises Act incorporates the Federal Arbitration Act, which provides the exclusive avenue for judicial review of IDR determinations. Parties may not circumvent the Federal Arbitration Act's limits by repackaging challenges to arbitration awards as RICO or ERISA claims. *See Anthem Blue Cross Life & Health Ins. Co. v. HaloMD LLC*, No. 8:25-CV-

01467-KES, 2026 WL 982629, at *9–10 (C.D. Cal. Apr. 9, 2026) (dismissing Anthem's RICO and ERISA claims and requests for declaratory and injunctive relief for lack of jurisdiction); *Aetna Health Inc. v. Radiology Partners, Inc.*, No. 3:24-CV-1343-BJD-LLL, 2026 WL 1556164, at *4 (M.D. Fla. Apr. 16, 2026) (explaining that the No Surprises Act and Federal Arbitration Act preempt Aetna's remaining claims because they are premised on the same facts as the fraud claims); *Blue Cross Blue Shield of Tex., v. HaloMD, LLC*, 5:25-cv-00132, 2026 WL 1557492, at *4–7 (E.D. Tex. May 22, 2026) (dismissing BCBS's claims as "an impermissible collateral attack on the IDR awards"); *Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. v. Halomd, Inc.*, No. 1:25-CV-2919-TWT, 2026 WL 2017291, at *13, *15 (N.D. Ga. July 10, 2026) (finding that the court lacked jurisdiction over RICO and ERISA claims used to collaterally attack IDR awards). Here, each of Plaintiffs' non-vacatur claims would require the Court to find that the IDREs erred in deciding eligibility, to invalidate or disregard the payment determinations, and to award damages or other relief based on those payment awards. This is precisely the type of judicial review Congress foreclosed in the No Surprises Act.

Plaintiffs argue the No Surprises Act's judicial review provision applies only to individual IDRE payment determinations and not to the fraudulent scheme alleged in this case. They invoke the "strong presumption in favor of judicial review" absent "clear and convincing" evidence of congressional intent to preclude it. *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 370 (2018) (citation and internal quotation marks omitted). According to Plaintiffs, the Act forbids judicial review of "determination[s] of a certified IDR entity under subparagraph (A)," and subparagraph (A) addresses only payment determinations, not eligibility determinations. 42 U.S.C. § 300gg-

111(c)(5)(A), (E)(1).[2] Thus, "[n]othing in the NSA suggests that a scheme involving thousands of ineligible disputes is immune from judicial review." Dkt. 51 at 38.

I disagree with this interpretation. When the No Surprises Act is read as a whole, Congress provided the requisite clear and convincing evidence that judicial review is limited to the Federal Arbitration Act's narrow vacatur grounds.

First, the statutory structure of the Act makes eligibility part of the unreviewable "determination." Subparagraph (A) describes the IDRE's determination with respect to "a qualified IDR item or service." 42 U.S.C. § 300gg-111(c)(5)(A). Whether an item or service is "qualified" is an eligibility question, and an IDRE cannot make a payment determination without first deciding eligibility. Thus, eligibility determinations—because they are a necessary predicate to the payment determination—fall within the judicial review bar. *See Blue Cross Blue Shield Healthcare Plan of Georgia*, 2026 WL 2017291, at *8 ("[F]or there to be a payment determination under subparagraph (A), *there must be an eligibility determination* . . . [so] the NSA's limitation on judicial review applies both to payment determinations and eligibility determinations under the text of the statute." (emphasis in original)).; *Blue Cross Blue Shield of Tex.*, 2026 WL 1557492, at *4 ("[I]nherent in the NSA's bar of judicial review of payment determinations is a limitation on the review of eligibility decisions."); *Anthem Blue Cross Life & Health Ins. Co.*, 2026 WL 982629, at *9.

Second, Plaintiffs' interpretation of the statute would produce results Congress plainly sought to avoid. Congress incorporated the Federal Arbitration Act into the No Surprises Act to limit judicial review of IDRE determinations. *See Reach Air Med. Servs. LLC v. Kaiser Found.*

---

[2] The No Surprises Act's implementing regulations contain analogous provisions that refer to payment determinations when discussing the judicial review bar. *See* 45 C.F.R. § 149.510(c)(4)(ii), (vii).

*Health Plan Inc.*, 160 F.4th 1110, 1115 (11th Cir. 2025) ("We review arbitration decisions very narrowly, and . . . [n]othing in the newly codified NSA . . . has altered that limited scope of judicial review."); *Avraham Plastic Surgery LLC v. Aetna, Inc.*, No. 25-CV-784 (OEM) (SDE), 2025 WL 3779084, at *3 (E.D.N.Y. Dec. 30, 2025). Plaintiffs' reading would allow parties to litigate eligibility in federal court after every IDR proceeding, creating the very flood of lawsuits Congress intended to prevent. *Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.*, 2026 WL 2017291, at *9 ("If Congress intended to allow attacks on eligibility without judicial review, it ultimately would defeat Congress' intent to create a streamlined dispute resolution process."). Avoiding such absurd results is a basic canon of statutory interpretation and supplies the clear and convincing evidence required to overcome the presumption of reviewability.

Finally, even if Plaintiffs are correct that only payment determinations are unreviewable, their claims still fall within the bar on judicial review. Plaintiffs seek "[r]elief from all improperly-obtained NSA IDR awards" entered against them, Dkt. 1 at 103, and their theory depends on the assertion that IDREs issued inflated payment determinations because of Defendants' conduct. A challenge to eligibility necessarily challenges the resulting payment determination and triggers the provision in 42 U.S.C. § 300gg-111(c)(5)(E)(i).

In sum, Plaintiffs' theory that Defendants submitted ineligible disputes and thereby obtained improper IDR awards is inseparable from the IDR's payment determination process. Because Plaintiffs seek to unwind IDR awards through claims collateral to the permissible vacatur review, the Court lacks subject matter jurisdiction over those claims.[3]

---

[3] The Court has discretion to exercise supplemental jurisdiction over state law claims that do not themselves have a basis for federal subject matter jurisdiction once the Court has dismissed the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Here, Plaintiffs' federal claims fail for the reasons stated above, and I decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

## II. Vacatur (Count IX)

The No Surprises Act establishes an IDR process to resolve payment disputes between out-of-network providers and health plans. IDRE determinations are not subject to judicial review unless one of the exceptions laid out in 9 U.S.C. § 10(a)(1)–(4) applies. *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 275 (5th Cir. 2025), *cert. denied*, 146 S. Ct. 1493 (Jan. 12, 2026); *see also PHI Health, LLC v. Optimum Choice, Inc.*, No. 25-CV-2320-ABA, 2026 WL 850453, at *8 (D. Md. Mar. 27, 2026). Here, Plaintiffs argue "[e]ach individual IDR determination at issue was procured by undue means and fraud," warranting vacatur under § 10(a)(1); and "[f]or each individual IDR determination at issue, the IDREs exceeded their powers by issuing payment determinations on items and services that are not qualified IDR items and services within the scope of the NSA's IDR process," warranting vacatur under § 10(a)(4). Dkt. 1 ¶¶ 372–73.

### a. § 10(a)(1)

A party moving for vacatur under § 10(a)(1) must demonstrate "the fraud or corruption was (1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence." *Weirton Med. Ctr., Inc. v. QHR Intensive Res., LLC*, 682 F. App'x 227, 228 (4th Cir. 2017) (quoting *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 858 (4th Cir. 2010)). Where the grounds for fraud were discoverable and discovered by the challenging party, courts generally find that the arbitration award was not fraudulently obtained within the meaning of § 10(a). *See Portis v. Ruan Transp. Mgmt. Sys., Inc.*, No. 7:15CV00118, 2016 WL 7388403, at *3 (W.D. Va. Dec. 19, 2016) (citations omitted).

Two federal courts addressing fraud claims arising out of the IDR process have held that vacatur is unavailable because the plaintiffs had the information necessary to object during the arbitration. In *Anthem Blue Cross Life and Health Insurance Company v. HaloMD LLC*, the court explained that Anthem did not allege facts showing it could not "litigate eligibility within the IDR process." 2026 WL 982629 at *7. Rather, Anthem did object to eligibility with respect to the determinations identified in its complaint, but the IDRE determined these disputes were eligible. *Id.* at *8. "[B]ecause the 'fraud' was known during the IDR and disclosed to the IDRE," vacatur was not justified. *Id.* Similarly, in *Aetna Health Inc. v. Radiology Partners, Inc.*, the court concluded that, where Aetna had previously terminated its contract with a defendant for submitting fraudulent claims, the allegations "fail[ed] to establish a sufficient basis excusing Aetna from challenging the IDR disputes on the basis that they were wrongfully submitted by in-network providers." 2026 WL 1556164 at *3.

Likewise, I conclude that Plaintiffs' allegations do not meet the substantive requirements for vacatur under § 10(a)(1).[4] Plaintiffs' own allegations show that the alleged fraud was discoverable and in fact discovered. The Complaint details the methods through which Plaintiffs inform providers of ineligible disputes, demonstrating their knowledge of items and services that are not covered by the IDR process. *See* Dkt. 1 ¶¶ 64– 68. For example, Plaintiffs allege that on

[4] I assume but do not decide that Plaintiffs plausibly allege fraud for purposes of § 10(a)(1). Plaintiffs acknowledge that some eligibility disputes may arise in good faith and would not constitute fraud, but they contend that the disputes at issue here fall outside that category. Even accepting Plaintiffs' premise that the disputed claims were in fact ineligible for IDR, the Complaint does not allege facts supporting a reasonable inference that Defendants intentionally submitted ineligible disputes. *See Guardian Flight, L.L.C. v. Med. Evaluators of Texas ASO, L.L.C.*, 140 F.4th 613, 621 (5th Cir. 2025) (finding that the provider's allegations "fall short of fraud" where they do not support an inference of intentional misrepresentation). In fact, Plaintiffs allege that over 40 percent of disputes reaching payment determination were eligible for IDR, and they do not plead facts suggesting that Defendants acted in bad faith when submitting the 60 percent that were purportedly ineligible.

September 25, 2024, Defendants initiated 954 IDR proceedings, 943 of which were not eligible. *Id.* ¶ 126. In such cases, Plaintiffs may object to dispute eligibility, and the IDRE must determine a dispute is eligible before proceeding to payment determination. Notably, in addition to the open negotiations period between the health plan and the provider, the IDR process affords parties three other opportunities to object to eligibility: (1) through the IDR portal by the date of IDRE selection, 45 C.F.R. § 149.510(c)(1)(iii); (2) to the IDRE during the payment determination process, 29 C.F.R. § 2590.716-8(c)(4)(i)(B); *see also* 42 U.S.C. § 300gg-111(c)(5)(B)–(C); and (3) by reporting any error after dispute closure, Dkt. 58-4 at 5. Indeed, with respect to the specific healthcare claims identified in the Complaint, Plaintiffs did submit objections to eligibility to the presiding IDREs. *See id.* ¶¶ 166, 176, 185, 192, 198, 204, 210, 216, 221, 227, 233, 238, 245, 252, 258, 264, 270, 276; *see also id.* ¶ 130 (describing instances where disputes reached a payment determination "despite objections from Anthem"). Plaintiffs therefore cannot credibly claim that the alleged fraud was not discoverable and cannot satisfy the requirements of § 10(a)(1).

**b. § 10(a)(4)**

Vacatur is permitted under § 10(a)(4) "where the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made," 9 U.S.C. § 10(a)(4), but not when the arbitrator commits "even serious errors of law or fact," *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (citation omitted). "[A] plaintiff seeking relief under this provision bears the 'heavy burden' of showing that the arbitrator acted outside the scope of the authority granted by the parties in their contract, by 'issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract.'" *Famulus Health, LLC v. GoodRX, Inc.*, No. 2:24-CV-00886-

BHH, 2024 WL 4151090, at *12 (D.S.C. Sept. 11, 2024) (quoting *Oxford Health Plans*, 569 U.S. at 569).

Plaintiffs argue that IDREs exceeded their powers by issuing payment determinations on ineligible disputes. In *Anthem Blue Cross Life & Health Insurance Co. v. HaloMD LLC*, the court addressed the same argument and found that because IDREs are authorized to decide eligibility, they do not exceed their powers by issuing a payment determination on a dispute that is allegedly ineligible. 2026 WL 982629, at *8. As a result, judicial review of the IDRE's determinations was not available. *Id.* at *9. Likewise, in *Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. v. Halomd, Inc.*, the court explained that because IDREs have the right to determine whether certain items and services are eligible under the No Surprises Act, they also "have the power to determine their own jurisdiction and continue to make a payment determination." 2026 WL 2017291, at *24.

The same reasoning applies here. The No Surprises Act's implementing regulations grant IDREs the authority to determine eligibility. *See* 45 C.F.R. § 149.510(c)(1)(v) ("[T]he certified IDR entity selected must review the information submitted in the notice of IDR initiation to determine whether the Federal IDR process applies."). Indeed, a payment determination cannot occur unless the IDRE first determines that the dispute concerns a "qualified IDR item or service." 42 U.S.C. § 300gg-111(c)(5)(A). Thus, an IDRE does not exceed its powers by performing a task that the regulations require and the statute presupposes.

Plaintiffs therefore fail to plausibly allege grounds for vacatur under § 10(a)(1) or § 10(a)(4) under Federal Rule of Civil Procedure 12(b)(6).

**CONCLUSION**

Defendants' Motions to Dismiss (Dkts. 37, 39) and related Request for Judicial Notice (Dkt. 57) are **GRANTED**. Because amendment would be futile, the Complaint is **DISMISSED** with prejudice.

Entered: September 30, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge